IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ERICK E. DANIEL,

PLAINTIFF,

V.

KROGER LIMITED PARTNERSHIP I, ET AL.,

DEFENDANTS.

CASE NO. 3:11CV245

## KROGER'S MEMORANDUM IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT

Kroger Limited Partnership I ("Kroger") and The Kroger Co. ("Kroger Co.")[1] submit this Memorandum in Support of the Motion for Summary Judgment on the Complaint Erick E. Daniel ("Daniel") filed against his former employer, Kroger.

### PRELIMINARY STATEMENT

On Saturday, March 14, 2009, Daniel arrived to work at his regularly scheduled time and informed the Store Manager that he would no longer work on Saturdays or Sundays, or after 5:00 p.m. on Mondays through Fridays. The Store Manager told Daniel that this was "not approved," but said he would check with the Human Resources department.

Daniel, one of the two Meat Cutters employed by Kroger at its facility in Chester, Virginia, had been scheduled to work that day, from 11:30 a.m. to 8:00 p.m., for more than a week.

---

[1] There is no dispute that Daniel was employed by Kroger Limited Partnership I and not The Kroger Co. The Kroger Co. accordingly requests that it be dismissed from these proceedings.

Nevertheless, Daniel left the store following his meeting with the Store Manager and did not tell anyone, including his director supervisor, that he was leaving and not going to work his scheduled shift. Nor did Daniel call in or work his shift on the next day (he was scheduled to work on Sunday, March 15, 2009, from 3:00 p.m. to 10:00 p.m.), nor did he call in or work his shift on Monday, March 16, 2009.

Kroger had previously counseled Daniel about his attendance – indeed, Kroger had recently suspended him for three days for violations of its attendance policy – and specifically instructed Daniel that following his three-day suspension, he was to report to work on Saturday, March 14, 2009. So when Daniel thereafter failed to call in and/or work three days in a row, including on March 14, 2009, Kroger informed Daniel on the following Tuesday that it considered Daniel's actions to constitute job abandonment and that Kroger had terminated his employment.

When Daniel was interviewing with Kroger in October 2008, Kroger explained to Daniel that due to the nature of its business, whereby many of its customers do their shopping on Saturdays and Sundays, Meat Cutters are regularly required to work on weekends. In response, Daniel, a non-denominational Christian and assistant pastor at his local church, said that he could work anytime on Saturdays and on Sunday mornings before his 11:00 a.m. church service and/or after that service was over – which usually lasted two to three hours.

The only other scheduling request Daniel made during his employment at Kroger was five months later, on March 14, 2009, when Daniel stated that he would no longer work Saturdays or Sundays, or after 5:00 p.m. on Mondays through Fridays. This demand was not, however, based on any religious practice or belief, as Daniel testified that his beliefs had not changed during his

employment at Kroger and that his religion did not prohibit him from working on these days or times. Rather, Daniel testified that he requested this new schedule so he could spend additional time with his family and because he was thinking about going back to school.

As discussed in more detail below, the two Title VII claims raised by Daniel – that Kroger terminated his employment because he is Christian and that Kroger failed to accommodate his request for a religious accommodation – are without merit. Daniel cannot establish a *prima facie* case that he was terminated based on his religion, nor can he produce evidence that Kroger's decision to discharge Daniel for attendance reasons was a pretext for discrimination. As for his accommodation claim, Daniel's preference to attend a particular church service is not protected under Title VII and Kroger nevertheless accommodated Daniel's request to work Sunday afternoons. Moreover, it would have been an undue hardship to allow Daniel to *never* work between 10:00 a.m. and 3:00 p.m. on Sundays, much less at any time on Saturdays or Sundays, the busiest days of the week.

Daniel's claims fail as a matter of law and/or Daniel fails to establish a genuine issue of material that would preclude summary judgment. Kroger accordingly requests that this Court grant the Motion for Summary Judgment and dismiss Daniel's Complaint.

I. STATEMENT OF UNDISPUTED FACTS

    A. UNDISPUTED FACTS REGARDING DANIEL'S EMPLOYMENT AT KROGER.

    1. Daniel submitted an online application for a Meat Cutter position at Kroger's facility in Chester, Virginia on September 9, 2008. Daniel stated on his application that he was available to work Mondays through Fridays from 6:00 a.m. to 5:00 p.m. and on Saturdays from 6:00 a.m. to

4:00 p.m., but was not available to work on Sundays.[2] Daniel did not state or provide an explanation on the application as to why he was not available to work on Sundays or after 4:00 p.m. or 5:00 p.m. on Mondays through Saturdays.

2.      John Owens ("Owens"), District Meat Coordinator, and Kenny Morris ("Morris"), Store Manager, interviewed Daniel for the Meat Cutter position, at which time Kroger told Daniel that it has only two Meat Cutters per store, and because Saturdays and Sundays are Kroger's busiest days for cutting and selling meat, Meat Cutters have to work weekends on a regular basis.[3]

3.      Daniel told Kroger that while he would prefer to have Sundays off, he could work Sunday mornings until 9:00 a.m. or 10:00 a.m. and again after 2:00 p.m. or 3:00 p.m. in the afternoons.[4] According to Daniel, "I told them I could either come in early in the morning or in the afternoon. That's what I told them."[5]

4.      At this point during the interview, Daniel amended his application, whereby he crossed out his previous availability and wrote "any" for each day of the week, including Sundays and evenings.[6]

5.      Based on Daniel's statements and his amended job application, Kroger hired Daniel on November 10, 2008 to work as a Meat Cutter for its store in Chester, Virginia.[7]

---

[2] A copy of Daniel's Employment Application is attached as Exhibit 1.

[3] Morris Declaration, paragraph 8 and paragraph 9, attached as Exhibit 2.

[4] Daniel Deposition, pages 170-171, cited excerpts of which are attached as Exhibit 3; *see also* Daniel Deposition, pages 175-76 ("Q: Then you say . . . I can work in the morning before service, and I can work in the afternoons after service, correct? A: Yes. Q: And that's what you told them? A: Yes. Q: And based on that understanding, you were hired – A: Yes.")

[5] Daniel Deposition, page 170.

[6] Daniel Deposition, page 172; *see also* Daniel's Employment Application at Exhibit 1.

[7] Morris Declaration, paragraph 10.

6.     In deference to Daniel's stated preference to not work at all on Sundays, Kroger did not schedule Daniel to work on Sunday seven times between December 7, 2008 and February 8, 2009.[8]

7.     As for every other Sunday during his employment at Kroger, on all but two occasions Kroger scheduled Daniel to work at times outside the 11:00 a.m. to 2:00 p.m. timeframe identified by Daniel during his job interview.[9]

8.     Robert Storey ("Storey"), the only other Meat Cutter at the Chester location, had more seniority than Daniel but was not afforded any Sundays off during the entire time that Daniel worked at Kroger.[10]

9.     As for the two times that Daniel was scheduled to work during the 11:00 a.m. hour, February 15, 2009 and February 22, 2009, Kroger scheduled both Meat Cutters to work a full shift in accord with its business needs.[11]

10.     Even still, Daniel did not work on February 15, 2009 or February 22, 2009, and neither time did Daniel claim that he could not work for religious reasons. More specifically, on the evening of Saturday, February 14, 2009, Daniel called the Kroger store at 10:00 p.m. and told the Service Desk Clerk that he could not work on the following day because he did not have a babysitter.[12]

---

[8] More specifically, Kroger did not schedule Daniel to work on December 7, 2008; December 21, 2008; December 28, 2008; January 4, 2009; January 11, 2009; February 1, 2009; and February 8, 2009. A copy of the Meat Department's Weekly Work Schedules for the period of November 16, 2008 to March 21, 2009 is attached as Exhibit 4.

[9] *Id.*

[10] Morris Declaration, paragraph 15.

[11] *See* Exhibit 4; *see also* Morris Declaration, paragraph 12.

[12] Morris Declaration, paragraph 18.

11. Kroger policy states that an employee unable to work his scheduled shift must contact a member of store management – not a clerk at the Service Desk – at least two hours prior to the start of the shift.[13] In addition, Kroger does not consider not having a babysitter an acceptable excuse to miss work, and Morris issued Daniel a verbal warning on February 16 for failing to work his shift on February 15, 2009.[14]

12. Kroger's records reflect that one week later, on February 21, 2009, Daniel once again called in on the Saturday evening before his Sunday shift, saying he could not work because he did not have a babysitter. Scott Morris ("S. Morris"), an assistant manager for the Chester location, told Daniel that this was not an acceptable excuse and that Daniel needed to report to work as scheduled.[15]

13. Daniel nevertheless failed to report to work on the following day and Kroger issued Daniel a written reprimand for this unexcused absence.[16] As reflected on the Constructive Advice Record for this incident, Kroger placed Daniel on a 90-day probationary period for this second violation of Kroger's attendance policy.[17]

14. Notably, from this point forward Kroger never again scheduled Daniel to work during a time that would conflict with Daniel attending the 11:00 a.m. Sunday service at The Lord Jesus Christ House of Prayer.

---

[13] A copy of Rules & Regulations, Basic Store Rules, Rule No. 21 is attached as Exhibit 5.
[14] A copy of the Significant Incident Reminder dated February 16, 2009 is attached as Exhibit 6.
[15] A copy of the Constructive Advice Record dated March 4, 2009 is attached as Exhibit 7.
[16] *Id.*
[17] *Id.*

15.     On Friday, February 27, 2009, Daniel called Kroger to say that he could not work on Saturday, February 28, 2009 or Sunday, March 1, 2009, because he was going to be out of town. Daniel previously asked to be off that weekend, but Kroger had denied the request because it was doing bi-period inventory and needed Daniel to work on that Saturday and Sunday afternoon.[18]

16.     Daniel nevertheless did not report to work that Saturday or Sunday.  Nor did Daniel call out or report to work as scheduled on the following Monday, March 2, 2009.  In response, Kroger issued Daniel a second written warning on March 5, 2009 and extended his 90-day probationary period.[19]

17.     Kroger's records reflect that four days later, on Sunday, March 8, 2009, Daniel called S. Morris at 12:45 p.m., approximately two hours before his shift was supposed to start to say that he would not be coming to work.[20]

18.     On Monday, March 9, 2009, Kroger issued Daniel a third written warning for this absence and suspended his employment for three days.  In that written warning, Kroger instructed Daniel to return to work on his next scheduled shift, Saturday, March 14.[21]  At that disciplinary meeting, Daniel claimed – for the first time – that Kroger was not accommodating his religious beliefs.[22]

19.     Daniel was scheduled to work at 11:30 a.m. on March 14, 2009.[23]  At approximately 11:40 a.m. that day, Daniel reported to work at the store and gave Morris a new Availability

---

[18] Morris Declaration, paragraph 21.
[19] A copy of the Constructive Advice Record dated March 5, 2009 is attached as Exhibit 8.
[20] A copy of the Constructive Advice Record dated March 9, 2009 is attached as Exhibit 9.
[21] *Id.*
[22] Morris Declaration, paragraph 23.
[23] *See* Exhibit 4.

Questionnaire form, on which Daniel stated that he was not available to work at any time on Saturdays or Sundays, or after 5:00 p.m. on Mondays through Fridays.[24]

20.    Morris said he could not grant the request,[25] that this was "not approved," but he would check with Human Resources.[26]

21.    Although he was scheduled to work, Daniel did not stay and work on March 14, 2009, nor did he inform any member of management that he was leaving and not going to work his shift.[27]

22.    Nor did Daniel report to work or call in for his next two consecutive scheduled shifts, missing a total of three days in a row: Saturday, March 14, 2009; Sunday, March 15, 2009; and Monday, March 16, 2009.[28]

23.    Pursuant to its policy, Kroger considered Daniel's three day "no call/no show" a voluntary resignation and terminated his employment.[29]

24.    Daniel called Morris on Tuesday, March 17, 2009, at which time Morris confirmed that Kroger had interpreted Daniel's actions as constituting job abandonment, a voluntary resignation, and that it had terminated Daniel's employment.[30]

25.    Daniel does not claim or allege that anyone at Kroger disparaged him based on his religion or made negative comments about his religion.[31]

26.    The only evidence that Daniel can point to regarding whether Kroger had any ill will

---

[24] A copy of the Availability Questionnaire submitted by Daniel on March 14, 2009 is attached as Exhibit 10.
[25] Daniel Deposition, page 180 ("He [Morris] said he could not do it.").
[26] Morris Declaration, paragraph 24.
[27] Morris Declaration, paragraph 25.
[28] *Id.*; *see also* Exhibit 4.
[29] Morris Declaration, paragraph 26.
[30] Morris Declaration, paragraph 27.
[31] Daniel Deposition, page 188.

or treated him differently based on his religion is that Kroger scheduled him to work a full shift on Sunday two times during his five months of employment.[32]

27. Among other things, Kroger's Rules & Regulations state that:

> Excessive attendance problems (absenteeism and/or tardiness), regardless of reason, will be grounds for disciplinary action up to and including discharge. If unable to report to work as scheduled, the employee will call store management or the person in charge in absence of store management at least two (2) hours prior to the start of the shift. A doctor's release may be required upon reporting back to work.[33]

28. The terms and conditions of Daniel's employment were also controlled by a certain Collective Bargaining Agreement between Kroger and the United Food and Commercial Workers, Local 400 ("CBA").[34]

29. The CBA provides, among other things, that Kroger must "endeavor to consider seniority in the preparation and assignment of work schedules for full-time employees who submit their preferences in writing."[35]

30. The CBA also provides that "[a]n employee who is absent from work for three (3) consecutive working days without notifying the Store Manager and not having a bona fide excuse will be considered to have voluntarily quit."[36]

31. A three day "no call/no show" is also considered a voluntary resignation under company policy.[37]

---

[32] Daniel Deposition, page 360.
[33] *See* Exhibit 5.
[34] A copy of the CBA between Kroger and the United Food and Commercial Workers, Local 400 ("CBA") is attached as Exhibit11.
[35] *Id.,* page 6.
[36] *Id.,* page 7.
[37] Morris Declaration, paragraph 26.

B.    **U**NDISPUTED **F**ACTS **R**EGARDING **D**ANIEL'S **R**ELIGION AND **D**UTIES AS AN **A**SSISTANT **P**ASTOR.

32.    Daniel is a non-denominational Christian.[38]

33.    Daniel's religious beliefs do not provide that he attend a particular church. Rather, Daniel can attend almost any Christian church to the extend he wants to attend church services on Sunday.[39] For example, Daniel has regularly attended 8:30 a.m. services at Jonesville Baptist Church in Georgia.[40] Further, as an ordained pastor, Daniel can and does conduct church services at his house for his family, at whatever time is convenient to his and his family's schedule.[41]

34.    The main worship service at The Lord Jesus Christ House of Prayer begins at 11:00 a.m. on Sundays and lasts between two and three hours.[42]

35.    Daniel was paid to work as an assistant pastor at The Lord Jesus Christ House of Prayer.[43]

36.    As an assistant pastor, Daniel's duties included various administrative and business responsibilities, in addition to presiding over services when the pastor was not available.[44] For example, Daniel was responsible for making sure the church was unlocked before members got there and locked after services,[45] making sure the sanctuary was organized,[46] cleaning up after church

---

[38] Daniel Deposition, page 116.
[39] Daniel Deposition, page 116.
[40] Daniel Deposition, page 69.
[41] Daniel Deposition, pages 68-69.
[42] Daniel Deposition, pages 117, 120.
[43] Daniel Deposition, pages 99-100.
[44] Daniel Deposition, pages 135-136.
[45] Daniel Deposition, page 133.
[46] Daniel Deposition, page 132.

services,[47] reviewing expense reports,[48] and ensuring that church announcements were created.[49]

37.     Working on Saturdays does not interfere with Daniel's religion – in Daniel's own words, "I don't have to practice anything on Saturdays."[50]

38.     Daniel's religion does not prohibit him from working on Mondays.[51]

39.     Daniel's religious beliefs did not change during his employment at Kroger.[52]

40.     When not attending services at The Lord Jesus Christ House of Prayer, Daniel has attended services at a local Baptist church.[53]

41.     Morris, like Daniel, is Christian and attends services at a Baptist church.[54]

## II.   DISCUSSION

### A.   SUMMARY JUDGMENT STANDARDS.

Summary judgment is appropriate where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A court considering a motion for summary judgment must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir. 1990).

To defeat a motion for summary judgment, the non-moving party may not rest upon its pleadings, but must present specific facts illustrating genuine issues for trial. *Celotex,* 477 U.S. at

---

[47] Daniel Deposition, page 134.
[48] Daniel Deposition, page 134.
[49] Daniel Deposition, page 135.
[50] Daniel Deposition, page 81.
[51] Daniel Deposition, page 81.
[52] Daniel Deposition, page 176.
[53] Daniel Deposition, page 64.
[54] Morris Declaration, paragraph 30.

324. As such, the non-moving party must produce more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the "appearance of some metaphysical doubt" concerning a material fact. *Lewis v. City of Va. Beach Sheriff's Office,* 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted).

B. **RELIGIOUS DISCRIMINATION CLAIMS UNDER TITLE VII CAN BE BROUGHT UNDER THE THEORY THAT THE EMPLOYER SUBJECTED THE EMPLOYEE TO DISPARATE TREATMENT OR FAILED TO ACCOMMODATE THE EMPLOYEE'S RELIGIOUS BELIEFS.**

Title VII of the Civil Rights Act of 1964, as amended, prohibits an employer from discriminating against an employee on the basis of religious preferences. *See* 42 U.S.C.A. § 2000e-2. Religious discrimination claims may be brought under two theories: (1) "disparate treatment" claims and (2) "failure to accommodate" claims. *See Chalmers v. Tulon Co.*, 101 F.3d 1012, 1017 (4th Cir. 1996). To prove a claim under a disparate treatment theory, plaintiff must demonstrate that the employer treated him differently than other employees because of his religious beliefs. *Id.* (emphasis omitted). If the plaintiff cannot show that he was treated differently because of his religious beliefs or cannot rebut an employer's legitimate, non-discriminatory reason for his discharge, he may still be able to establish a religious accommodation claim based upon Title VII's requirement that an employer reasonably accommodate religious observances or practices, unless such accommodation will impose undue hardship on the employer's business. *Walker v. Novo Nordisk Pharm. Indus.*, No. 99-201S 2000 U.S. App. LEXIS 17848, at *6-7 (4th Cir. July 24, 2000); *see also* 42 U.S.C.A. §§ 2000e-2(a), 2000e(j).

**C.     DANIEL'S DISPARATE TREATMENT CLAIM FAILS AS A MATTER OF LAW.**

      **1.     DANIEL CANNOT ESTABLISH A PRIMA FACIE CASE OF DISPARATE TREATMENT/DISCRIMINATORY DISCHARGE BASED ON HIS RELIGION.**

To establish a *prima facie* case of disparate treatment discrimination based on religion, a plaintiff must (1) show that he was part of a protected group, (2) show that he was performing his job satisfactorily, and (3) provide "'indirect evidence whose cumulative probative force supports a reasonable inference that [the] [adverse employment action] was discriminatory.'" *Chalmers*, 101 F.3d at 1017 (quoting *Lawrence v. Mars, Inc.*, 955 F.2d 902, 905-06 (4th Cir. 1992)); *see also Dachman v. Shalala*, 9 Fed. Appx. 186, 189 (4th Cir. 2001). A plaintiff's inferential case "might consist of evidence that the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct." *Chalmers*, 101 F.3d at 1017.

Daniel cannot establish the second or third prong of the *prima facie* case in support of his disparate treatment/wrongful termination claim. First, Daniel cannot establish that he was performing his job duties at a level that met his employer's legitimate expectations at the time of his termination. More specifically, in the one month preceding his termination, Daniel had received one verbal warning, three written warnings, and had been twice placed on a 90-day probationary period for unexcused absences. It is undisputed that Daniel thereafter failed to call in or report to work three days in row, after being specifically instructed that he was to report to work as scheduled. Moreover, there is no dispute that Kroger policy requires that employees call in to a member of management at least two hours before a scheduled shift – which Daniel did not do – and that Kroger is bound to follow the CBA, which mandates that a no call/no show for three days constitutes job

abandonment.

Second, even if Daniel could establish the second prong of the *prima facie* test, he fails to present evidence that he was treated differently from any other employee who had similar disciplinary and work-related problems. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998). In addition and similar to the plaintiff in *Dachman,* Daniel's relationship with his supervisors started out collegial and everyone knew prior to Daniel being hired that he was Christian. *See Dachman* 9 Fed. Appx. at 189-190. Further, the individual that hired and subsequently fired Daniel is Christian and, like Daniel, attends a Baptist church.

Daniel does not otherwise allege facts that would tend to show that his religious beliefs had anything to do with the termination of his employment. In fact, Daniel testified that religion was not discussed in the workplace.[55] The only evidence of any alleged religious animus that Daniel can point to is that Kroger scheduled him to work two times between 11:00 a.m. and 2:00 p.m. on a Sunday.[56] That fact, when viewed against the fact that Kroger afforded Daniel seven Sundays off during this period, that the more senior Meat Cutter was not afforded any Sundays off at any time during Daniel's employment, that both Meat Cutters were scheduled to work full shifts on February 15 and 22, 2009, that Daniel was not terminated for failing to work on either of those two days, and that Daniel claimed he could not work on February 15 and 22 because he did not have a babysitter, not because of his religious practices, is woefully insufficient to establish an inference that Daniel was terminated based on his religion.

---

[55] Daniel Deposition, pages 307-308, 310.
[56] Daniel Deposition, pages 360-362.

### 2. DANIEL CANNOT SHOW THAT KROGER'S STATED REASON FOR HIS TERMINATION WAS A PRETEXT FOR DISCRIMINATION.

Even if Daniel could establish a *prima facie* case of disparate treatment, which he cannot, Kroger has proffered a legitimate, non-discriminatory reason to terminate Daniel's employment. Daniel does not, however, present sufficient evidence to establish that this reason was a pretext for discrimination.

It is undisputed Daniel did not call out or work on three consecutive days – Saturday, March 14, 2009; Sunday, March 15, 2009; and Monday, March 16, 2009. Pursuant to Kroger policy and the CBA, this was considered this to be a voluntary resignation.

In sum, Daniel fails to present facts showing that Kroger's decision to terminate his employment was motivated by his religion. Daniel has failed to produce any evidence to either establish a *prima facie* case or to refute Kroger's articulated, non-discriminatory reason for the termination of his employment was pretextual. Daniel's disparate treatment claim, fails as a matter of law and should be dismissed.

### D. DANIEL FAILS TO ESTABLISH THAT KROGER DID NOT REASONABLY ACCOMMODATE HIS RELIGIOUS BELIEFS.

Failure to accommodate religious belief cases are subject to a burden shifting scheme analogous to the one articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *EEOC v. Firestone Fibers & Textiles Co.,* 515 F.3d 307 (4th Cir. 2008); *Chalmers* 101 F.3d at 1019; *see EEOC v. Thompson Contr., Grading, Paving, & Utils., Inc.,* 333 Fed. Appx. 768, 771 (4th Cir. 2009).

To establish a *prima facie* failure to accommodate case, a plaintiff must show that (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) that he informed his employer of such belief and requested an accommodation; and (3) that he was disciplined for failing to comply with the employment requirement in conflict with his belief. *Chalmers*, 101 F.3d at 1019.

"If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship." *Id.* To satisfy this burden, the employer must demonstrate "either (1) that it has provided the plaintiff with a reasonable, though not necessarily a total, accommodation or (2) that such reasonable accommodation was not possible without causing undue hardship to the conduct of its business." *Firestone Fibers,* 515 F.3d at 315.

Accommodations are unreasonable if they cause an employer an undue hardship or, in other words, if they result in "'more than a de minimis cost'" to the employer." *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 67 (1986). An employer is not required to adopt the accommodation proposed by an employee nor is an employer required to prove that such request would create an undue hardship. *Id.* at 68-69. An accommodation does not have to "totally" eliminate the conflict between the work requirement and religious practice; the accommodation must only be reasonable. *Firestone Fibers,* 515 F.3d at 312. Once a court finds that the employer offered some reasonable accommodation, the court's inquiry is at an end. *Philbrook,* 479 U.S. at 68-69.

Assuming for the purpose of this motion that Daniel can establish that he informed Kroger that he wanted to attend church services on Sunday morning and that he requested an

accommodation to do so, Daniel cannot establish the remaining elements of a *prima facie* case. Nor can Daniel show that Kroger failed to provide him a reasonable accommodation or that he suffered any damages as a result of Kroger's alleged failure to accommodate his bona fide religious beliefs.

1. DANIEL'S DESIRE TO ATTEND SERVICES AT 11:00 A.M. ON SUNDAYS REFLECTED A PERSONAL PREFERENCE AND WAS NOT A BONA FIDE RELIGIOUS BELIEF THAT CONFLICTED WITH AN EMPLOYMENT REQUIREMENT.

While it is undisputed that Daniel *preferred* to attend the 11:00 a.m. service at The Lord Jesus Christ House of Prayer, Daniel admits that he could have attended a different church with different service times. In addition, as an ordained pastor Daniel could have (and does) perform Sunday services at his own house at whatever time is convenient for him and his family. The fact that Daniel was an assistant pastor and had "pre-existing" obligations – for which he was monetarily compensated – to a particular church, including secular duties such as reviewing the church's finances and cleaning up the church after weekly services, is not sufficient to establish a bone fide religious belief protected under Title VII.

While no one doubts that Daniel holds sincere religious beliefs, there is no evidence that his religion conflicts with any employment requirement. It was Daniel's personal preferences and his duties as an assistant pastor that conflicted with his work schedule at Kroger. But Kroger had no obligation to accommodate Daniel's personal preferences or his other job as assistant pastor at The Lord Jesus Christ House of Prayer.

> While an employer has a duty to accommodate an employee's religious beliefs, the employer does not have a duty to accommodate an employee's preferences. *See Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998) ("Title VII does not protect secular preferences."). In this case, appellant's own testimony confirmed that

her decision to pick up the bread on Friday afternoon was simply her preference and not a religious requirement. As such, her employer did not have a duty to accommodate this preference.

*Dachman*, 9 Fed. Appx. at 192; *see also Silk v. City of Chicago*, No. 95 C 0143, 1996 U.S. Dist. LEXIS 8334, at *77 (N.D. Ill., Jun. 7, 1996) (An employee "certainly does not have a constitutional right to attend a *convenient* mass. To claim that he has been denied freedom of religion because he cannot attend the precise mass of his choice borders on frivolity.") (emphasis in original).

## 2. DANIEL WAS NOT DISCIPLINED FOR FAILING TO COMPLY WITH AN EMPLOYMENT REQUIREMENT IN CONFLICT WITH RELIGIOUS BELIEFS.

Even if one were to assume that Daniel's desire to attend a particular service constituted a bona fide religious belief, Daniels cannot establish that he was disciplined for failing to comply with an employment requirement that he work on Sunday mornings on two occasions.

When Kroger issued Daniel a verbal warning on February 16, 2009 for failing to report to work on February 15, it was because Daniel (1) called in the night before stating he could not work because he did not have a babysitter and (2) failed to bring this issue to the attention of management. Yet, all Kroger did for this offense was issue Daniel a verbal warning, which does not constitute an adverse action under Title VII.

On March 4, 2009, Kroger issued Daniel a written warning following his unexcused absence on February 22, 2009. As before, Kroger issued this written warning because Daniel said he could not work because he did not have a babysitter. Kroger did not reduce Daniel's pay, suspend his employment, or take any other action against Daniel for this violation except to reiterate and reinforce that not having a babysitter is not a legitimate reason to miss work.

While Daniel did receive a written warning on March 5, 2009, this was based on Daniel's

failure report for his scheduled shifts over a three day period – February 28, March 1, and March 2. Critically, Kroger had scheduled Daniel to work on Sunday this week in accord with his previous request, that he not work between 10:00 a.m. and 2:00 p.m., yet Daniel nevertheless failed to report to work as scheduled.

On March 9, 2009, Daniel received a written warning and was suspended for three working days because of his failure to report to work on March 8. As before, Kroger had complied with Daniel's request to work Sunday afternoons, from 3:00 p.m. to 10:00 p.m., yet Daniel nevertheless failed to work that shift as scheduled.

Finally, there is no dispute that Kroger terminated Daniel's employment following his failure to call out or report to work for three consecutive shifts. As before, Kroger had accommodated Daniel's request and did not schedule him to work between 10:00 a.m. and 2:00 p.m. on Sunday, but scheduled him to work instead from 3:00 p.m. to 10:00 p.m. on Sunday, yet Daniel did not work that shift as scheduled or call in and notify management about his intentions.

Kroger warned Daniel numerous times about failing to properly report his absences and not work his scheduled shift. Daniel ignored those instructions and Kroger's efforts to provide Daniel a flexible work schedule, and instead repeatedly called out on Saturdays, Mondays, and on Sunday afternoons, even when Kroger had accommodated Daniel's request not to work on Sunday mornings.

Kroger was not obligated to accommodate Daniel's March 14, 2009 request to not work at all on Saturdays and Sundays or on weekdays after 5:00 p.m. as this was not a request for a religious accommodation. In fact, Daniel testified that his religion did not prohibit him from working on

Saturdays, Mondays, or after 5:00 p.m. on Mondays through Fridays.

Notably, Daniel confirmed that his religious beliefs did not change during his employment at Kroger. This new schedule was not based on a religious belief – rather, Daniel testified that he wanted this new schedule so he could spend with his children and because he was thinking about returning to school.[57] Moreover, Daniel did not give Kroger a chance to review that request before walking off the job even though Kroger had specifically instructed him to work his shifts as scheduled.

Finally, Title VII does not require an employer to violate the terms of a collective bargaining seniority system in order to grant a religious accommodation *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 74 (1977); 29 C.F.R. § 1605.2(e)(2). There is no dispute that Daniel did not have sufficient seniority within the bargain unit to obtain a non-weekend schedule, and that if anyone was entitled to have Sundays off, it would have been Storey, not Daniel. As such, Daniel's failure to accommodate claim fails as a matter of law. *See Firestone Fibers,* 515 F.3d at 315.

3. KROGER HAS ESTABLISHED THAT ALLOWING DANIEL TO NOT WORK WEEKENDS OR ON DAYS WHEN IT NEEDED TWO MEAT CUTTERS TO WORK WOULD HAVE CONSTITUTED AN UNDUE HARDSHIP.

Regardless of whether the March 14, 2009 request constituted a reasonable request to accommodate Daniel's religious beliefs, that schedule would have constituted an undue hardship and Daniel's claim fails as a matter of law. More specifically, Kroger employs only two Meat Cutters per location. It is undisputed that the demands on its Meat Department is highest on the weekends. Kroger cannot have only one Meat Cutter available to work from Friday afternoon until Monday

---

[57] Daniel Deposition, page 275.

morning – it would have to essentially close down the Meat Department during its most productive and profitable time, essentially causing Kroger to close down its meat department.[58]  Such a result would be more than *de minimis* harm to Kroger, and Kroger was not obligated to grant that request because it would constitute an undue hardship.

It would likewise be an undue hardship to expect Kroger to *never* schedule its two Meat Cutters to work a full shift on Sunday.  Kroger only had two occasions during the time that Daniel was employed when it needed both Meat Cutters to be working a full shift on Sunday, and to require Kroger to shut down rather than have both Meat Cutters on these two occasions working would constitute an undue hardship.  Accordingly, regardless of whether Daniel is able to establish a *prima facie* of accommodation case, those requests would have constituted and undue hardship and Daniel's accommodation claim fails as a matter of law.

---

[58] Morris Declaration , paragraph 17.

## CONCLUSION

For the reasons expressed herein, Kroger respectfully requests that this Court grant it's Motion for Summary Judgment and dismiss the Complaint, as well as any other relief the Court deems appropriate as a matter of law.

Dated: September 30, 2011      Respectfully submitted,

KROGER LIMITED PARTNERSHIP I AND THE KROGER CO.

By: _____/s/_____
                        Counsel

Kevin D. Holden, Esq. (VSB#30840)
Crystal Norrick, Esq.  (VSB#73273)
Jackson Lewis LLP
1021 E. Cary Street, Suite 1200
Richmond, Virginia 23219
Tel:  804.649.0404
Fax:  804.649.0403
Kevin.Holden@JacksonLewis.com
Crystal.Norrick@JacksonLewis.com

*Counsel for Kroger Limited Partnership I and The Kroger Co.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, September 30, 2011, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Curtis M. Hairston, Jr., Esq.
The Gee Law Firm, P.C.
211 East German School Road
Richmond, Virginia 23224
Tel: (804) 864-5291
Fax: (804) 864-5292
chairston@mceachingee.com

        /s/        
Kevin D. Holden, Esq. (VSB#30840)
Crystal Norrick, Esq. (VSB#73273)
Jackson Lewis LLP
1021 E. Cary Street, Suite 1200
Richmond, Virginia 23219
Tel: 804.649.0404
Fax: 804.649.0403
Kevin.Holden@JacksonLewis.com
Crystal.Norrick@JacksonLewis.com

*Counsel for Kroger Limited Partnership I and The Kroger Co.*

4839-7865-3195, v. 1