**Powered by Kronos**

| | |
|---|---|
| **Kroger** (logo) | APPLICATION ID: 4T7G2SY12Z |
| | DATE OF APPLICATION: 09/08/2008 |
| | DESIRED POSITION: Meat/Seafood Clerk |
| | APPLICATION SITE #: 17029520 |
| | REFERRED BY: Unsolicited/Walk In |
| | NAME OF EMPLOYEE REFFERER: |
| | APPLIED IN THE LAST 6 MONTHS ? Yes |
| | WOTC Confirmation #: N/A |

LEVEL 1 _____ LEVEL 2 _____

DIVISION _____

## EMPLOYMENT APPLICATION SUMMARY

### PERSONAL INFORMATION

| DANIEL | ERICK | EDWARD | |
|---|---|---|---|
| LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1406 CHAPLINBAY DRIVE | | | | |
|---|---|---|---|---|
| ADDRESS | P.O. Box | | APARTMENT | |
| CHESTER | VA | | 23836 | CHESTERFIELD |
| CITY | STATE | | ZIP CODE | COUNTY |

| (804)530-1038 | (804)530-1038 | SOCIAL SECURITY NUMBER |
|---|---|---|
| PRIMARY PHONE NUMBER | ALTERNATE PHONE NUMBER | |

EMANOFFFAITH07@PEOPLEPC.COM
EMAIL ADDRESS

**DATE OF BIRTH AGE 14 - 20**

| MONTH | DAY | YEAR |
|---|---|---|
| To be completed by those under 21 years of age | | |

RECEIVED

#### FORMER ADDRESSES WITHIN LAST FOUR YEARS

**PREVIOUS ADDRESS 1**

| | | | | |
|---|---|---|---|---|
| NUMBER AND STREET | P.O. Box | APARTMENT | FROM | TO |
| CITY | STATE | ZIP CODE | | COUNTY |

**PREVIOUS ADDRESS 2**

| | | | | |
|---|---|---|---|---|
| NUMBER AND STREET | P.O. Box | APARTMENT | FROM | TO |
| CITY | STATE | ZIP CODE | | COUNTY |

**PREVIOUS ADDRESS 3**

| | | | | |
|---|---|---|---|---|
| NUMBER AND STREET | P.O. Box | APARTMENT | FROM | TO |
| CITY | STATE | ZIP CODE | | COUNTY |

**PREVIOUS ADDRESS 4**

| | | | | |
|---|---|---|---|---|
| NUMBER AND STREET | P.O. Box | APARTMENT | FROM | TO |
| CITY | STATE | ZIP CODE | | COUNTY |

**PREVIOUS ADDRESS 5**

| | | | | |
|---|---|---|---|---|
| NUMBER AND STREET | P.O. Box | APARTMENT | FROM | O |
| CITY | STATE | ZIP CODE | | COUNTY |

### EMPLOYMENT DESIRED

DESIRED POSITION : Meat/Seafood Clerk

SECONDARY DESIRED POSITION: Store Management

DESIRED SCHEDULE : Full Time

AVAILABLE TO START : Now

WILL YOU BE ABLE TO WORK HOLIDAYS? YES

**AVAILABILITY**

| | MON | TUE | WED | THUR | FRI | SAT | SUN |
|---|---|---|---|---|---|---|---|
| START TIME | 6:00 AM | 6:00 AM | 6:00 AM | 6:00 AM | 6:00 AM | 6:00 AM | N/A |
| END TIME | 5:00 PM | 5:00 PM | 5:00 PM | 5:00 PM | 5:00 PM | 5:00 PM | N/A |

*(handwritten) Any Any Any Any Any Any ... Availability*

### EDUCATION

| CURRENTLY ATTENDING SCHOOL? | NO | ANTICIPATED GRADUATION DATE: | | TOTAL YEARS OF EDUCATION COMPLETED | 12 |
|---|---|---|---|---|---|

| SCHOOL TYPE | SCHOOL NAME AND LOCATION | GRADUATED | MAJOR OR PRIMARY COURSE OF STUDY | DATES ATTENDED FROM / TO |
|---|---|---|---|---|
| HIGH SCHOOL | east wake high wendell | YES | N/A | N/A |
| COLLEGE | | | | |
| OTHER SCHOOLING | | | | |

© 2000-2007, Kronos Incorporated. U.S. Patent No. 7,080,057. All Rights Reserved

Page 1 of 5



EXHIBIT

1

KROGER 000469

APPLICANT · DO NOT WRITE ON THIS SIDE
TO BE COMPLETED AFTER HIRE BY STORE MANAGER OR DEPARTMENT HEAD (FILL IN ALL SPACES) CHECK ALL SECTIONS FOR COMPLETENESS OF INFORMATION

REMAINDER: DATE OF BIRTH ON FRONT PAGE TO BE COMPLETED ON ALL NEW HIRES.

SEX   (CIRCLE ONE)   (M = MALE)   F = FEMALE

MARITAL STATUS   (CIRCLE ONE)   1 = SINGLE   2 = MARRIED   3 = WIDOWED   4 = DIVORCED   5 = SEPARATED

RACE (CIRCLE ONE)   AA = ASIAN   AI = NATIV AMER/ ALASKAN NATIVE   (B = BLACK)   HIS = HISPANIC   HOP = HAWAIIAN/ PAC ISLAND   TWO = TWO OR MORE   W = WHITE

HANDICAPPED ☐ YES  ☑ NO   TYPE OF HANDICAP

VETERAN STATUS   (CIRCLE ONE) 1 = VETERAN  2 = DISABLED VETERAN   3 = VIETNAM ERA VETERAN   4 = DISABLED VIETNAM ERA VETERAN

| | MONTH | DAY | YEAR | | | LEVEL 3/ LEVEL 4 WORK FACILITY | ZONE | STORE |
|---|---|---|---|---|---|---|---|---|
| DATE WORK STARTED | 11 | 10 | 08 | | | | 17 | 530 |

STATUS   (CIRCLE ONE)   2 = FULL-TIME PROBATIONARY   4 = PART-TIME   6 = STUDENT   7= CASUAL

*Smea*

| | W = $ | ¢ | ¢ | ¢ | ¢m | ¢m |
|---|---|---|---|---|---|---|
| SALARY / WAGE | 1 | 4 | 8 | 0 | | |

SIGNED _____ 11-10-08
(STORE MANAGER/DEPARTMENT HEAD)   DATE

JOB TITLE   Meat/Seafood Clerk   Meat
WORK DEPT.

IMPORTANT:   A W-4 MUST ACCOMPANY THIS APPLICATION FOR EMPLOYEE TO BE PROPERLY PAID. NOTE:  BE SURE WORK PERMIT IS OBTAINED IF REQUIRED BY LAW.

APPROVED _____
DATE

TO BE COMPLETED BY PERSONNEL / PAYROLL DEPARTMENTS

SHIFT CODE _____   NORMAL HOURS _____

DATE NEXT INCREASE _____ / _____   PAY STATUS _____   PAY FREQUENCY _____

JOB CODE 0150280   WORK CENTER _____   WAGE ACCOUNT 210906

PAY TYPE   (CIRCLE ONE) (1) 2   3   4   5

PAY LEVEL 00   NEXT APPRAISAL DATE _____ / _____ / _____

UNION MEMBERSHIP CODE C DOLIOOp   MEMBERSHIP   (CIRCLE ONE)   1   2   3   (4)

UNION SENIORITY # 1 1 111008 _____

UNION SENIORITY # 2 _____ / _____ / _____

UNION SENIORITY # 3 _____ / _____ / _____

CHECK FORMAT INDICATOR _____

SET-UP INDICATOR   (CIRCLE ONE)   1 = NEW HIRE   2 = REHIRE   3 = REINSTATEMENT   4 = REACTIVATED

COMPANY TRAINING PROGRAMS
CODE ____ · DATE COMPLETED ____ / ____ / ____     CODE ____ DATE COMPLETED ____ / ____ / ____
CODE ____ · DATE COMPLETED ____ / ____ / ____     CODE ____ DATE COMPLETED ____ / ____ / ____
CODE ____ · DATE COMPLETED ____ / ____ / ____     CODE ____ DATE COMPLETED ____ / ____ / ____
CODE ____ · DATE COMPLETED ____ / ____ / ____     CODE ____ DATE COMPLETED ____ / ____ / ____

REMAINDER: ENTER DEGREE INFORMATION FOR COLLEGE STUDENTS/GRADUATES

WITHHOLDING TAXES

| | MARITAL STATUS | EXEMPTIONS | TAX METHOD | ADDITIONAL AMOUNT/ PERCENT | AMOUNT OF 1 EXEMPTION | CODE |
|---|---|---|---|---|---|---|
| FEDERAL | M 0 0 | | | | | |
| STATE | M 0 0 | | | | | |
| COUNTY | | | | | | |
| CITY | | | | | | |
| WORK STATE | VA | RESIDENCE STATE | | | | |

VERIFIED AND PROCESSED BY: NAME _____   DATE _____

KROGER 000470

Powered by Kronos

## EMPLOYMENT APPLICATION SUMMARY

[ DANIEL , ERICK , 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 ]

### EMPLOYMENT HISTORY

| FROM / TO DATES | EMPLOYER 1 (NAME, ADDRESS, PHONE #) | STARTING PAY ENDING PAY | STARTING JOB TITLE ENDING JOB TITLE | OK TO CONTACT |
|---|---|---|---|---|
| 01/31/1996 | harris teeter | 350000.00 | mat cutter | |
| 08/14/2008 | virginia virginia beach VA (804)422-4595 | 580000.00 | Seafood Manager | YES |
| SUPERVISOR NAME: | Kevin | FULL TIME OR PART TIME: | Full time | |
| RESPONSIBILITIES: | Opening,closing Dept.,managing Dept. Every Day | REASON FOR LEAVING: | Voluntarly quit | |

| FROM / TO DATES | EMPLOYER 2 (NAME, ADDRESS, PHONE #) | STARTING PAY ENDING PAY | STARTING JOB TITLE ENDING JOB TITLE | OK TO CONTACT |
|---|---|---|---|---|
| 1993 | Food Lion | 10.75 | meat cutter | |
| 1996 | | 14.00 | Asst. Manager | |
| SUPERVISOR NAME: | Bob | FULL TIME OR PART TIME: | P.T. | |
| RESPONSIBILITIES: | Asst Manager Meat Dept. | REASON FOR LEAVING: | full time job hands teeter | |

| FROM / TO DATES | EMPLOYER 3 (NAME, ADDRESS, PHONE #) | STARTING PAY ENDING PAY | STARTING JOB TITLE ENDING JOB TITLE | OK TO CONTACT |
|---|---|---|---|---|
| 1990 | Winn Dixie | 10.50 | Meat Cutter | |
| 1993 | | 12.75 | 1st cutter | |
| SUPERVISOR NAME: | Joe Graham | FULL TIME OR PART TIME: | Full Time | |
| RESPONSIBILITIES: | Opening, closing Dept. | REASON FOR LEAVING: | better Job Opportunity | |

| FROM / TO DATES | EMPLOYER 4 (NAME, ADDRESS, PHONE #) | STARTING PAY ENDING PAY | STARTING JOB TITLE ENDING JOB TITLE | OK TO CONTACT |
|---|---|---|---|---|
| 1981 | Hilton Hotel | 30,000 | Line Chef | |
| 1993 | | 38,000 | Kitchen Manager | |
| SUPERVISOR NAME: | Alex Williams | FULL TIME OR PART TIME: | YES | |
| RESPONSIBILITIES: | Manager Kitchen Staff Assist Banquets | REASON FOR LEAVING: | Hotel file Barekrupt | |

| FROM / TO DATES | EMPLOYER 5 (NAME, ADDRESS, PHONE #) | STARTING PAY ENDING PAY | STARTING JOB TITLE ENDING JOB TITLE | OK TO CONTACT |
|---|---|---|---|---|
| | | | | |
| SUPERVISOR NAME: | | FULL TIME OR PART TIME: | | |
| RESPONSIBILITIES: | | REASON FOR LEAVING: | | |

HAVE YOU HAD ANY FOOD, FOOD PLANT OR GROCERY EXPERIENCE NOT LISTED IN THE PREVIOUS SECTION?   YES

PLEASE EXPLAIN: I HAVE EXPERIENCE IN THE HOTEL, REST. INDSTRY AS WEL ,WITH 12 YEARS OF EXPERIENCE.

| MILITARY HISTORY | EMERGENCY CONTACT INFORMATION |
|---|---|

**MILITARY HISTORY**

HAVE YOU SERVED IN THE UNITED STATES ARMED FORCES? YES

HIGHESTS RANK ATTAINED: E-3

BRANCH OF SERVICE:   ARMY

LIST ANY SKILLS, TRAINING OR QUALIFICATIONS ACQUIRED DURING MILITARY SERVICE YOU FEEL MIGHT BE OF INTEREST OR VALUE TO THIS COMPANY: public relations,business laws,computers courses

**EMERGENCY CONTACT INFORMATION**

IN CASE OF EMERGENCY, PLEASE NOTIFY

FIRST NAME: shitenia

LAST NAME: shitenia

MIDDLE INITIAL: d

CITY / STATE: chester         VA

DAYTIME PHONE #: (804)530-1038

ALTERNATE PHONE #: (804)530-1038

RELATIONSHIP: SPOUSE

© 2000-2007, Kronos Incorporated. U.S. Patent No. 7,080,057. All Rights Reserved

KROGER 000471

EMPLOYMENT APPLICATION SUMMARY

*Powered by Kronos*

[ DANIEL , ERICK , 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 ]

### CRIMINAL HISTORY INFORMATION

*NOTE - THE EXISTENCE OF A CRIMINAL HISTORY WILL NOT AUTOMATICALLY DISQUALIFY YOU FROM THE JOB YOU ARE APPLYING FOR.

HAVE YOU BEEN CONVICTED OF A CRIME ?                  NO
DO NOT ANSWER "YES" IF YOUR CONVICTION RECORD HAS BEEN ANNULLED, EXPUNGED, SEALED, PARDONED, ERASED, OR IMPOUNDED.
OMIT MINOR TRAFFIC CITATIONS (ONLY JOB RELATED CONVICTIONS ARE CONSIDERED BY THE KROGER FAMILY OF COMPANIES).

DATE OF CONVICTION:                    CONVICTION CITY:
CONVICTION STATE:                    DISPOSITION OF THE OFFENSE:
PLEASE EXPLAIN CONVICTION:

HAVE YOU BEEN CONVICTED OF ANY OTHER CRIMES ?
DO NOT ANSWER "YES" IF YOUR CONVICTION RECORD HAS BEEN ANNULLED, EXPUNGED, SEALED, PARDONED, ERASED, OR IMPOUNDED.
OMIT MINOR TRAFFIC CITATIONS (ONLY JOB RELATED CONVICTIONS ARE CONSIDERED BY THE KROGER FAMILY OF COMPANIES).

DATE OF CONVICTION:                    CONVICTION CITY:
CONVICTION STATE:                    DISPOSITION OF THE OFFENSE:
PLEASE EXPLAIN CONVICTION:

HAVE YOU BEEN CONVICTED OF ANY OTHER CRIMES ?
DO NOT ANSWER "YES" IF YOUR CONVICTION RECORD HAS BEEN ANNULLED, EXPUNGED, SEALED, PARDONED, ERASED, OR IMPOUNDED.
OMIT MINOR TRAFFIC CITATIONS (ONLY JOB RELATED CONVICTIONS ARE CONSIDERED BY THE KROGER FAMILY OF COMPANIES).

DATE OF CONVICTION:                    CONVICTION CITY:
CONVICTION STATE:                    DISPOSITION OF THE OFFENSE:
PLEASE EXPLAIN CONVICTION:

Have you, or has anyone under your supervision, been found to have violated a prohibition on selling tobacco to minors?          No

© 2000-2007, Kronos Incorporated.  U.S. Patent No. 7,080,057. All Rights Reserved

KROGER 000472

EMPLOYMENT APPLICATION SUMMARY

[ DANIEL , ERICK , 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 ]

## PREVIOUS KROGER FAMILY OF COMPANIES EMPLOYMENT

HAVE YOU EVER WORKED FOR ANY OF THE KROGER FAMILY OF COMPANIES, ITS SUBSIDIARIES OR ANY OTHER GROCERY/RETAIL COMPANY IN THE PAST? NO

NAME OF GROCERY/RETAIL COMPANY:                 CITY / STATE:

POSITION HELD:                            FROM / TO:

REASON FOR LEAVING:

DID YOU WORK FOR THE COMPANY UNDER A DIFFERENT NAME THAN YOU USE TODAY?

LAST NAME:                          FIRST NAME:

DO YOU HAVE ANY RELATIVES WHO ARE EMPLOYED BY THE KROGER FAMILY OF COMPANIES OR IN ANY OTHER FOOD BUSINESS? NO

LAST NAME:                          FIRST NAME:

CITY / STATE:                      NAME OF EMPLOYER:

RELATIONSHIP:

## UNEMPLOYMENT HISTORY

LIST ALL INTERVALS OF UNEMPLOYMENT, IF ANY DURING THE LAST 10 YEARS

| FROM -<br>MONTH / YEAR | TO -<br>MONTH / YEAR | BRIEF STATEMENT COVERING THIS PERIOD IF APPLICABLE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

## DRIVING INQUIRIES

DRIVER'S LICENSE OR STATE ID CARD NUMBER:

LICENSE STATE: VA              LICENSE NUMBER: a61633967

## MINIMUM QUALIFICATIONS QUESTIONS

(THIS COMPANY ASKS THIS QUESTION IN ORDER TO ENSURE WE CAN COMPLY WITH STATE AND LOCAL LAWS REGULATING EMPLOYMENT OF MINORS OR ESTABLISHING AGE REQUIREMENTS FOR CERTAIN TASKS.)

ARE YOU UNDER 21 YEARS OF AGE? NO

ARE YOU UNDER 18 YEARS OF AGE? N/A

ARE YOU UNDER 16 YEARS OF AGE? N/A

ARE YOU UNDER 15 YEARS OF AGE? N/A

ARE YOU UNDER 14 YEARS OF AGE? N/A

ARE YOU WILLING TO WORK WITH THE GENERAL PUBLIC? YES

HAVE YOU EVER BEEN TERMINATED FROM A JOB? NO

IF OFFERED A POSITION, WOULD YOU BE WILLING TO SUBMIT TO A CRIMINAL BACKGROUND CHECK? YES

AFTER EMPLOYMENT, CAN YOU SUBMIT VERIFICATION OF YOUR LEGAL RIGHT TO WORK IN THE U.S.? YES

HAVE YOU EVER HAD CASH SHORTAGES OR MISUNDERSTANDINGS ABOUT FUNDS? NO

PLEASE EXPLAIN:

HAVE YOU EVER BEEN DISCHARGED OR ASKED TO RESIGN FROM ANY POSITION? NO

PLEASE EXPLAIN:

WOULD YOU BE WILLING TO BE SCREENED FOR ILLEGAL DRUG USE IN THE NEXT 24 HOURS? YES

CAN YOU PERFORM THE ESSENTIAL FUNCTIONS OF THE POSITION FOR WHICH YOU ARE APPLYING WITH OR WITHOUT REASONABLE ACCOMMODATION? YES

ARE YOU WILLING TO WORK EVENINGS? YES

ARE YOU WILLING TO WORK WEEKENDS? NO

HOW MANY FULL-TIME JOBS HAVE YOU HAD IN THE PAST 3 YEARS? 1

HOW MANY PART-TIME JOBS HAVE YOU HAD IN THE PAST 3 YEARS? 0

## APPLICANT'S STATEMENT

### PLEASE READ CAREFULLY BEFORE SIGNING BELOW

I understand that any untrue statements in this application will be just cause for dismissal.

I understand this application will be considered current for 60 days. A new application must be completed for further consideration after 60 days.

I understand that a routine inquiry may be made which will include applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the report, if one is made, will be provided.

I authorize the release of information concerning my previous employment and any pertinent information they may have, personal or otherwise, and release all parties from all liability for any damage that may result from furnishing this information to The Kroger Family of Companies.

I understand that this document represents a summary of my electronic employment application and does not include the full text of that electronic application.

I HAVE READ AND FULLY UNDERSTOOD THE FOREGOING STATEMENT.

Signature of Applicant: _____      Date: 11-7-08

(A COPY OF THIS STATEMENT IS AVAILABLE UPON REQUEST)

© 2000-2007, Kronos Incorporated. U.S. Patent No. 7,080,057. All Rights Reserved

KROGER 000473

# Interview Guide

**Name:** DANIEL      ERICK      EDWARD      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

    Last             First             Middle             SSN

| OMISSIONS | ADMISSIONS |
|---|---|
| Employment history (1) | Not available to work any weekends |

## APPLICATION SUMMARY

### POSITION

**DESIRED POSITION:** Meat/Seafood Clerk

| AVAILABILITY | MON | TUE | WED | THU | FRI | SAT | SUN |
|---|---|---|---|---|---|---|---|
| Start Time | 6:00 AM | 6:00 AM | 6:00 AM | 6:00 AM | 6:00 AM | 6:00 AM | N/A |
| End Time | 5:00 PM | 5:00 PM | 5:00 PM | 5:00 PM | 5:00 PM | 4:00 PM | N/A |

**DESIRED SCHEDULE:** Full Time
**AVAILABLE TO START:** Now
**AVAILABLE HOLIDAYS:** YES
**AVAILABLE EVENINGS:** YES
**AVAILABLE WEEKENDS:** NO
**APPLIED IN THE LAST 6 MONTHS:** YES

***\*\*\*APPLICANT DOES NOT APPEAR TO BE WOTC ELIGIBLE\*\**
IF HIRED, BE SURE TO COMPLETE THE NEW HIRE NOTIFICATION SURVEY.**

### UNICRU ASSESSMENTS

**CUSTOMER SERVICE ASSESSMENT**    Yellow    35%
Candidate is less likely to:
- Maintain a good mood
- Show patience instead of frustration
- Spend time with customers, not alone
- Consider customers' feelings and needs
- Listen carefully, understand and remember
- Cooperate with co-workers

**DEPENDABILITY ASSESSMENT**    Green    77%
Candidate is more likely to:
- Use logic to draw sound conclusions
- Use time effectively
- Motivate and inspire employees
- Give work a lot of energy
- Form effective work relationships
- Persuade and influence employees in do a good job
- Make oneself easily understood
- Actively listen to others
- Show personal stability and responsibility
- Manage own stress well

### ASSESSMENT FOLLOW-ON QUESTIONS

Tell me about a time when you were most helpful to someone who needed a lot of service or attention.
Listen for: Shows genuine concern, goes out of the way to help, gives high priority to the person, acts courteous and friendly, finds a good solution, follows through on decisions.
Tell me about a time you were pleased with your ability to understand the feelings or needs of someone who was upset.
Listen for: Easily establishes rapport, shows sincere interest, doesn't jump to conclusions, acts open/friendly/supportive, stays tactful.
Describe the hardest time you've had understanding what someone was talking about.
Listen for: Listens well, asks clear questions, shows understanding by summarizing/reflecting back what speaker says.
(How does the applicant speak during the interview)
Listen for: Correct language, clear enunciation, appropriate volume/tone/expression/smile/eye contact.
What situation have you been in that's demanded your most careful and accurate work.
Listen for: Keeps track of details, concentrates and focuses well, needs Understands, maintains quality and efficiency.
Tell me about the greatest effort you've put in at work or school-give me a lot of details about what you actually did.
Listen for: Goes beyond normal duty, shows urgency, high energy, persistence, makes sacrifices, overcomes obstacles, keeps trying.
Tell me about a specific time that you saw something that needed to be done, and you went ahead and did it to be helpful, even if no one asked you to.
Listen for: Has new ideas, shows independence and initiative, seeks to do more, starts up quickly and without being told to.
Explain what happened at a time when you were unable to keep a commitment (you didn't finish something, disappointed someone, etc).
Listen for: Admits mistakes, accepts responsibility, tries hard to meet commitments and to follow through, overcomes obstacles, collaborates to resolve issues.

### APPLICATION FOLLOW-ON QUESTIONS

Why are you interested in working for KROGER in Meat/Seafood Clerk?
Tell me about your work experience, starting with Harris Teeter.
Do you have 2 personal references?
Do you have any special training or education?

**APPLIED IN THE LAST 60 DAYS?:**    NO
**PREVIOUS ASSESSMENT SCORES :**
**PREVIOUS KO :**

| APPLICANT IS CONSIDERED A CANDIDATE FOR : POSITION / DEPARTMENT : | | RECOMMEND : | TURNDOWN |
|---|---|---|---|
| | | | HIRE |

KROGER 000474

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ERICK E. DANIEL,

        PLAINTIFF,

V.

KROGER LIMITED PARTNERSHIP I, ET AL.,

        DEFENDANTS.

CASE NO. 3:11CV245

## DECLARATION OF KENNETH R. MORRIS, JR

I, Kenneth R. Morris, Jr., pursuant to 28 U.S.C. §1746, declare as follows:

1.    I am over the age of eighteen (18), believe in the obligation of an oath, and am competent to attest to the matters contained in this Declaration

2.    I am making this Declaration on the basis of my own personal knowledge.

3.    I am an employee of Kroger Limited Partnership I ("Kroger").

4.    I was the Store Manager of the Kroger location in Chester, Virginia ("Chester location") for the duration of Erick Daniel's ("Daniel") employment.

5.    At all relevant times, Daniel was employed by Kroger Limited Partnership I and not The Kroger Co.

6.    Kroger's Chester location has established Rules & Regulations in place that delineate for employees certain conduct that is expected of them, violations of which will result in disciplinary action. Pursuant to these Rules & Regulations, if unable to report to work as scheduled, employees must call within at least two hours before the start of their scheduled shifts and speak to a member of store management or the individual in

EXHIBIT

2

charge in absence of store management. Additionally, per company policy, an employee is considered to have voluntarily resigned his or her position if he or she fails to call or report for three consecutive scheduled shifts.

7.    There is a Collective Bargaining Agreement between Kroger and the United Food and Commercial Workers, Local 400, ("CBA") that applies to employees at the Chester location. The CBA requires, among other things, that seniority be taken into account when scheduling employees. The CBA also provides that an employee who is absent from work for three consecutive working days without notifying the Store Manager will be considered to have voluntarily quit.

8.    John Owens ("Owens"), Kroger's District Meat Coordinator, and I interviewed Daniel after he submitted an application for the position of Meat Cutter at the Chester location.

9.    On the original employment application he submitted, Daniel had indicated that he was available to work Monday through Saturday until 4:00 p.m. or 5:00 p.m., but could not work on Sundays. Owens and I explained to Daniel during this job interview that Saturdays and Sundays were Kroger's busiest days for cutting and selling meat and Kroger only employed two Meat Cutters per store. Consequently, the Meat Cutter position is required to work in the evenings and on weekends on a regular basis. In response, Daniel said that while he would like to have Sundays off, he could work evenings and weekends and changed the availability section of his employment application to read "any."

10.    Kroger hired Daniel as a Meat Cutter in its Chester location on November 10, 2008.

11.   At some point either during his interview for employment or shortly thereafter, Daniel expressed that he worked as an assistant pastor at his church and would like to be able to attend services that started at 11:00 a.m. on Sundays. Daniel stated that he still could work on Sundays, either before or after his church service.

12.   The Kroger location in Chester is required to follow an established Cutting Tool, by which meat must be cut in certain intervals throughout the day to ensure freshness and reduce shrink (waste). Meat Cutters are scheduled according to Kroger's operating hours and needs to ensure that the Cutting Tool is followed and that Kroger provides the best customer service and the freshest possible meat.

13.   When Daniel was hired, there was only one other individual employed as a Meat Cutter in Kroger's Chester location, Robert Storey ("Storey"). While Daniel worked for Kroger, he and Storey were the only two Meat Cutters at that location.

14.   Storey began working for Kroger in 2005.

15.   Even though Storey had more seniority than Daniel, Storey was not afforded any Sundays off during the entire time that Daniel worked at Kroger.

16.   When Daniel was given Sundays off, the Meat Manager, Ted Taylor had to assist Storey in cutting meat to ensure that the Cutting Tool was adhered to and that freshly cut meat could be placed out for purchase. When he did this, Taylor was unable to perform his regular duties as Meat Manager.

17.   Kroger cannot have only one Meat Cutter available to work from Friday afternoon until Monday morning. This would essentially mean that Kroger would have to close down the meat department during its most productive and profitable time and would not be able to follow the Cutting Tool.

18.     On February 14, 2009, Daniel called the store at approximately 10:00 p.m. and told the Service Desk Clerk that he did not have a babysitter and could not work his scheduled shift the following day.     Daniel did not speak to a member of store management or the individual in charge of the store in the absence of store management and Kroger did not consider Daniel's failure to report to work because he did not have a babysitter to be an excusable absence. Consequently, on February 16, 2009, I reviewed company policy with Daniel and gave him a verbal warning.

19.     Kroger records reflect that on the evening of February 21, 2009, Daniel called in to report that he would not report to work for his scheduled shift the next day because, once again, he did not have a babysitter. These records also reflect that Scott Morris, the Assistant Manager, told Daniel that this was not an acceptable excuse and that he was expected to report to work as scheduled. Daniel, however, failed to report to work on the following day, and Kroger issued Daniel a written reprimand for his unexcused absence and placed him on a 90-day probationary period.

20.     Kroger did not schedule Daniel to work any Sunday morning shifts after February 22, 2009.

21.     On February 27, 2009, Daniel called Kroger and indicated that he could not work his scheduled shifts on February 28 or March 1 because he was going to be out of town. Daniel previously asked to be off for that weekend, but the Chester location was doing bi-period inventory that weekend and Kroger needed Daniel to work.

22.     Daniel failed to report to work on February 28 and March 1. He also failed to call in or report to work for his scheduled shift on March 2, 2009. Consequently, Kroger issued Daniel a written warning and extended his 90-day probationary period.

4

23. On March 8, 2009 at approximately 12:45 p.m., Daniel called Scott Morris to report that he would not be coming to work for his 3:00 p.m. to 10:00 p.m. shift that day. In response, Kroger issued Daniel a third written warning and suspended his employment for three days. In that written warning, Kroger instructed Daniel to return to work for his next scheduled shift on March 14, 2009. During that disciplinary meeting, Daniel claimed, for the first time, that Kroger was not accommodating his request to attend church services.

24. On March 14, 2009, at approximately 11:40 a.m., Daniel came to my office and told me that he wanted to change his work availability. Daniel gave me a new Availability Questionnaire form on which he had indicated that he was only available to work 7:00 a.m. to 5:00 p.m. Monday through Fridays and was not available to work at all on Saturdays and Sundays. I told Daniel that this request was not approved but that I would contact Human Resources.

25. Although he was scheduled to work from 11:30 a.m. to 8:00 p.m. on March 14, 2009, Daniel apparently left the store after giving me the form. Daniel did not tell me or any other member of store management that he would not be working his shift that day. Daniel also did not call in or report to work for his shifts the following two days – March 15 and 16, 2009.

26. Pursuant to Kroger policy and the CBA, Kroger considered Daniel's three day "no call/no show" a voluntary resignation and terminated his employment.

27. On Tuesday, March 17, 2009, Daniel called me and I confirmed that Kroger interpreted his actions as constituting job abandonment, a voluntary resignation, and that Kroger had terminated his employment.

28.  At no time during his employment did Daniel ever complain to me that he felt that anyone at Kroger disparaged him based on his religion or made negative comments about his religion.

29.  Weekly schedules at the Chester location are posted on the Friday of the preceding week.

30.  I am a Christian and attend services at a Baptist church.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on:  9-30-11

Kenneth R. Morris, Jr.


4811-8209-2043, v. 2

6

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION


ERICK DANIEL,

      Plaintiff,

     v.                Civil Action No.:
                            3:11cv245

KROGER LIMITED PARTNERSHIP I
D/B/A KROGER, et al.,

      Defendants.



\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DEPOSITION OF ERICK EDWARD DANIEL

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*




August 26, 2011



Richmond, Virginia




CHANDLER & HALASZ, INC.
Registered Professional Reporters
P.O. Box 9349
Richmond, Virginia 23227
(804) 730-1222



EXHIBIT
3

1              Deposition of ERICK EDWARD DANIEL, taken

2     by and before Valarie L. Schmit May, RPR, Notary

3     Public in and for the Commonwealth of Virginia at

4     large, pursuant to Rule 30 of the Federal Rules of

5     Civil Procedure, by notice and agreement to take

6     depositions; commencing at 9:35 a.m., August 26, 2011,

7     at JacksonLewis, LLP, 1021 East Cary Street, Suite

8     1200, Richmond, Virginia.

9

10    Appearances:

11            THE GEE LAW FIRM, P.C.

12            By:  CURTIS M. HAIRSTON, JR., ESQ.

13            Attorney, of counsel for Plaintiff

14

15            JACKSON LEWIS, LLP

16            By:  KEVIN D. HOLDEN, ESQ.

17                 CHRYSTAL L. NORRICK, ESQ.

18            Attorneys, of counsel for Defendants

19

20

21    Also present:

22

23            Shanna Eisenhauer, Paralegal, JacksonLewis

24

25

1                    ERICK EDWARD DANIEL,

2          having been sworn, testified as follows:

3

4                    DIRECT EXAMINATION

5     BY MR. HOLDEN:

6          Q    My name's Kevin Holden, and I represent

7     the defendant in this case, Kroger.  We met before,

8     but I always like to introduce myself for the record.

9               Before we get started with the formal

10    deposition, I wanted to go over some of the procedures

11    and some of the guidelines that we're going to be

12    following today.  I'm going to assume that you've met

13    with counsel and kind of gone over some of these

14    things, mostly because he's a good attorney and

15    understands how these things work.  Probably going to

16    go over a couple of them just to make sure and so we

17    have an understanding of what's going to happen today.

18              Now, this is a deposition, and a

19    deposition is my way of finding out what your position

20    is in this case, what facts you have, what information

21    you have to bear, and what you'll say if this goes to

22    trial.  The way this procedure works is I ask

23    questions and you give answers.  Now, that only works

24    if my questions are understandable and complete.  And

25    it also only works if you understand the questions and

1       A       What time?  Normally, it's in the morning

2    between 10 to 12.  Actually, sometimes it starts at

3    8:30, from 8:30, and then sometimes it starts at --

4    don't get out until maybe 1 or 2.  Or just depends on

5    if -- we take kids to early morning church, too, and

6    sometimes we don't take them to early and we just go

7    together at the 10:00, 10:30 service.

8       Q       But service is usually over by 12 or 1:00?

9       A       No.  Depends on what church you attend.

10      Q       Okay.  I'm asking about your church.

11      A       Oh, I thought you were just making a

12   general statement.

13              It varies just depending on the day and

14   what all they have there at the church.  I can't give

15   you a specific time that it ends because it never ends

16   at the same time every Sunday, to be honest.

17      Q       All right.  Well, let's back up for a

18   second.

19              What church do you attend in Georgia?

20      A       Okay.  I attend -- it's the church -- it's

21   Jonesville Baptist Church.

22      Q       The Jonesville Baptist Church?

23      A       Yes.

24      Q       And how long have you been going there?

25      A       I've been going there just recently

1        A        Yes.

2        Q        -- what time do those services start?

3        A        Normally, we start early morning with

4  early morning Bible study with my children between --

5  around 9, 9:30.

6        Q        Okay.  And then what happens?

7        A        Then we all come together and we have

8  regular worship service around 11.

9        Q        Service at 11.

10       A        Yes.

11       Q        How long does the service last?

12       A        It varies.  Sometimes 1 to 2:00.

13       Q        11 to 1 or 2.  Okay.

14       A        Sometimes earlier.  Sometimes later.

15       Q        And just so I understand, you've been

16  going to the Jonesville Baptist Church for the last

17  three to four months, and during the same time period,

18  you're also having services in your house?

19       A        Yes.  And I don't -- we're not a regular

20  member there at that church.  We just often go.  And

21  maybe if they're having something like -- normally,

22  they have a service on a Friday night or something.

23  Sometimes we'll go there on a Friday.  But we've been

24  doing that for the last two or three months there.  So

25  we're not regular members of the church, if that's

1    what you're --

2         Q    So you're not a regular.   When do you

3    attend church at the Jonesville Baptist Church?

4         A    That's what I said, like on a Friday

5    night.  Or they usually have service -- like during

6    the summertimes they usually have services like on

7    Friday night for the kids since the kids be out of

8    school.

9         Q    So you don't attend Jonesville Baptist

10   Church on Sunday?

11        A    We have went there sometimes like -- they

12   have an early morning church at 8:30 too.   Sometimes

13   we may go there.

14        Q    So sometimes you attend the 8:30 mass?

15        A    Yes.  Well, not mass.

16        Q    I'm sorry.  I said "mass."

17        A    Service.

18        Q    Service.

19        A    Catholic?

20        Q    Yeah.

21        A    Okay.

22        Q    Sometimes you attend the 8:30 service.

23   And how long is that service?

24        A    That varies.  Sometimes 10.  Sometimes

25   9:30, 10.

1    generally off.  Saturdays I usually work from 7 to 4

2    as well or sometimes earlier, just depending on the

3    day.  Sometimes I may get off maybe 2 or 3, just

4    depend on the day.  And Sundays I'm generally off.

5         Q     Unless they need you?

6         A     Need me to come in for a couple hours.

7         Q     Right.  You work Saturday on a regular

8    basis?

9         A     Saturday?  Yes, sir.

10        Q     Does that interfere with your -- with your

11   religion in any way?

12        A     On Saturday?

13        Q     Yeah.

14        A     Saturday's not the day that I, you know,

15   request to have time off.

16        Q     Yes or no, does working on Sunday

17   interfere with your religion?

18        A     No.  That's what I was saying.  It doesn't

19   have opportunity -- I don't have to practice anything

20   on Saturdays.

21        Q     So, no, it does not?

22        A     No, not on Saturdays.

23        Q     What about Monday, does your work on

24   Monday interfere with your religion?

25        A     No.

1       Q       Do you have any interest in any business,

2    a partnership or --

3       A       No, sir.

4       Q       -- a consultant or anything like that?

5       A       No, sir.

6       Q       What sources of income do you have besides

7    your work at Food Lion?

8       A       That's pretty much -- pretty much it.

9       Q       Pretty much it.

10      A       Yes.

11      Q       No other sources of income?

12      A       No.  Sometimes I get -- when I have to

13   pastor at a church, I get an honorary.

14      Q       You get an honorary?

15      A       Yes.

16      Q       What do you mean "an honorary"?

17      A       It's like a love offering they give you

18   for --

19      Q       A love offering.

20      A       Love offering.  We'd love for you to come

21   back, so we can give you an offering to express the

22   gratitude.

23      Q       Okay.

24      A       Honorary.

25      Q       How much do you get paid -- I'm sorry.

1    How much is the love offering that you get when you

2    perform service?

3          A    It varies depending on what I have to do.

4    We don't have a specific.  Whatever the senior pastor

5    decides that is deemed for that time.

6          Q    It's not a set amount?

7          A    No.

8          Q    What's the range?

9          A    It varies depending on what I have to do.

10   If I have to, you know, teach a class, it will be a

11   smaller amount.  Then if I have to do a regular

12   service or regular Sunday service, then it will be

13   more or greater.

14         Q    I thought that you get a certain amount

15   per service?

16         A    It depends on the type of service that you

17   facilitate.

18         Q    Okay.

19         A    And every church have different varies

20   according to their bylaws.

21         Q    I don't want to worry about lots of

22   different churches.  Just say the ones that you work

23   for.

24         A    Right.

25         Q    I mean, you, obviously, don't get a love

```
 1        A      Yes.

 2        Q      You attended a Baptist church for a while?

 3        A      Yes.

 4        Q      Are you also Baptist?

 5        A      I'm nondenomination.

 6        Q      Nondenominational?

 7        A      We don't discriminate.

 8        Q      Does that mean that you can attend most

 9   any Christian church?

10        A      Pretty much.

11        Q      Okay.

12               (Recess.)

13   BY MR. HOLDEN:

14        Q      We were just kind of finishing up some

15   issues regarding your religion and your wife.  And I

16   assume that when you go to church you usually go with

17   your wife?

18        A      Yes.

19        Q      And usually attend with your kids?

20        A      Yes.

21        Q      And starting from when you moved to

22   Richmond in 2008, can you tell -- you know, list for

23   me what churches you've attended.

24        A      Same one.

25        Q      Just the one?
```

```
 1      A      Yes.

 2      Q      No other churches?

 3      A      No.

 4      Q      What about any services in your house?

 5      A      No.  We did it all at church.

 6      Q      Okay.  The church in Petersburg, what time

 7   do they offer services on Sunday?

 8      A      Start at 5:30 we have early morning prayer

 9   service.  9:30 we have men's fellowship or leadership

10   class, just depend.

11      Q      Okay.

12      A      And they have Sunday children's ministry

13   as well.  And then at 11:00 we have --

14      Q      That's the main service?

15      A      Yes, main service.

16      Q      How long does that last?

17      A      Oh, it varies.  Somewhere between two,

18   maybe.  Sometimes after two, maybe three.

19      Q      Two hours?

20      A      Little more than two hours.  Maybe two to

21   three hours be a fair assumption, with all fairness.

22      Q      Now, I'm not talking about what happens

23   after church.  I'm not talking about the meetings.

24   I'm not talking the followings.  I'm saying when you

25   start the service and when you end the service.  How
```

1    11:00.  We also have them at 5:00.  And sometimes

2    during the holiday season we kind of cram some more

3    services in there.  You know what I mean?

4          A     Right.

5          Q     So my frame of reference is, you know, you

6    have services at certain times.  I think what your

7    counsel is suggesting is that your -- at the Lord

8    Jesus Christ House of Prayer it was a little bit

9    different.

10         A     Yes.

11         Q     It's my understanding that there is a

12   regular 11:00 service.

13         A     Yes.  And that's what we call the worship

14   service.

15         Q     The worship service, right.

16         A     Yes.

17         Q     But I think that your counsel was alluding

18   to something a little bit different, and that is that

19   you have other services at night.  Tell me about that.

20         A     Yes.  There may be a time when he have to

21   go -- apart from the regular 11:00 service, he may

22   have an engagement or something on the calendar that

23   would allow him to go speak at another

24   pre-engagement --

25         Q     Okay.

1         A      Yes, sir.

2         Q      Did you attend the Bible study on Thursday

3   nights?

4         A      Yes, sir.

5         Q      Did you run those?

6         A      Sometimes I did, yes.

7         Q      Okay.  Now, you're on the board.  You're,

8   at times, a pastor, an assistant pastor.  But you

9   didn't create this church, correct?

10        A      No.

11        Q      What administrative duties did you have at

12  the church?  Besides, you know, presiding over the

13  services, what else did you do to help keep the church

14  running?

15        A      I helped facilitate the sanctuary, make

16  sure everything was, you know, kept in the right

17  place.  I also helped with the Bible studies, the

18  leadership class.  I helped instruct those and teach

19  those.

20        Q      Hang on.  I'm going to stop you and ask

21  you to go back.

22        A      Sure.

23        Q      You instructed Bible studies?

24        A      Uh-huh.  Or facilitate, for lack of a

25  better word.

1       Q       But let's go backwards.  And you said

2  you -- what did you do for the physical structure?

3       A       I said I make sure that the church was

4  kept and make sure it was locked and secure.

5       Q       That was your job?

6       A       Well, if I -- you know, just depends on

7  who gets there first.  I open up, make sure everything

8  was right before the members get there.

9       Q       Okay.

10      A       I wouldn't label it as a job.  More like a

11 responsibility.  No one had to call and tell me --

12      Q       It's not a job.  It's an adventure, right?

13      A       It's more like a calling.

14      Q       I got you.

15              All right.  I'm not talking about the

16 religious aspect of it.  Now I'm talking just about

17 the straight-forward business side of it.  What were

18 your responsibilities?

19      A       On the business side we had someone that

20 was handling all the business administration parts of

21 it.

22      Q       Who did that?

23      A       Carrie Morrison.  So I didn't have to get

24 in depth with that unless they need my signature on

25 something to verify.  Because have to have two

1    signatures on, you know --

2         Q    Okay.  So you would sign checks and she

3    would sign checks?

4         A    Well, no, not so much checks.  If like

5    someone submit some paperwork, they need an expense

6    report to purchase something, then I check and make

7    sure everything's legit, you know, before we clear it

8    then and go through the pastor.  So he'll look over it

9    first.  If I sign it, he'll look over it, make sure

10   it's okay.

11        Q    Okay.

12        A    Not just saying somebody said they want

13   something they're not using for church and using it

14   for their own personal use.  So those things we kind

15   of watch, make sure we're not misusing church funds.

16        Q    Sure.  And you would have some

17   responsibility in that regard?

18        A    Yes.

19        Q    And you would also get the church ready

20   for service?

21        A    (Nodding head.)

22        Q    Clean up afterwards --

23        A    Yes.

24        Q    -- right?  Would you make sure that the

25   bills got paid?

1.     A     No, I didn't handle any financial aspect.

2     Q     Nothing?

3     A     We had a -- in the financial department we

4 had someone, the accountant, that was handling all

5 that.

6     Q     Who was that?

7     A     Carrie.

8     Q     Carrie?  She's the accountant?  Is she a

9 CPA?

10     A     I don't know for sure.  I think she went

11 to school for it.

12     Q     Okay.  What about, you know, brochures or

13 announcements, would you make sure that those got out?

14     A     We had someone designated to make the

15 announcement, unless there was something added.  Then

16 I was asked to make sure the announcement get made or

17 to go back and reemphasize or to revisit something.

18     Q     Okay.  Any other business of the church

19 you were involved in, the administrative side?

20     A     Not the business part.

21     Q     Okay.  But it's -- is it a fair statement

22 to say that you weren't just responsible for showing

23 up on Sunday and presiding over the service; you had

24 these other business or administrative duties, isn't

25 that right?

1       A       Say again now.

2       Q       Your involvement with the church in

3  Petersburg was not just to show up and attend a

4  service.  It wasn't even to show up and preside over

5  the service.  But you had additional responsibilities,

6  administrative and business responsibilities, to help

7  keeping the church going, isn't that true?

8       A       Pre-existing obligations, is that what

9  you're referring to?

10      Q       I don't know whether they're pre-existing

11 or they're existing now.  But you had duties and

12 obligations to the church, aside from merely

13 preaching?

14      A       Right.  Yes, that would be a fair

15 assessment.

16      Q       I hope I'm using the right word.  Is

17 "preaching" an appropriate way to describe conducting

18 a service?

19      A       I would say ministering.

20      Q       Ministering.  I apologize.  I'll be sure

21 to use that phrase.

22              Did you receive any pay for these

23 non-ministering services?

24      A       No, sir.

25      Q       Okay.  Let's talk about Kroger.

1        A     Yes.

2        Q     And what day is Ukrop's not open on?

3        A     Sunday.

4        Q     Okay.  Does that make Sunday a pretty busy

5   day at Kroger?

6        A     One would think so.

7        Q     Yeah.  Anyway, so they explained that

8   Friday, Saturday and Sundays are their busiest days.

9        A     Uh-huh.

10        Q     And they explained if you can't work

11   Friday, Saturday and Sunday, we can't take your

12   application, right?

13        A     It wasn't like that.  They didn't tell me

14   if I couldn't work Friday, Saturday and Sunday, they

15   couldn't take my application.

16        Q     Well, isn't it true that they said, "Look,

17   we need to have someone available to work Friday,

18   Saturday and Sunday; it's our busiest day.  If you

19   can't work that day, we can't hire you"?  At that

20   point, then, you take out your pen, you cross off what

21   you previously said, and you write under Monday,

22   "Any," Tuesday, "Any," Wednesday, Thursday, "Any,"

23   Friday, "Any," Saturday, "Any," and Sunday "Any,"

24   isn't that true?

25        A     No, that's not true.

1       A       Could you --

2       Q       Not offhand?

3       A       No, sir.

4       Q       Do you remember a question where we asked

5   that, please put in detail any communications that

6   took place between you and any Kroger employee

7   regarding religious beliefs including, but not limited

8   to, your work schedule?  Do you remember that question

9   generally?

10      A       Sort of, yes.

11      Q       Do you remember wherein you said that when

12  you were hired you told Kenny Morris and Ted Taylor

13  "that in order to fulfill his religious beliefs and

14  obligations, he would need to attend church services.

15  He indicated that he could work partial days but not

16  an entire shift on Sundays"?  Is that what you said?

17      A       I told them I could either come in early

18  in the morning or in the afternoon.  That's what I

19  told them.

20      Q       Okay.

21      A       I mean, if you -- I just want to know if

22  you classify that as a partial.  I don't know.

23      Q       That's what it sounds like.  So you told

24  them you could work on Sunday mornings or Sunday

25  afternoons, right?

1     A     Until 9 or 10:00 in the morning, no later.

2     Q     Okay.

3     A     And then after 2 or 3:00 in the afternoon
4  on Sundays.

5     Q     Okay.  So that's what you told them at the
6  application process?

7     A     That was the agreement.

8     Q     Okay.  Well, that's what you told them,
9  right?

10     A     Right.

11     Q     And then what did they say in response?

12     A     Sure, they didn't have a problem with
13  that.

14     Q     They did not have a problem with that.
15  Okay.

16     A     Because -- yeah, that's right.

17     Q     Okay.  Even still, the only written
18  documentation, according to your application, is that
19  you said you could work "Any" on Sunday, right?

20     A     The only what now?

21     Q     The only written availability says "Any"
22  for Sunday, isn't that right?

23     A     Written, yes.

24     Q     Okay.  Why did you change it from not
25  available on Sunday to "Any"?

1     A    Why?

2     Q    Yeah.

3     A    Because sometimes, he said, someone may

4  need a vacation, need some time off.  I might need for

5  you to come in after your church service, either

6  before or after.  I said, So if there's a time

7  somebody on vacation, you need for me to come in after

8  the church service or come in a couple hours before

9  church service, I said I could do that but not work

10  all day on Sundays because I had pre-existing

11  obligations at church.

12     Q    So that's why you changed it from I can't

13  work Sundays to "Any"?

14     A    That's why I put up there, yes.

15     Q    Okay.  Now, do you remember if you went

16  into specific detail about the church services or you

17  merely said I can work early in the morning and then

18  in the afternoon?

19     A    Early in the -- it's always been early in

20  the morning before church service or after church

21  service, I said, but sometimes I don't know what I

22  have to do after church service.  I might not -- I

23  might have to counsel, I may have a meeting, or I may

24  have some more pastorical stuff I have to do.  I might

25  not be able to get off or be there.

1   your application, right?

2          A      Uh-huh.  No.  On the application.

3          Q      Right.  And the only caveat was I can work

4   early in the morning, I attend the service, and then I

5   could work in the afternoon, right?  That's what you

6   told them.

7          A      I told them that, yes.

8          Q      Okay.  Now, did you tell them anything

9   different than that at any other point during your

10  employment?

11         A      Yes.  That's when I told them, I said,

12  depending on my church obligation --

13         Q      Hang on.  Let's do it one step at a time.

14         A      Yes.

15         Q      When did you tell Kroger something

16  different as to what your religious requirements were?

17         A      I told them in the interview process.

18         Q      Okay.  We're going through what -- you're

19  at the interview process.  At the interview process

20  you say, first, can't work Sunday.

21         A      Uh-huh.

22         Q      Then you say, when you find out that you

23  can't have the job if you can't work Sunday, you say,

24  Well, hang on.  I can work in the morning before

25  service, and I can work in the afternoon after

1    service, correct?

2           A       Yes.

3           Q       And that's what you told them?

4           A       Yes.

5           Q       And based on that understanding, you were

6    hired --

7           A       Yes.

8           Q       -- correct?   Right?

9           A       Based on that.

10          Q       Now, did you, after the interview process,

11   tell Kroger anything different from what you said

12   about working in the morning and then in the afternoon

13   but just not on church service on Sunday?

14          A       Okay.   Did I tell them anything different?

15   Meaning that did I change my scheduling on Sunday?   Is

16   that what you're asking me?

17          Q       Let's put it this way:   Your religious

18   beliefs didn't change since when you started at Kroger

19   versus when you left Kroger, right?

20          A       No.

21          Q       So your religious beliefs were always the

22   same.

23          A       Yes, my -- okay.

24          Q       Your religious beliefs, right?

25          A       Yes.

1   regards to my schedule.

2        Q    Right.  Okay.  And you said you want

3   the -- you need to have the whole day off?

4        A    Yes.

5        Q    Did you tell him why?

6        A    Yes.

7        Q    And what did you say?

8        A    Because I'm not having an opportunity to

9   practice my beliefs and my church obligations.

10       Q    And what did he say?

11       A    He said he couldn't do it.

12       Q    Okay.  Did you have any other discussion

13  with Kroger or anyone in management at Kroger about

14  changing your religious needs?

15       A    I asked Kenny could he speak with the lady

16  in the human resource and see if they can get me

17  transferred to another store or somewhere where they

18  can accommodate my needs so I can have that Sunday

19  off.

20       Q    He asked you to see if you could transfer

21  to another location --

22       A    No.  I asked him.

23       Q    You asked.  You asked if you could be

24  transferred to another location where you wouldn't

25  have to work Sunday at all?

1    schedule me to work all day.

2         Q    Okay.

3         A    I went to him about that.

4         Q    Okay.  That really wasn't harassment as

5    much as he wasn't accommodating your religious needs,

6    right?

7         A    Well, that was more discriminating.  I

8    didn't have an opportunity to practice what I believe

9    in.  That's what I was saying.

10        Q    Okay.  Discrimination, right, but not

11   harassment.  No one was calling you dirty names

12   because you're a Christian.  No one was making fun of

13   your religion in such a way that you, you know, would

14   cry and you couldn't stand that people were making fun

15   of you because of your religion.  That didn't happen.

16   It was just that they didn't give you Sundays off,

17   right?

18        A    Well, not knowingly.  I'm saying -- I

19   said, if they did, I didn't know they did, something

20   like that.

21        Q    Fair enough.  I just wanted to make sure.

22             Okay.  Turn the page again.

23             Now we're looking at the Mid-Atlantic

24   Marketing Area Rules and Regulations.  You familiar

25   with these rules?

1    more time off.  That's why I want -- I put Monday

2    through Friday.  With part time you have more

3    opportunities to -- they told me, you know, before

4    hiring that, you know, as a part-timer you're not

5    required to be there as much; you have more

6    flexibility.  And there isn't a problem with your

7    availability if you're part time, because a lot of

8    people work part time around school.

9          Q     What's your definition of part time?

10         A     20 to 30 hours a week.

11         Q     Okay.  Now, again, I ask the question:

12   Why did you say you could not work on Saturday?

13         A     Because I want more time -- I was in the

14   process and thinking about going back to school so I

15   wanted that time to spend with my family and have

16   opportunity to practice my beliefs on Sunday and

17   prepare myself for Sunday as well.

18         Q     So now you -- okay.  So you wanted

19   Saturday off so you could go to school and so you

20   could prepare to practice your religious beliefs.  Is

21   that what you're saying?

22         A     I said for my family and I was thinking

23   about going to school.

24         Q     Okay.  And you want to spend time with

25   your family.

1    became the pastor and then he went back to being

2    assistant pastor.  I'm just trying to figure out how

3    this all fits together.

4    BY MR. HOLDEN:

5        Q    Take a look at that.

6

7             (Daniel Exhibit No. 12 was marked.)

8

9    BY MR. HOLDEN:

10       Q    Is that your current business card?

11       A    Yes, it is, sir.

12       Q    So your current business card is "Pastor"?

13       A    Yes, sir.

14       Q    Okay.  Right?  And how many pastors are

15   there at the Lord Jesus Christ House of Prayer?

16       A    Three.

17       Q    Who are the other two pastors?

18       A    Senior pastor, Pastor Walter McLaurin.

19       Q    And who's the other one?

20       A    I think it's Wanda McLaurin.

21       Q    Okay.  Did you ever discuss religion at

22   work?

23       A    Do I ever discuss religion at work?  In

24   regards to?

25       Q    Were you ever at work and discussed

1   religion?

2          A      Depends on if I was on a break.   Or

3   someone asked me something or I got a telephone call,

4   I took a break, as I before said.

5          Q      Okay.  So the answer is --

6          A      I'm not understanding your question.

7          Q      Did you ever minister while you were

8   working at Kroger?

9          A      Not to my knowledge.

10         Q      Okay.  What is your supervisor's religion

11  while you were at Kroger?

12         A      I have no idea.

13         Q      You don't know what religion Ted is?

14         A      No.  I don't pry on other people, you

15  know, unless they ask me or --

16         Q      I just want to know whether you knew.

17         A      No, I'm just telling you.

18         Q      You asked me if I was Catholic.

19         A      Well, I knew by certain statements you

20  made.

21         Q      Kidding.  Kidding.  It's okay.  It's okay.

22  I don't have no problem with you asking if I'm

23  Catholic.  My wife would be very happy to know that

24  you asked me whether or not I was Catholic and I was

25  able to answer yes.

1        Q      Well, there's only two.  Well, there is

2    one.  There is one.  We're working on one.

3        A      We're working on one, yes.

4        Q      Yeah, we're working on one.

5        A      We're just waiting to get the clearance

6    from the senior pastor.

7        Q      Right.  Okay.  What religion is Kenny?

8        A      I have no idea.

9        Q      What religion is John Owens?

10       A      I don't talk affiliation with other people

11   on the job, especially managers, unless they ask me or

12   volunteers information, then I would.

13       Q      While you were working at Kroger, did you

14   attend church at least once a week every week?

15       A      Yes.

16       Q      Did you attend church more than once a

17   week?

18       A      Yes.

19       Q      How many times did you attend more than

20   once while you worked at Kroger?

21       A      More than once?

22       Q      Yeah.  How many times did you attend more

23   than one worship service a week while you worked at

24   Kroger?

25       A      Every week that I was there.

1    my beliefs.

2        Q    I think I understand what you're saying,

3    but I just want to clarify it.  And that is that

4    you're not claiming that Kroger had a number of people

5    that they could have assigned to work on Sunday but

6    chose to put you there to -- you know, out of an

7    animus towards Christianity.  It's just that they had

8    to put someone there, and they were indifferent as to

9    whether or not you had religious beliefs that would

10   interfere with your ability to work.  You see what I'm

11   saying?

12       A    No.

13       Q    What I'm trying to say is that Kroger

14   didn't have any animus towards you, any ill will

15   towards Christianity, right?

16       A    I think they did.

17       Q    All right.  What's your basis for saying

18   that they have ill will towards Christianity?

19       A    Anytime someone deliberately schedule you

20   in a time that you prefer to practice your -- time

21   that you -- sacred time that you practice your

22   religious belief and they knowing that you -- that's

23   the time that you practice, that's deliberately.

24       Q    Well, you agree that someone had to work

25   the schedule, right?

```
 1        A     I -- but I agreed, before hiring, the time

 2   frame that I could work before I accept the job.

 3        Q     So who should have worked that schedule

 4   instead of you?

 5        A     Well, they was working it long before I

 6   got there.  I wasn't the market manager so I don't

 7   know.

 8        Q     So who should have worked the schedule on

 9   Sundays instead of you?

10        A     I don't know, but it wasn't me.

11        Q     Okay.  You can't point to anyone that they

12   should have put instead of you, right?

13        A     It's not my job to -- to determine who

14   could have worked in my place.

15        Q     My point is this:  Is that -- strike that.

16              Do you have any evidence, other than what

17   you've already testified, that Kroger had any animus

18   towards you because of your religion?

19        A     Yes, I believe.

20        Q     What's that evidence?

21        A     I believe by them scheduling me on that

22   time.

23        Q     Aside from how they scheduled you, any

24   other evidence?

25        A     Well, I think that was the major part
```

1   there.

2        Q      Aside from that, any other evidence?   Or

3   is that your evidence?

4        A      That's it.

5        Q      Okay.   Anything else you want to add?

6        A      In regards to?

7        Q      Anything else that we've talked about

8   today that you want to correct or add?

9        A      Nothing I just want to correct or add.

10       Q      All right.   Did you understand the

11  questions?

12       A      Yes, I did.

13       Q      You answer all the questions truthfully?

14       A      To the best of my knowledge.

15       Q      And any answers you want to change at this

16  point?

17       A      No, sir.

18              MR. HOLDEN:   That's all I have.

19              MR. HAIRSTON:   Okay.   I've just got a

20  couple of follow-ups.

21

22                   CROSS-EXAMINATION

23  BY MR. HAIRSTON:

24       Q      When you were -- you testified earlier

25  today and you used the term that you had been

11/12/08 - 1:11pm                    MEAT / MEAT                              PAGE  1

## EKLY WORK SCHEDULE - WEEK OF 11/22/08

| | SUN 11/16/08 | MON 11/17/08 | TUE 11/18/08 | WED 11/19/08 | THU 11/20/08 | FRI 11/21/08 | SAT 11/22/08 | |
|---|---|---|---|---|---|---|---|---|
| TAYLOR,  THEODOR | 600a- 230p | OFF | 700a- 330p | 800a- 430p | OFF | 700a- 330p | 1130a- 800p | 40.00 |
| 205          LUNCH> | 1000a-1030a | | 1100a-1130a | 1200p-1230p | | 1100a-1130a | 330p- 400p | |
| MEMO/JOB> | | | | | | | | 0.00 |
| STORBY,  ROBERT | 900a- 430p | 1130a- 800p | 830a- 400p | OFF | 800a- 330p | 930a- 600p | OFF | 38.50 |
| 83          LUNCH> | | 330p- 400p | | | | 130p- 200p | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND,  WILLIA | OFF | 800a- 430p | OFF | 800a- 430p | 800a- 430p | 800a- 430p | 1030a- 800p | 33.50 |
| 257          LUNCH> | | 1200p-1230p | | 1200p-1230p | 1200p-1230p | 1200p-1230p | | |
| MEMO/JOB> | | SEAFOOD | | | | | | 8.00 |
| SLAYTON,  DIANE | 1130a- 700p | OFF | OFF | 230p-1000p | 230p-1000p | 1030a- 700p | 700a- 330p | 30.50 |
| 244          LUNCH> | | | | | | 230p- 300p | 1100a-1130a | |
| MEMO/JOB> | | | | | | | SEAFOOD | 8.00 |
| BRANCH,  CHRISTO | OFF | 500p-1000p | OFF | 500p- 900p | OFF | OFF | 400p-1000p | 15.00 |
| 56          LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| HILL,   DONALD RE | OFF | OFF | 500p-1000p | OFF | 400p-1000p | 400p-1000p | OFF | 17.00 |
| 74          LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| ANDREWS,  RASHAR | 500p-1000p | OFF | 500p-1000p | OFF | OFF | OFF | 500p-1000p | 15.00 |
| 39          LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN,  ELLEN | 1100a- 300p | 1100a- 300p | 1100a- 300p | OFF | 1100a- 300p | OFF | OFF | 16.00 |
| 48          LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WILSON,  CURTIS | 930a- 500p | OFF | OFF | 500p-1000p | OFF | 500p-1000p | 930a- 500p | 25.00 |
| 107          LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| JACKSON,  SIMONE | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 10          LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL,  ERICK E | 300p-1000p | 800a- 300p | OFF | 930a- 600p | 930a- 600p | OFF | 800a- 430p | 38.00 |
| 42          LUNCH> | | | | 130p- 200p | 130p- 200p | | 1200p-1230p | |
| MEMO/JOB> | | | | | | | | 0.00 |



EXHIBIT
4

KROGER 000110

11/20/08 - 3:14pm                    MEAT / MEAT                                   PAGE   1

ᵂEEKLY WORK SCHEDULE - WEEK OF 11/29/08

| | | SUN 11/23/08 | MON 11/24/08 | TUE 11/25/08 | WED 11/26/08 | THU 11/27/08 | FRI 11/28/08 | SAT 11/29/08 | |
|---|---|---|---|---|---|---|---|---|---|
| TAYLOR, THEODOR | | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, ROBERT | | 700a- 330p | 900a- 530p | OFF | 900a- 530p | OFF | 600a- 230p | 1030a- 700p | 40.00 |
| 83 | LUNCH> | 1100a-1130a | 100p- 130p | | 100p- 130p | | 1000a-1030a | 230p- 300p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, WILLIA | | OFF | 800a- 430p | 800a- 430p | 1130a- 800p | 930a- 600p | OFF | 800a- 430p | 40.00 |
| 257 | LUNCH> | | 1200p-1230p | 1200p-1230p | 330p- 400p | 130p- 200p | | 1200p-1230p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| SLAYTON, DIANE | | 900a- 530p | OFF | OFF | 700a- 330p | OFF | 130p-1000p | 700a- 330p | 16.00 |
| 244 | LUNCH> | 100p- 130p | | | 1100a-1130a | | 530p- 600p | 1100a-1130a | |
| | MEMO/JOB> | | | | SEAFOOD | | | SEAFOOD | 16.00 |
| BRANCH, CHRISTO | | 400p-1000p | 500p-1000p | OFF | 500p-1000p | OFF | OFF | OFF | 16.00 |
| 56 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| HILL, DONALD RE | | OFF | OFF | 500p-1000p | 500p-1000p | OFF | OFF | OFF | 10.00 |
| 74 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| ANDREWS, RASHAR | | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 39 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN, ELLEN | | 1000a- 300p | 1000a- 300p | OFF | OFF | OFF | OFF | 1000a- 300p | 15.00 |
| 48 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WILSON, CURTIS | | OFF | OFF | 500p-1000p | OFF | OFF | OFF | 500p-1000p | 10.00 |
| 107 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| JACKSON, SIMONE | | OFF | OFF | OFF | OFF | OFF | 500p-1000p | 500p-1000p | 10.00 |
| 10 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL, ERICK E | | 230p-1000p | OFF | 900a- 530p | OFF | 700a- 330p | 900a- 530p | 800a- 430p | 39.50 |
| 42 | LUNCH> | | | 100p- 130p | | 1100a-1130a | 100p- 130p | 1200p-1230p | |
| | MEMO/JOB> | | | | | | | | 0.00 |

KROGER 000112

11/25/08 - 4:32pm                    MEAT / MEAT                                    PAGE  1

### EKLY WORK SCHEDULE - WEEK OF 12/06/08

| | SUN 11/30/08 | MON 12/01/08 | TUE 12/02/08 | WED 12/03/08 | THU 12/04/08 | FRI 12/05/08 | SAT 12/06/08 | |
|---|---|---|---|---|---|---|---|---|
| TAYLOR, THEODOR | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, ROBERT | 700a- 330p | 900a- 530p | OFF | 700a- 330p | OFF | 700a- 330p | 1030a- 700p | 40.00 |
| 83  LUNCH> | 1100a-1130a | 100p- 130p | | 1100a-1130a | | 1100a-1130a | 230p- 300p | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, WILLIA | 900a- 530p | 800a- 430p | 800a- 430p | 1130a- 800p | OFF | OFF | 700a- 330p | 40.00 |
| 257  LUNCH> | 100p- 130p | 1200p-1230p | 1200p-1230p | 330p- 400p | | | 1100a-1130a | |
| MEMO/JOB> | | | | | | | | 0.00 |
| LAYTON, DIANE | 500a- 130p | OFF | OFF | 700a- 330p | 900a- 530p | 130p-1000p | 700a- 330p | 32.00 |
| 244  LUNCH> | 900a- 930a | | | 1100a-1130a | 100p- 130p | 530p- 600p | 1100a-1130a | |
| MEMO/JOB> | | | | SEAFOOD | | | | 8.00 |
| BRANCH, CHRISTO | 500p-1000p | 500p-1000p | 500p-1000p | 500p-1000p | OFF | OFF | 500p-1000p | 25.00 |
| 56  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| HILL, DONALD RE | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 4  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| ANDREWS, RASHAR | OFF | OFF | 500p-1000p | OFF | OFF | OFF | 500p-1000p | 10.00 |
| 39  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| LSMAN, ELLEN | 1000a- 300p | 1100a- 400p | 1000a- 300p | 1000a- 300p | OFF | OFF | 1000a- 300p | 25.00 |
| 3  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WILSON, CURTIS | OFF | 500p-1000p | 500p-1000p | 500p-1000p | 500p-1000p | OFF | OFF | 20.00 |
| 107  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| JACKSON, SIMONE | OFF | OFF | OFF | OFF | 500p-1000p | 500p-1000p | OFF | 10.00 |
| 10  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL, ERICK E | 400p-1000p | OFF | 900a- 530p | OFF | 700a- 330p | 900a- 530p | 800a- 430p | 38.00 |
| 42  LUNCH> | | | 100p- 130p | | 1100a-1130a | 100p- 130p | 1200p-1230p | |
| MEMO/JOB> | | | | | | | | 0.00 |

Total Paid Hours For...

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| This Job Class: | 40.00 | 31.00 | 36.00 | 31.00 | 26.00 | 29.00 | 47.00 | 240.00 |
| er Classes in Dept: | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 |

KROGER 000114

```
12/04/08 - 10:26am                    MEAT / MEAT                              PAGE  1
```

## EKLY WORK SCHEDULE - WEEK OF 12/13/08

| | SUN 12/07/08 | MON 12/08/08 | TUE 12/09/08 | WED 12/10/08 | THU 12/11/08 | FRI 12/12/08 | SAT 12/13/08 | |
|---|---|---|---|---|---|---|---|---|
| TAYLOR, THEODOR | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, ROBERT | 930a- 600p | 930a- 600p | OFF | 700a- 330p | OFF | 700a- 330p | 1030a- 700p | 40.00 |
| 83  LUNCH> | 130p- 200p | 130p- 200p | | 1100a-1130a | | 1100a-1130a | 230p- 300p | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, WILLIA | 700a- 330p | 800a- 430p | 800a- 430p | OFF | OFF | 800a- 430p | 900a- 530p | 40.00 |
| 257  LUNCH> | 1100a-1130a | 1200p-1230p | 1200p-1230p | | | 1200p-1230p | 100p- 130p | |
| MEMO/JOB> | | | | | | | | 0.00 |
| SLAYTON, DIANE | 500a- 130p | OFF | OFF | 700a- 330p | 130p-1000p | 900a- 530p | 700a- 330p | 24.00 |
| 244  LUNCH> | 900a- 930a | | | 1100a-1130a | 530p- 600p | 100p- 130p | 1100a-1130a | |
| MEMO/JOB> | | | | SEAFOOD | | | SEAFOOD | 16.00 |
| BRANCH, CHRISTO | 400p-1000p | 500p-1000p | 400p-1000p | 400p-1000p | OFF | OFF | 400p-1000p | 29.00 |
| 56  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| ANDREWS, RASHAR | OFF | OFF | OFF | OFF | 500p-1000p | OFF | OFF | 5.00 |
| 9  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN, ELLEN | 1000a- 500p | 500p-1000p | 1000a- 400p | OFF | 800a- 200p | OFF | 1100a- 500p | 30.00 |
| 48  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| ILSON, CURTIS | 500p-1000p | OFF | OFF | 500p-1000p | OFF | 500p-1000p | 500p-1000p | 20.00 |
| 107  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| JACKSON, SIMONE | OFF | OFF | OFF | OFF | OFF | 500p-1000p | OFF | 5.00 |
| 10  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL, ERICK E | OFF | OFF | 930a- 600p | 930a- 600p | 930a- 600p | 1030a- 700p | 800a- 230p | 38.50 |
| 42  LUNCH> | | | 130p- 200p | 130p- 200p | 130p- 200p | 230p- 300p | | |
| MEMO/JOB> | | | | | | | | 0.00 |

```
Total Paid Hours For...
This Job Class:           42.00    26.00    28.00    27.00    27.00    42.00    39.50   231.50
Other Classes in Dept:     0.00     0.00     0.00     8.00     0.00     0.00     8.00    16.00
```

KROGER 000116

12/09/08 - 8:08am                    MEAT / MEAT                                    PAGE  1

## EKLY WORK SCHEDULE - WEEK OF 12/20/08

|  |  | SUN 12/14/08 | MON 12/15/08 | TUE 12/16/08 | WED 12/17/08 | THU 12/18/08 | FRI 12/19/08 | SAT 12/20/08 |  |
|---|---|---|---|---|---|---|---|---|---|
| TAYLOR,  THEODOR | | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| STOREY,  ROBERT | | 700a- 330p | 930a- 600p | OFF | 700a- 330p | OFF | 930a- 600p | 700a- 330p | 40.00 |
| 83 | LUNCH> | 1100a-1130a | 130p- 200p | | 1100a-1130a | | 130p- 200p | 1100a-1130a | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND,  WILLIA | | 800a- 430p | 830a- 500p | 1200p- 830p | OFF | OFF | 800a- 430p | 830a- 500p | 40.00 |
| 257 | LUNCH> | 1200p-1230p | 1230p- 100p | 400p- 430p | | | 1200p-1230p | 1230p- 100p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| CLAYTON,  DIANE | | 500a- 130p | OFF | OFF | 1130a- 800p | 700a- 330p | OFF | | 24.00 |
| 244 | LUNCH> | 900a- 930a | | | 330p- 400p | 1100a-1130a | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| BRANCH,  CHRISTO | | 400p-1000p | 400p-1000p | 400p-1000p | 400p-1000p | OFF | OFF | 400p-1000p | 30.00 |
| 56 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| ANDREWS,  RASHAR | | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN,  ELLEN | | 800a- 200p | 800a- 200p | OFF | OFF | 400p-1000p | 400p-1000p | 800a- 200p | 30.00 |
| 48 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WILSON,  CURTIS | | OFF | 400p-1000p | OFF | 400p-1000p | 400p-1000p | 400p-1000p | 400p-1000p | 30.00 |
| J7 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| JACKSON,  SIMONE | | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 10 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL,  ERICK E | | 230p-1000p | OFF | 700a- 330p | 930a- 600p | 930a- 600p | OFF | 1030a- 700p | 39.50 |
| 42 | LUNCH> | | | 1100a-1130a | 130p- 200p | 130p- 200p | | 230p- 300p | |
| | MEMO/JOB> | | | | | | | | 0.00 |

Total Paid Hours For...
| This Job Class: | 43.50 | 34.00 | 22.00 | 28.00 | 28.00 | 36.00 | 42.00 | 233.50 |
|---|---|---|---|---|---|---|---|---|
| Other Classes in Dept: | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

KROGER 000418

12/18/08 - 2:02pm                    MEAT / MEAT                              PAGE   1

EKLY WORK SCHEDULE - WEEK OF 12/27/08

| | SUN 12/21/08 | MON 12/22/08 | TUE 12/23/08 | WED 12/24/08 | THU 12/25/08 | FRI 12/26/08 | SAT 12/27/08 | |
|---|---|---|---|---|---|---|---|---|
| TAYLOR, THEODOR | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205    LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, ROBERT | 900a- 530p | 700a- 330p | 1130a- 800p | OFF | OFF | 700a- 330p | 700a- 330p | 40.00 |
| 83    LUNCH> | 100p- 130p | 1100a-1130a | 330p- 400p | | | 1100a-1130a | 1100a-1130a | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, WILLIA | 800a- 430p | 830a- 500p | 1200p- 830p | 930a- 600p | OFF | 800a- 430p | OFF | 40.00 |
| 257    LUNCH> | 1200p-1230p | 1230p- 100p | 400p- 430p | 130p- 200p | | 1200p-1230p | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| LAYTON, DIANE | 500a- 130p | OFF | OFF | 700a- 330p | OFF | 130p-1000p | 930a- 600p | 32.00 |
| 244    LUNCH> | 900a- 930a | | | 1100a-1130a | | 530p- 600p | 130p- 200p | |
| MEMO/JOB> | | | | | | | | 0.00 |
| BRANCH, CHRISTO | 400p-1000p | 400p-1000p | 400p-1000p | 1200p- 600p | OFF | OFF | 400p-1000p | 30.00 |
| 56    LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN, ELLEN | 1000a- 400p | 1000a- 400p | 1000a- 400p | OFF | OFF | OFF | 800a- 200p | 24.00 |
| LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WILSON, CURTIS | 400p-1000p | OFF | 400p-1000p | OFF | OFF | 400p-1000p | 400p-1000p | 24.00 |
| 107    LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| NIEL, ERICK E | OFF | 1130a- 800p | 800a- 430p | 930a- 600p | OFF | 830a- 500p | 1030a- 700p | 40.00 |
| LUNCH> | | 330p- 400p | 1200p-1230p | 130p- 200p | | 1230p- 100p | 230p- 300p | |
| MEMO/JOB> | | | | | | | | 0.00 |

al Paid Hours For...

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| s Job Class: | 42.00 | 36.00 | 42.00 | 30.00 | 0.00 | 38.00 | 42.00 | 230.00 |
| er Classes in Dept: | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

KROGER 000121

12/26/08 - 3:59pm                    MEAT / MEAT                              PAGE  1

### EKLY WORK SCHEDULE - WEEK OF 01/03/09

| | | SUN 12/28/08 | MON 12/29/08 | TUE 12/30/08 | WED 12/31/08 | THU 01/Q1/09 | FRI 01/02/09 | SAT 01/03/09 | |
|---|---|---|---|---|---|---|---|---|---|
| TAYLOR,  THEODOR | | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| STOREY,  ROBERT | | 900a- 530p | 900a- 530p | OFF | OFF | 1030a- 700p | 700a- 330p | 700a- 330p | 40.00 |
| 83 | LUNCH> | 100p- 130p | 100p- 130p | | | 230p- 300p | 1100a-1130a | 1100a-1130a | |
| | MEMO/JOB> | No meal | | | | | | | 0.00 |
| WEIGAND,  WILLIA | | 800a- 430p | OFF | 1200a- 830a | 700a- 330p | OFF | 130a-1000a | 930a- 600p | 32.00 |
| 257 | LUNCH> | 1200p-1230p | | 400a- 430a | 1100a-1130a | | 530a- 600a | 130p- 200p | |
| | MEMO/JOB> | | | | SEAFOOD | | | | 8.00 |
| LAYTON,  DIANE | | 500a- 130p | OFF | OFF | 130a-1000a | 1230p- 900p | 700a- 330p | 700a- 330p | 32.00 |
| 244 | LUNCH> | 900a- 930a | | | 530a- 600a | 430p- 500p | 1100a-1130a | 1100a-1130a | |
| | MEMO/JOB> | normeal | | | | | SEAFOOD | | 8.00 |
| BRANCH,  CHRISTO | | 300p-1000p | 100p- 830p | 400p-1000p | OFF | OFF | OFF | OFF | 20.50 |
| 56 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN,  ELLEN | | 1000a- 400p | OFF | 1000a- 400p | 400p-1000p | OFF | 800a- 200p | 400p-1000p | 30.00 |
| | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WILSON,  CURTIS | | 400p-1000p | 300p-1000p | 400p-1000p | OFF | 400p-1000p | OFF | 400p-1000p | 31.00 |
| 107 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| NIEL,  ERICK E | | OFF | OFF | 900a- 530p | 930a- 600p | OFF | 700a- 330p | 1130a- 800p | 32.00 |
| | LUNCH> | | | 100p- 130p | 130p- 200p | | 1100a-1130a | 330p- 400p | |
| | MEMO/JOB> | | | | | | | | 0.00 |

Total Paid Hours For...
| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| This Job Class: | 43.00 | 22.50 | 34.00 | 22.00 | 22.00 | 30.00 | 44.00 | 217.50 |
| Other Classes in Dept: | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 8.00 | 0.00 | 16.00 |

KROGER 000123

12/30/08 - 11:08am                    MEAT / MEAT                              PAGE 1

## EKLY WORK SCHEDULE - WEEK OF 01/10/09

| | SUN 01/04/09 | MON 01/05/09 | TUE 01/06/09 | WED 01/07/09 | THU 01/08/09 | FRI 01/09/09 | SAT 01/10/09 | |
|---|---|---|---|---|---|---|---|---|
| TAYLOR, THEODOR | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205          LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, ROBERT | 930a- 600p | OFF | 700a- 330p | 700a- 330p | OFF | 800a- 430p | 930a- 600p | 40.00 |
| 83           LUNCH> | 130p- 200p | | 1100a-1130a | 1100a-1130a | | 1200p-1230p | 130p- 200p | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, WILLIA | 700a- 330p | 700a- 330p | 1230p- 900p | OFF | 700a- 330p | OFF | 800a- 430p | 40.00 |
| 257          LUNCH> | 1100a-1130a | 1100a-1130a | 430p- 500p | | 1100a-1130a | | 1200p-1230p | |
| MEMO/JOB> | | | | | | | | 0.00 |
| CLAYTON, DIANE | 500a- 130p | OFF | OFF | OFF | 1230p- 900p | 700a- 330p | OFF | 24.00 |
| 244          LUNCH> | 900a- 930a | | | | 430p- 500p | 1100a-1130a | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| BRANCH, CHRISTO | 300p-1000p | 300p-1000p | 400p-1000p | OFF | 300p-1000p | 300p-1000p | 400p-1000p | 40.00 |
| 56           LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN, ELLEN | 1000a- 500p | 1000a- 500p | OFF | 300p-1000p | 1100a- 500p | OFF | 1000a- 500p | 34.00 |
| LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WILSON, CURTIS | 300p-1000p | 400p-1000p | 300p-1000p | OFF | 300p-1000p | 300p-1000p | 400p-1000p | 40.00 |
| 107          LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| NIEL, ERICK E | OFF | 930a- 600p | 900a- 530p | 930a- 600p | 930a- 600p | 1230p- 900p | OFF | 40.00 |
| LUNCH> | | 130p- 200p | 100p- 130p | 130p- 200p | 130p- 200p | 430p- 500p | | |
| MEMO/JOB> | | | | | | | | 0.00 |

Total Paid Hours For...
This Job Class:        45.00        36.00        37.00        23.00        44.00        38.00        35.00        258.00
Other Classes in Dept:  0.00         0.00         0.00         0.00         0.00         0.00         0.00          0.00

*302*

KROGER 000124

01/06/09 - 2:22pm                    MEAT / MEAT                              PAGE  1

## EKLY WORK SCHEDULE - WEEK OF 01/17/09

| | | SUN 01/11/09 | MON 01/12/09 | TUE 01/13/09 | WED 01/14/09 | THU 01/15/09 | FRI 01/16/09 | SAT 01/17/09 | |
|---|---|---|---|---|---|---|---|---|---|
| TAYLOR, THEODOR 205 | | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| | LUNCH> MEMO/JOB> | 6-5 | 7-5 | 5-10 | off | 8-6 | 7-5 | 7-5 | 0.00 |
| STOREY, ROBERT 83 | | 930a- 600p | OFF | 900a- 530p | 700a- 330p | OFF | 1000a- 630p | 800a- 430p | 40.00 |
| | LUNCH> | 130p- 200p | | 100p- 130p | 1100a-1130a | | 200p- 230p | 1200p-1230p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, WILLIA 257 | | 700a- 330p | OFF | 500a- 130p | OFF | 700a- 330p | 130p-1000p | 800a- 430p | 40.00 |
| | LUNCH> | 1100a-1130a | | 900a- 930a | | 1100a-1130a | 530p- 600p | 1200p-1230p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| SLAYTON, DIANE 244 | | 500a- 130p | OFF | OFF | OFF | 900a- 530p | 700a- 330p | 700a- 330p | 32.00 |
| | LUNCH> | 900a- 930a | | | | 100p- 130p | 1100a-1130a | 1100a-1130a | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| BRANCH, CHRISTO 56 | | 300p-1000p | 300p-1000p | 300p-1000p | 300p-1000p | OFF | OFF | 300p-1000p | 35.00 |
| | LUNCH> MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN, ELLEN 8 | | 1000a- 500p | 1000a- 500p | 1000a- 500p | OFF | 300p-1000p | OFF | 1000a- 500p | 35.00 |
| | LUNCH> MEMO/JOB> | | | | | | | | 0.00 |
| WILSON, CURTIS 107 | | 300p-1000p | 300p-1000p | 300p-1000p | OFF | 300p-1000p | 300p-1000p | OFF | 35.00 |
| | LUNCH> MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL, ERICK E 2 | | OFF | 900a- 530p | OFF | 930a- 600p | 700a- 330p | 800a- 430p | 1000a- 630p | 40.00 |
| | LUNCH> | | 100p- 130p | | 130p- 200p | 1100a-1130a | 1200p-1230p | 200p- 230p | |
| | MEMO/JOB> | | | | | | | | 0.00 |

Total Paid Hours For...

| | | | | | | | | |
|---|---|---|---|---|---|---|---|
| This Job Class: | 45.00 | 29.00 | 37.00 | 23.00 | 38.00 | 39.00 | 46.00 | 257.00 |
| Other Classes in Dept: | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

KROGER 000126

```
01/13/09 - 4:19pm              MEAT / MEAT                          PAGE  1
```

## EKLY WORK SCHEDULE - WEEK OF 01/24/09

| | SUN 01/18/09 | MON 01/19/09 | TUE 01/20/09 | WED 01/21/09 | THU 01/22/09 | FRI 01/23/09 | SAT 01/24/09 | |
|---|---|---|---|---|---|---|---|---|
| TAYLOR,  THEODOR | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| .205        LUNCH> | | | | | | | | |
|             MEMO/JOB> | | | | | | | | 0.00 |
| STOREY,  ROBERT | 800a- 430p | OFF | 900a- 530p | 700a- 330p | OFF | 930a- 600p | 800a- 430p | 40.00 |
| 83          LUNCH> | 1200p-1230p | | 100p- 130p | 1100a-1130a | | 130p- 200p | 1200p-1230p | |
|             MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND,  WILLIA | 130p-1000p | OFF | 500a- 130p | OFF | 700a- 330p | 800a- 430p | 800a- 430p | 40.00 |
| 257         LUNCH> | 530p- 600p | | 900a- 930a | | 1100a-1130a | 1200p-1230p | 1200p-1230p | |
|             MEMO/JOB> | | | | | | | | 0.00 |
| SLAYTON,  DIANE | 500a- 130p | OFF | OFF | OFF | 900a- 530p | 1230p- 900p | 700a- 330p | 32.00 |
| 244         LUNCH> | 900a- 930a | | | | 100p- 130p | 430p- 500p | 1100a-1130a | |
|             MEMO/JOB> | | | | | | | | 0.00 |
| BRANCH,  CHRISTO | 800a- 200p | 400p-1000p | 400p-1000p | 400p-1000p | OFF | OFF | 400p-1000p | 30.00 |
| 56          LUNCH> | | | | | | | | |
|             MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN,  ELLEN | 1100a- 500p | 1100a- 500p | 1100a- 500p | OFF | 400p-1000p | OFF | 1100a- 500p | 30.00 |
|             LUNCH> | | | | | | | | |
|             MEMO/JOB> | | | | | | | | 0.00 |
| WILSON,  CURTIS | OFF | 400p-1000p | 400p-1000p | OFF | 400p-1000p | 400p-1000p | 400p-1000p | 30.00 |
| 107         LUNCH> | | | | | | | | |
|             MEMO/JOB> | | | | | | | | 0.00 |
| ANIEL,  ERICK E | 300p-1000p | 900a- 530p | OFF | 930a- 600p | 700a- 330p | OFF | 930a- 600p | 39.00 |
| 2           LUNCH> | | 100p- 130p | | 130p- 200p | 1100a-1130a | | 130p- 200p | |
|             MEMO/JOB> | | | | | | | | 0.00 |

```
Total Paid Hours For...
This Job Class:           43.00     26.00     34.00     22.00     36.00     30.00     50.00    241.00
Other Classes in Dept:     0.00      0.00      0.00      0.00      0.00      0.00      0.00      0.00
```

KROGER 000128

01/23/09 - 12:34pm                    MEAT / MEAT          *Mandtory training Class*          PAGE   1

EKLY WORK SCHEDULE - WEEK OF 01/31/09

| | SUN 01/25/09 | MON 01/26/09 | TUE 01/27/09 | WED 01/28/09 | THU 01/29/09 | FRI 01/30/09 | SAT 01/31/09 | |
|---|---|---|---|---|---|---|---|---|
| TAYLOR,  THEODOR | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205          LUNCH> | | | | | | | | |
|              MEMO/JOB> | | | | | | | | 0.00 |
| STOREY,  ROBERT | 700a- 330p | OFF | 900a- 530p | 700a- 330p | OFF | 930a- 600p | 800a- 430p | 40.00 |
| 83           LUNCH> | 1100a-1130a | | 100p- 130p | 1100a-1130a | | 130p- 200p | 1200p-1230p | |
|              MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND,  WILLIA | 930a- 600p | 800a- 430p | 500a- 130p | OFF | OFF | 800a- 430p | 800a- 430p | 40.00 |
| 257          LUNCH> | 130p- 200p | 1200p-1230p | 900a- 930a | | | 1200p-1230p | 1200p-1230p | |
|              MEMO/JOB> | | | 130-2 | | | | | 0.00 |
| SLAYTON,  DIANE | 500a- 130p | OFF | OFF | 700a- 330p | 900a- 530p | 1230p- 900p | 700a- 330p | 32.00 |
| 244          LUNCH> | 900a- 930a | | | 1100a-1130a | 100p- 130p | 430p- 500p | 1100a-1130a | |
|              MEMO/JOB> | | | | SEAFOOD | | | | 8.00 |
| BRANCH,  CHRISTO | 900a- 100p | 500p-1000p | 500p-1000p | 400p-1000p | OFF | OFF | 400p-1000p | 26.00 |
| 56           LUNCH> | | | | | | | | |
|              MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN,  ELLEN | 1000a- 400p | 1000a- 400p | 1100a- 300p | OFF | 500p- 900p | OFF | 830a- 500p | 28.00 |
|              LUNCH> | | | | | | | 1230p- 100p | |
|              MEMO/JOB> | | | | | | | | 0.00 |
| WILSON,  CURTIS | 400p-1000p | 500p-1000p | 600p-1000p | OFF | 500p-1000p | 400p-1000p | OFF | 26.00 |
| 107          LUNCH> | | | | | | | | |
|              MEMO/JOB> | | | | | 6-630 | | | 0.00 |
| ANIEL,  ERICK E | 600a- 200p | 900a- 530p | OFF | 930a- 600p | 700a- 330p | OFF | 930a- 600p | 40.00 |
| 42           LUNCH> | | 100p- 130p | | 130p- 200p | 1100a-1130a | | 130p- 200p | |
|              MEMO/JOB> | | | | | | | | 0.00 |

Total Paid Hours For...
This Job Class:            48.00      32.00      29.00      22.00      25.00      30.00      46.00     232.00
Other Classes in Dept:      0.00       0.00       0.00       8.00       0.00       0.00       0.00       8.00

KROGER 000130

01/29/09 - 11:01am                          MEAT / MEAT                                      PAGE   1

## EKLY WORK SCHEDULE - WEEK OF 02/07/09

| | | SUN 02/01/09 | MON 02/02/09 | TUE 02/03/09 | WED 02/04/09 | THU 02/05/09 | FRI 02/06/09 | SAT 02/07/09 | |
|---|---|---|---|---|---|---|---|---|---|
| TAYLOR, | THEODOR | 600a- 500p | 700a- 500p | 500a- 100p | OFF | 800a- 600p | 700a- 500p | 700a- 500p | 59.00 |
| 205 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, | ROBERT | 900a- 530p | OFF | 900a- 530p | 700a- 330p | OFF | 700a- 330p | 800a- 430p | 40.00 |
| 83 | LUNCH> | 100p- 130p | | 100p- 130p | 1100a-1130a | | 1100a-1130a | 1200p-1230p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, | WILLIA | 930a- 600p | 800a- 430p | 500a- 130p | OFF | OFF | 800a- 430p | 800a- 430p | 40.00 |
| 257 | LUNCH> | 130p- 200p | 1200p-1230p | 900a- 930a | | | 1200p-1230p | 1200p-1230p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| SLAYTON, | DIANE | 500a- 130p | OFF | OFF | 700a- 330p | 900a- 530p | 1230p- 900p | 700a- 330p | 24.00 |
| 244 | LUNCH> | 900a- 930a | | | 1100a-1130a | 100p- 130p | 430p- 500p | 1100a-1130a | |
| | MEMO/JOB> | | | | SEAFOOD | | | SEAFOOD | 16.00 |
| BRANCH, | CHRISTO | 1000a- 300p | 500p-1000p | 300p- 900p | 400p-1000p | OFF | OFF | 500p-1000p | 27.00 |
| 56 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| BOLSMAN, | ELLEN | 1000a- 400p | 1000a- 400p | 1100a- 300p | OFF | 400p- 900p | OFF | 830a- 500p | 29.00 |
| | LUNCH> | | | | | | | 1230p- 100p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WILSON, | CURTIS | 400p-1000p | OFF | 500p-1000p | 500p-1000p | 400p-1000p | OFF | 500p-1000p | 27.00 |
| 107 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL, | ERICK E | OFF | 900a- 530p | OFF | 930a- 600p | 700a- 330p | 930a- 600p | 930a- 600p | 40.00 |
| 42 | LUNCH> | | 100p- 130p | | 130p- 200p | 1100a-1130a | 130p- 200p | 130p- 200p | |
| | MEMO/JOB> | | | | | | | | 0.00 |

Total Paid Hours For...
This Job Class:            52.00       37.00       39.00       27.00       37.00       42.00       52.00      286.00
Other Classes in Dept:      0.00        0.00        0.00        8.00        0.00        0.00        8.00       16.00

KROGER 000132

02/05/09 - 5:14pm                    MEAT / MEAT                              PAGE   1

EKLY WORK SCHEDULE - WEEK OF 02/14/09

|  | | SUN 02/08/09 | MON 02/09/09 | TUE 02/10/09 | WED 02/11/09 | THU 02/12/09 | FRI 02/13/09 | SAT 02/14/09 | |
|---|---|---|---|---|---|---|---|---|---|
| TAYLOR, THEODOR | | 600a- 500p | 700a- 500p | 500a- 100p | OFF | 900a- 800p | 700a- 500p | 700a- 500p | 60.00 |
| 205 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, ROBERT | | 900a- 530p | OFF | 900a- 530p | 700a- 330p | OFF | 700a- 330p | 930a- 600p | 40.00 |
| 83 | LUNCH> | 100p- 130p | | 100p- 130p | 1100a-1130a | | 1100a-1130a | 130p- 200p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, WILLIA | | 800a- 430p | OFF | 500a- 130p | OFF | 1000a- 630p | 800a- 430p | OFF | 32.00 |
| 257 | LUNCH> | 1200p-1230p | | 900a- 930a | | 200p- 230p | 1200p-1230p | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| BLAYTON, DIANE | | 500a- 130p | 800a- 430p | 800a- 430p | 700a- 330p | PERSONAL | OFF | OFF | 24.00 |
| 244 | LUNCH> | 900a- 930a | 1200p-1230p | 1200p-1230p | 1100a-1130a | | | | |
| | MEMO/JOB> | | | | SEAFOOD | | | | 8.00 |
| RANCH, CHRISTO | | 130p-1000p | 130p-1000p | 130p-1000p | 130p-1000p | OFF | OFF | 130p-1000p | 40.00 |
| 6 | LUNCH> | 530p- 600p | 530p- 600p | 530p- 600p | 530p- 600p | | | 530p- 600p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| ILSON, CURTIS | | 130p-1000p | 130p-1000p | 130p-1000p | OFF | 130p-1000p | 130p-1000p | OFF | 40.00 |
| 97 | LUNCH> | 530p- 600p | 530p- 600p | 530p- 600p | | 530p- 600p | 530p- 600p | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| NIEL, ERICK E | | OFF | 900a- 530p | OFF | 930a- 600p | 700a- 330p | 1030a- 700p | 700a- 500p | 42.00 |
| | LUNCH> | | 100p- 130p | | 130p- 200p | 1100a-1130a | 230p- 300p | | |
| | MEMO/JOB> | | *Clear* | | *Clear* | | | | 0.00 |

l Paid Hours For...

|  | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Job Class: | 51.00 | 42.00 | 48.00 | 24.00 | 35.00 | 42.00 | 36.00 | 278.00 |
| r Classes in Dept: | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 |

KROGER 000134

02/13/09 - 10:10am                     MEAT / MEAT                                    PAGE  1

EKLY WORK SCHEDULE - WEEK OF 02/21/09

|  |  | SUN 02/15/09 | MON 02/16/09 | TUE 02/17/09 | WED 02/18/09 | THU 02/19/09 | FRI 02/20/09 | SAT 02/21/09 |  |
|---|---|---|---|---|---|---|---|---|---|
| TAYLOR,  THEODOR |  | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205 | LUNCH> |  |  |  |  |  |  |  |  |
|  | MEMO/JOB> |  |  |  |  |  |  |  | 0.00 |
| STOREY,  ROBERT |  | 900a- 530p | OFF | 900a- 530p | 700a- 330p | OFF | 930a- 600p | 700a- 330p | 40.00 |
| 83 | LUNCH> | 100p- 130p |  | 100p- 130p | 1100a-1130a |  | 130p- 200p | 1100a-1130a |  |
|  | MEMO/JOB> |  |  |  |  |  |  |  | 0.00 |
| WEIGAND,  WILLIA |  | 800a- 430p | OFF | 500a- 130p | 700a- 330p | OFF | 800a- 430p | 700a- 330p | 24.00 |
| 257 | LUNCH> | 1200p-1230p |  | 900a- 930a | 1100a-1130a |  | 1200p-1230p | 1100a-1130a |  |
|  | MEMO/JOB> |  |  |  | SEAFOOD |  |  | SEAFOOD | 16.00 |
| SLAYTON,  DIANE |  | LOA | LOA | LOA | LOA | LOA | LOA | LOA | 0.00 |
| 244 | LUNCH> |  |  |  |  |  |  |  |  |
|  | MEMO/JOB> |  |  |  |  |  |  |  | 0.00 |
| BRANCH,  CHRISTO |  | 130p-1000p | 130p-1000p | 130p-1000p | 130p-1000p | OFF | OFF | 130p-1000p | 40.00 |
| 56 | LUNCH> | 530p- 600p | 530p- 600p | 530p- 600p | 530p- 600p |  |  | 530p- 600p |  |
|  | MEMO/JOB> |  |  |  |  |  |  |  | 0.00 |
| WILSON,  CURTIS |  | 130p-1000p | 1100a- 730p | OFF | OFF | 130p-1000p | 130p-1000p | 130p-1000p | 40.00 |
| 07 | LUNCH> | 530p- 600p | 300p- 330p |  |  | 530p- 600p | 530p- 600p | 530p- 600p |  |
|  | MEMO/JOB> |  |  |  |  |  |  |  | 0.00 |
| DANIEL,  ERICK E |  | 600a- 230p | 900a- 530p | OFF | 930a- 600p | 930a- 600p | OFF | 930a- 600p | 40.00 |
| 42 | LUNCH> | 1000a-1030a | 100p- 130p |  | 130p- 200p | 130p- 200p |  | 130p- 200p |  |
|  | MEMO/JOB> |  |  |  |  |  |  |  | 0.00 |
| DODSON,  JENNIFE |  | 800a-1200p | OFF | 1000p- 630a | OFF | 1200p- 600p | 1000a- 400p | OFF | 0.00 |
|  | LUNCH> |  |  | 200a- 230a |  |  |  |  |  |
|  | MEMO/JOB> |  |  |  |  |  |  |  | 24.00 |

Total Paid Hours For...
| This Job Class: | 40.00 | 24.00 | 24.00 | 24.00 | 16.00 | 24.00 | 32.00 | 184.00 |
|---|---|---|---|---|---|---|---|---|
| Other Classes in Dept: | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 8.00 | 16.00 |

KROGER 000136

02/18/09 - 10:33am                    MEAT / MEAT                              PAGE   1

~EKLY  WORK  SCHEDULE  -  WEEK  OF  02/28/09

| | | SUN 02/22/09 | MON 02/23/09 | TUE 02/24/09 | WED 02/25/09 | THU 02/26/09 | FRI 02/27/09 | SAT 02/28/09 | |
|---|---|---|---|---|---|---|---|---|---|
| TAYLOR, THEODOR | | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, ROBERT | | 700a- 330p | OFF | 900a- 530p | 700a- 330p | OFF | 930a- 600p | 800a- 430p | 40.00 |
| 83 | LUNCH> | 1100a-1130a | | 100p- 130p | 1100a-1130a | | 130p- 200p | 1200p-1230p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, WILLIA | | 130p-1000p | OFF | 500a- 130p | OFF | 1000a- 630p | 800a- 430p | 700a- 330p | 40.00 |
| 257 | LUNCH> | 530p- 600p | | 900a- 930a | | 200p- 230p | 1200p-1230p | 1100a-1130a | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| CLAYTON, DIANE | | 500a- 130p | 800a- 430p | OFF | 700a- 330p | OFF | 1230p- 900p | 700a- 330p | 32.00 |
| 244 | LUNCH> | 900a- 930a | 1200p-1230p | | 1100a-1130a | | 430p- 500p | 1100a-1130a | |
| | MEMO/JOB> | | | | | | | SEAFOOD | 8.00 |
| BRANCH, CHRISTO | | 800a- 430p | 300p-1000p | 300p-1000p | 400p-1000p | OFF | OFF | 300p-1000p | 35.00 |
| 56 | LUNCH> | 1200p-1230p | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WILSON, CURTIS | | 300p-1000p | 1200p- 700p | 300p-1000p | OFF | 300p-1000p | 300p-1000p | OFF | 35.00 |
| 07 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL, ERICK E | | 930a- 600p | 900a- 530p | OFF | 930a- 600p | 700a- 330p | OFF | 930a- 600p | 40.00 |
| 42 | LUNCH> | 130p- 200p | 100p- 130p | | 130p- 200p | 1100a-1130a | | 130p- 200p | |
| | MEMO/JOB> | | | | | | | | 0.00 |

1 Paid Hours For...
~..s Job Class:              47.00       30.00       30.00       30.00       23.00       31.00       31.00     222.00
Other Classes in Dept:       0.00        0.00        0.00        0.00        0.00        0.00        8.00       8.00

KROGER 000138

02/26/09 - 6:08pm                    MEAT / MEAT                              PAGE  1

EEKLY WORK SCHEDULE - WEEK OF 03/07/09

| | | SUN 03/01/09 | MON 03/02/09 | TUE 03/03/09 | WED 03/04/09 | THU 03/05/09 | FRI 03/06/09 | SAT 03/07/09 | |
|---|---|---|---|---|---|---|---|---|---|
| TAYLOR, THEODOR | | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, ROBERT | | 700a- 330p | OFF | 900a- 530p | 700a- 330p | OFF | 930a- 600p | 800a- 430p | 40.00 |
| 83 | LUNCH> | 1100a-1130a | | 100p- 130p | 1100a-1130a | | 130p- 200p | 1200p-1230p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, WILLIA | | 800a- 430p | 800a- 430p | 500a- 130p | OFF | 1000a- 630p | 130p-1000p | OFF | 40.00 |
| 257 | LUNCH> | 1200p-1230p | 1200p-1230p | 900a- 930a | | 200p- 230p | 530p- 600p | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| SLAYTON, DIANE | | 500a- 130p | OFF | OFF | 700a- 330p | 800a- 430p | 1230p- 900p | 700a- 330p | 32.00 |
| 244 | LUNCH> | 900a- 930a | | | 1100a-1130a | 1200p-1230p | 430p- 500p | 1100a-1130a | |
| | MEMO/JOB> | | | | | | | SEAFOOD | 8.00 |
| BRANCH, CHRISTO | | 130p-1000p | 130p-1000p | 130p-1000p | 130p-1000p | OFF | OFF | 130p-1000p | 40.00 |
| 56 | LUNCH> | 530p- 600p | 530p- 600p | 530p- 600p | 530p- 600p | | | 530p- 600p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WILSON, CURTIS | | 130p-1000p | 130p-1000p | 130p-1000p | 130p-1000p | 130p-1000p | OFF | OFF | 40.00 |
| 107 | LUNCH> | 530p- 600p | 530p- 600p | 530p- 600p | 530p- 600p | 530p- 600p | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL, ERICK E | | 300p-1000p | 900a- 530p | OFF | 930a- 600p | 700a- 330p | OFF | 930a- 600p | 39.00 |
| 42 | LUNCH> | | 100p- 130p | | 130p- 200p | 1100a-1130a | | 130p- 200p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| KENLEY, NORMA | | OFF | 1000a- 300p | 1000a- 300p | 1000a- 300p | 1000a- 300p | 1000a- 300p | 1000a- 300p | 30.00 |
| 5 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |

Total Paid Hours For...
| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| This Job Class: | 47.00 | 37.00 | 37.00 | 45.00 | 37.00 | 29.00 | 29.00 | 261.00 |
| Other Classes in Dept: | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 |

*[handwritten notes]* Call out    No Call No Show

03/05/09 - 3:33pm                    MEAT / MEAT                              PAGE   1

EKLY WORK SCHEDULE - WEEK OF 03/14/09

| | | SUN 03/08/09 | MON 03/09/09 | TUE 03/10/09 | WED 03/11/09 | THU 03/12/09 | FRI 03/13/09 | SAT 03/14/09 | |
|---|---|---|---|---|---|---|---|---|---|
| TAYLOR, | THEODOR | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, | ROBERT | 700a- 330p | OFF | 900a- 530p | 700a- 330p | OFF | 900a- 530p | 700a- 330p | 40.00 |
| 83 | LUNCH> | 1100a-1130a | | 100p- 130p | 1100a-1130a | | 100p- 130p | 1100a-1130a | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, | WILLIA | 900a- 530p | 800a- 430p | 500a- 130p | OFF | OFF | 1230p- 900p | 900a- 530p | 40.00 |
| 257 | LUNCH> | 100p- 130p | 1200p-1230p | 900a- 930a | | | 430p- 500p | 100p- 130p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| SLAYTON, | DIANE | 500a- 130p | OFF | OFF | 700a- 330p | 1230p- 900p | 900a- 530p | 800a- 430p | 40.00 |
| 244 | LUNCH> | 900a- 930a | | | 1100a-1130a | 430p- 500p | 100p- 130p | 1200p-1230p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| BRANCH, | CHRISTO | 300p-1000p | 400p-1000p | 400p-1000p | 400p-1000p | OFF | OFF | 400p-1000p | 31.00 |
| 56 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| WILSON, | CURTIS | OFF | 400p-1000p | 400p-1000p | OFF | 400p-1000p | 400p-1000p | 300p-1000p | 31.00 |
| 97 | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL, | ERICK E | 300p-1000p | 900a- 530p | OFF | 1030a- 700p | 700a- 330p | OFF | 1130a- 800p | 39.00 |
| 2 | LUNCH> | | 100p- 130p | | 230p- 300p | 1100a-1130a | | 330p- 400p | |
| | MEMO/JOB> | | | | | | | | 0.00 |
| ENLEY, NORMA | | 400p-1000p | OFF | 1000a- 400p | 400p-1000p | 1000a- 400p | 1000a- 400p | OFF | 30.00 |
| | LUNCH> | | | | | | | | |
| | MEMO/JOB> | | | | | | | | 0.00 |

_(handwritten annotations: "Called off", "Suspended", "N/S")_

l Paid Hours For...

| r Job Class: | 44.00 | 28.00 | 34.00 | 36.00 | 28.00 | 36.00 | 45.00 | 251.00 |
|---|---|---|---|---|---|---|---|---|
| r Classes in Dept: | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

KROGER 000142

03/12/09 - 12:55pm                    MEAT / MEAT                              PAGE  1

EKLY WORK SCHEDULE - WEEK OF 03/21/09

|  | SUN 03/15/09 | MON 03/16/09 | TUE 03/17/09 | WED 03/18/09 | THU 03/19/09 | FRI 03/20/09 | SAT 03/21/09 | |
|---|---|---|---|---|---|---|---|---|
| TAYLOR, THEODOR | OFF | OFF | OFF | OFF | OFF | OFF | OFF | 0.00 |
| 205  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| STOREY, ROBERT | 700a- 330p | OFF | 900a- 530p | 700a- 330p | OFF | 900a- 530p | 700a- 330p | 40.00 |
| 83  LUNCH> | 1100a-1130a | | 100p- 130p | 1100a-1130a | | 100p- 130p | 1100a-1130a | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WEIGAND, WILLIA | 900a- 530p | 800a- 430p | 500a- 130p | OFF | OFF | 1230p- 900p | 900a- 530p | 40.00 |
| 257  LUNCH> | 100p- 130p | 1200p-1230p | 900a- 930a | | | 430p- 500p | 100p- 130p | |
| MEMO/JOB> | | | | | | | | 0.00 |
| SLAYTON, DIANE | 500a- 130p | OFF | OFF | 700a- 330p | 1230p- 900p | 900a- 530p | 800a- 430p | 32.00 |
| 244  LUNCH> | 900a- 930a | | | 1100a-1130a | 430p- 500p | 100p- 130p | 1200p-1230p | |
| MEMO/JOB> | | | | SEAFOOD | | | | 8.00 |
| BRANCH, CHRISTO | 300p-1000p | 300p-1000p | 130p-1000p | 400p-1000p | OFF | OFF | 400p-1000p | 34.00 |
| 56  LUNCH> | | | 530p- 600p | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| WILSON, CURTIS | OFF | 400p-1000p | 400p-1000p | OFF | 300p-1000p | 300p-1000p | 300p-1000p | 33.00 |
| 7  LUNCH> | | | | | | | | |
| MEMO/JOB> | | | | | | | | 0.00 |
| DANIEL, ERICK E | 300p-1000p | 900a- 530p | OFF | 1130a- 800p | 700a- 330p | OFF | 1230p- 900p | 39.00 |
| 42  LUNCH> | | 100p- 130p | | 330p- 400p | 1100a-1130a | | 430p- 500p | |
| MEMO/JOB> | | | | | | | | 0.00 |

Total Paid Hours For...
This Job Class:          38.00     29.00     30.00     22.00     23.00     31.00     45.00    218.00
Other Classes in Dept:    0.00      0.00      0.00      8.00      0.00      0.00      0.00      8.00



# MID-ATLANTIC MARKETING AREA
# RULES & REGULATIONS

## INTRODUCTION

You are a valuable asset to the Kroger Mid-Atlantic Marketing Area. You are the primary reason that our company will either succeed or fail. In order to help you become a valuable and contributing member of The Kroger Team, several important rules are designed, not as a list of do's and don'ts, but as a framework of personal conduct to protect you, your peers, our customers, and most of all everyone's integrity. Following these rules will help keep everyone working toward the same common goal, which is to make our Company a success for the future!

The following is a list of rules for all Kroger store employees, violations of which will lead to disciplinary action. Due to the nature of our business, please note that proven violation of certain rules will result in immediate discharge for a first offense. These rules are printed in bold type. Depending on the severity of the offense, first violations of other rules can also lead to discharge.

The Kroger Co. reserves the right to add to and delete from, or modify these rules as it becomes necessary.

The Kroger Co. is an equal opportunity employer, and there shall be no discrimination against any employee because of race, religion, color, creed, national origin, sex, age, disability, or sexual orientation. Where the word "he" appears it applies to both male and female employees.

## BASIC STORE RULES

1. **EMPLOYEE'S DRESS** – In our contact with the general public, it is important that we provide a neat and clean shopping environment. Often, a customer perceives a neat and clean environment based on the personal appearance of our employees. The following are the minimum standards of dress that will help us maintain a neat and clean employee image for our customers.
   a. All employees are to wear name badges positioned on the upper left chest.
   b. All employees will wear the designated uniform for the job classification and department.
   c. Associates working in food preparation areas, such as the Deli, Meat & Salad Bar must keep their hair neat, off their face and restrained. To restrain hair, associates must wear a white hair net covering all hair at all times when on duty. Associates with beards working in the above food preparation areas must wear beard guards at all times when on duty.
   d. Only solid colored clothing may be worn (dresses/slacks/skirts). Non-appropriate clothing includes jeans, or any form of denim, warm-up suits, sweat pants, skorts, etc. that do not support the intent of professional associate dress. Dresses or skirts for female associates must be of a professional business length that supports the intent of the dress code and/or the associate's ability to perform her duties.
   e. Employees must be generally well groomed and clean at all times. Cleanliness of hands, fingernails, and clothing is of particular importance to a professional appearance. Associates in food preparation areas are prohibited from wearing acrylic or "press-on" nails. Hair should be clean, neatly styled, cut and arranged so that it will remain securely in place. Hair coloring must be of the natural hair colors, such as black, gray, brown, red, and blonde. Associates with hair longer than shoulder length must tie or secure their hair away from their face. Male associates should be clean-shaven, with the exception of closely trimmed mustaches, beards and goatees.
   f. Shoes must be clean and appropriate. Socks or stockings must be worn. Shoes that do not adequately protect the feet such as open-toed shoes or sandals are prohibited.
   g. In some departments it may be necessary to wear protective clothing and/or equipment to be in compliance with State/Federal law. Your Department Manager will advise you on this clothing issue.
   h. Cosmetics, perfume/cologne and jewelry should be conservative and worn in moderation. For your safety, limit earrings to studs and/or small hoops that are to be worn in the ear lobe only. To assure the highest cleanliness and personal hygiene standards, associates working in food preparation areas are prohibited from wearing any jewelry on their arms and hands, with the exception of a plain ring such as a wedding band.
   i. Visible body piercing with jewelry is not permitted while working. Associates should limit ear piercing to two (2) piercings per ear lobe.
   j. Associates assigned to outside duties for customer service may wear solid colored Bermuda length shorts (non-denim) from Memorial Day through Labor Day. Orange safety vests must be worn at all times for associates assigned to outside duties.
   k. In colder months, associates may wear long sleeve complimenting colored clothing under the Kroger uniform. Solid colored complimenting button or zipper sweaters may also be worn.
   l. Gum chewing, eating, or drinking is not permitted while working on the clock.

2. Between starting time and quitting time, including breaks and lunch, and at any other time while on Company premises, including parking lots, **employees shall not possess, use, consume or be under the influence of alcohol, marijuana, cocaine or any other controlled or illegal substance. Proven violation of this rule will result in discharge.**
   When there is a reason to believe an employee is under the influence of alcohol or a controlled substance based upon factors including but not limited to change in appearance, speech, or work performance, management shall have the right to require an employee to submit to a test to determine the presence and level of blood alcohol and/or the presence of marijuana, cocaine or any other controlled substance.
   a. A positive alcohol test is defined as meeting the current State limit for the State in which the employee is working in.
   b. A positive drug test is defined as the presence of illegal substances in the body.
   **Refusal to take the test, as instructed, will result in discharge.**
3. All employees must follow the posted Employee Purchase Policy.
4. Only authorized personnel are allowed in designated work areas, e.g. office personnel in cash office, pharmacy personnel in pharmacy, etc...
5. Smoking is not permitted in any store except in designated smoking areas. Employees working in a store where smoking is prohibited may smoke outside the building during scheduled breaks provided this does not bother or interfere with customers, visitors or employees entering or exiting the facility. The use of chewing tobacco is prohibited while working on the clock.

EXHIBIT 5

6. Store telephones are for business and emergency use. Personal employee telephone usage is limited to emergency situations only. The usage of cell phones and pagers while working on the clock is prohibited.

7. No person under 18 years of age is allowed to operate powered industrial trucks or other powered equipment. Employees at least 18 years of age who have been requested by Management to operate power industrial trucks must be certified by OSHA Rules & Regulations. This type of equipment should not be allowed on the sales floor.

8. The front entrance door is the only door that is to be used by employees going to and leaving work.

9. An employee involved in any accident which results in injury, damage to property, equipment or merchandise shall notify a member of management (or the person in charge) immediately and leave a written report with a member of Management stating how and when such an occurrence happened. This report is to be completed on the date of occurrence. Employees are to avoid carelessness or negligence that could result in accidents. Any proven intentional damage to company property, either leased or owned, employee property, or customer property will lead to immediate discharge.

10. Time clock procedures must be followed as per the posted policy. These procedures are posted by the time clock and included in these Rules and Regulations.

11. Employees who are not "on the clock" are not to interrupt the work of others who are working.

12. Employees will clean up after themselves in restrooms and break areas.

13. Employees are not allowed to bring, threaten to bring or express intent to bring firearms and other weapons on the premises. Violation of this rule will result in immediate discharge.

14. HONESTY AND INTEGRITY -- Honesty and integrity is the basic policy of The Kroger Co. and its employees. This is reflected in the handling of money, product, supplies, Company property and equipment, and the use of time while working. As we would not steal money, product, etc., we will not steal time by working unproductively. Dishonesty in any form or criminal conduct will not be tolerated and shall be cause for discharge, regardless of amount or length of service. Some specific rules regarding this are as follows:

   a. THEFT -- Removal, utilization, or consumption of any Company property REGARDLESS OF VALUE, or type, must be accompanied by a sales receipt or written authorization from management. Attempts to remove property, including distressed, damaged, and out-of-date product, will result in discharge REGARDLESS OF AN EMPLOYEE'S LENGTH OF SERVICE. Theft (or attempted theft) from a fellow employee or from the Company (at any facility) will result in discharge REGARDLESS OF VALUE of the property involved and REGARDLESS OF AN EMPLOYEE'S LENGTH OF SERVICE.

The bringing of packages or items purchased outside onto Company property is discouraged; however, if you find it necessary to do so, such items should be shown to store management who will give you authorization to bring in and remove the item from Company premises.

Employees carrying lunch boxes or any other objects in which it is possible to conceal Company property will, upon request, submit such packages for inspection when requested to do so before entering/leaving the property. All personal belongings must be stored in the designated location provided by management. Management reserves the right to search all personal belongings entering/leaving the store.

Employees are to charge correct retail prices. Weighed product should be labeled to reflect true weight. Employees who knowingly under or over charge, under or over weigh, or fail to properly record sales are subject to discharge.

It is the duty and responsibility of every employee who has knowledge of a dishonest act to discuss it with store management for further investigation.

   b. FALSIFICATION OF RECORDS -- Falsification of any record, whether by manual or electronic entry, including time and attendance, applications, inventories, bookwork, office procedures on cash, electronic data entry, etc., is strictly prohibited and will result in discharge.

   c. BAD CHECKS -- The policy of The Kroger Co. strictly prohibits the intentional writing of worthless checks to The Kroger Co. by its employees, or the failure to reimburse Kroger for a check returned due to error.

   d. CRIMINAL OR DISHONEST CONDUCT- Any off-the-job conduct involving criminal activity or dishonesty will subject the employee to discharge.

   e. CONFLICTS OF INTEREST -- The term "conflict of interest" describes circumstances that cast doubt on an employee's ability to objectively act with regard to Kroger interests. It is the duty of every employee to avoid situations in which there is or may seem to be a conflict of interest between the employee and the Company. Employees who have or contemplate a personal interest that may be in conflict with the interest of the Company are required to tell their store managers. In the event that the situation is found to be a conflict, it should be promptly resolved. If it cannot be resolved, the employee will be subject to termination. It is not possible to anticipate every situation that might create or contain such a conflict. Examples are: having a business interest in, or working for, a competitor or other food store or supplier.

15. Each employee is required to comply with all Federal, State, and Local laws in accordance with their responsibilities as good citizens and employees.

16. The sale, furnishing or giving of beer, wine, or any other alcoholic beverage to a person less than 21 years of age, or to a person who is visibly intoxicated, or outside the legal selling period will result in discharge. Selling tobacco to anyone under 18 years of age will result in discharge.

17. Employees are not permitted to accept gratuities from customers or vendors.

18. Employees will not park their vehicles in areas designated as customer parking.

19. Fighting by Kroger employees on Company premises or parking lots will result in disciplinary action up to and including discharge of all participants.

20. Due to our constant exposure to our customers, vendors, and fellow employees, good conduct, mannerisms and language must be used at all times. For example, cursing, swearing and the use of offensive language on company property will not be tolerated and will be grounds for disciplinary action up to and including discharge.

21. Excessive attendance problems (absenteeism and/or tardiness), regardless of reason, will be grounds for disciplinary action up to and including discharge. If unable to report to work as scheduled, the employee will call store management or the person in charge in absence of store management at least two (2) hours prior to the start of the shift. A doctor's release may be required upon reporting back to work.

22. Proven violation or willful misuse of vendor coupons or food stamps may result in immediate discharge.

23. Insubordination to store management and department heads may subject the employee to discharge.

KROGER 000422

## RELATIONSHIPS

1. The Company permits the employment of qualified relatives of employees as long as employment does not create actual or perceived conflicts of interest. Individuals who are related by blood or marriage are permitted to work in the same store provided · no direct reporting or supervisory/management relationship exists. No employee should work within the "chain of command" of a relative.

2. The practice of intra-store dating is discouraged, but not forbidden. Any employees choosing to date within the same store are expected to maintain a professional demeanor with one another at all times while at work or on any company business. To avoid the perception of favoritism, Management team members, including Department Heads, are expected to refrain from dating employees with whom there is a direct supervisory relationship.

## EMPLOYEE PURCHASE POLICY

1. **All merchandise sold to employees must be rung on a cash register and is to be recorded item-by-item** (Checkout transaction is the same for employee as for regular customer).

2. During the times the store is not open for regular business, employees are only permitted to purchase merchandise for immediate consumption, through the cash register authorized by the store management. The transaction is to be handled by the designated employee in charge.

3. **All merchandise must be paid for and rung up on the cash register before it is removed from the store, or before it is consumed.** The employee must retain the receipt and produce it upon management request.

4. Employees are not permitted to take merchandise and leave money at the cash register or office.

5. Employees are not permitted to check out their own purchases except as a customer using U-SCAN.

6. Employees are not permitted to check out purchases of their immediate family or any individual residing in the same household.

7. Employees may assemble merchandise prior to starting time, during break periods, and lunch periods. This merchandise must be stored in an area designated by the Store Manager and must be clearly marked with the employee's name. This merchandise must be paid for immediately at the close of the employee's work schedule for that day. Once paid for, the merchandise must be removed from the store.

8. **Employees may not shop while on the clock.**

9. **In no case will an employee price mark his or her own purchase(s).** If an item is not priced, the Manager, Co-Manager, or designated employee, shall initial and price the item to be purchased by an employee.

10. **No employee will put a price on damaged merchandise or merchandise to be marked for clearance unless the Store Manager or Co-Manager has authorized such action.** All items and product being purchased by an employee must have been previously offered for sale to the general public in the same physical state and at the same price as being paid by an employee. No special considerations or prices will be taken or received by employees.

11. **No employee will weigh, wrap, price or reduce in price, any merchandise that is for his own use.** .

12. **Employees will pay the proper price for every item taken from the store, or consumed, or used on the store premises.**

13. **There shall be no consumption, opening, intentional damage to, or utilization of any merchandise, or items not previously paid for, including distressed, damaged, out-of-date or reclamation items.**

14. Employees using coupons must abide by all Local, State and Federal laws, and use the coupons within the guidelines printed on the individual coupons. A coupon may not be redeemed unless the specified item is being purchased at that time. When a customer's use of coupons results in a negative balance, the cashier must not give money back to the customer.

15. Samples are for customers. Employees on the clock shall not consume samples.

16. It is understood that any package(s) entering/leaving the store is/are subject to the inspection by management or an authorized employee.

17. **No employee is permitted to use their Kroger Plus Shopper's Card for customers or other employees. Any violation of the Kroger Plus Card procedures will result in disciplinary action, up to and including discharge.**

A violation of any portion of the above policy will be cause for immediate disciplinary action up to and including discharge, and may result in criminal prosecution.

## STORE TIME & ATTENDANCE RULES

1. Each employee shall record his own time electronically.

2. Each employee shall record in and out when beginning and ending work, including any time taken for breaks and lunches. No work shall be performed before recording in for the shift or after recording out. **Working off the clock is strictly prohibited.**

3. Any employee failing to properly record time will notify store management immediately. Store management will take the necessary action to correct any improperly recorded time.

4. No employee is permitted to record another employee's time for him/her.

5. Employees who are responsible for maintaining time and attendance records will not make adjustments to their own time records.

6. **Falsification of work time is strictly prohibited. Claiming time or pay for time not worked will result in discharge.**

7. Employees who record and transmit store payroll data are responsible for maintaining accuracy for their transactions. Falsification of payroll records or data is strictly prohibited.

A violation of any portion of the above policy will be cause for immediate disciplinary action up to and including discharge.

## STORE SAFETY RULES

**General Safety Rules**

1. An employee who engages in an act which endangers himself, another employee, or a customer will be subject to disciplinary action.

2. All unsafe conditions must be corrected or reported immediately to store management.

3. Employees must not run in the store.

4. Employees should lift with their legs, not their back, and should get help when lifting a heavy load.

5. Any liquids or foreign objects on the floor must be cleaned up immediately.

6. Caps on bleach must be tightened when stocked and at the check stand.

7. All accidents must be reported to store management immediately.

**Use of Equipment**

1. All equipment must be operated as instructed. Deviation from published operating procedures will not be permitted.

2. No power equipment may be used without all provided guards in place.

3. No power equipment, including slicers, meat saws, floor scrubbers, the baler, the compactor, etc... may be operated by anyone under 18 years of age. This rule also applies to the loading/unloading of the baler and the compactor.

4. Appropriate ladders must be used to reach products and supplies. Standing on chairs, merchandise, conveyors, bascarts, milk crates, etc. or using the electric straddle stacker to reach product or supplies is prohibited.

5. Four-wheel dollies must not be loaded higher than shoulder level.
6. There will be no riding of electric pallet jacks.
7. When lifting equipment is not in use, it should be parked out of the way with forks lowered all the way down.
8. Employees are to be familiar with and abide by all departmental safety rules in their respective departments.

## Fire Prevention

1. Smoking is permitted only in designated areas. Disposal of cigarette butts must be in the proper container.
2. Merchandise must be stored at least 18 inches below sprinkler heads.
3. Nothing may be placed or stored on or near heating, refrigeration, or electrical equipment.
4. Fire extinguishers, electrical boxes, and sprinkler valves must not be blocked or covered.
5. Employees shall be familiar with the location and proper use of fire extinguishers.
6. Exit aisles and doors must not be blocked or locked.
7. All electrical equipment such as ovens, fryers, wrappers, etc. should be turned off when not in use.
8. Only grounded extension cords may be used. Extension cords are for temporary use, not permanent situations.

# THE KROGER CO. POLICY CONCERNING SEXUAL HARASSMENT AND OTHER FORMS OF HARASSMENT

## PHILOSOPHY

The Kroger Co. is committed to a workplace free from unlawful discrimination, which includes sexual harassment and other forms of harassment because of one's race, color, religion, gender, national origin, age, disability, or sexual orientation.

Any form of harassment undermines the Company's insistence upon employee integrity, and is considered serious misconduct. No employee, either male or female, should be subjected to offensive conduct or innuendo, either verbal or physical, from co-workers, supervisors, customers or vendors.

All employees have a responsibility to maintain the workplace free of harassment and to report such misconduct when it occurs, just as any form of unlawful discrimination should be reported.

## POLICY

Proven sexual harassment, or harassment because of an individual's race, color, religion, gender, national origin, age, disability or sexual orientation will result in discipline up to and including discharge.

Sexual harassment is defined as:

Unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct if (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

Examples of sexual harassment include but are not limited to the following:

- Conditioned promotion, demotion, performance evaluations and the like upon submission to sexual favors.
- Touching that is unwanted, uninvited, or offensive.
- Displaying sexually suggestive or explicit material, pictures, or cartoons.

- Relating sexually suggestive or explicit stories or "jokes".
- Making sexually suggestive or explicit gestures.

Harassment because of one's race, color, religion, gender, national origin, age, disability or sexual orientation is defined as:

Verbal or physical conduct that (1) denigrates or shows hostility or aversion toward an individual because of his/her race, color, religion, national origin, sexual orientation, gender, age or disability, or that of the individual's relatives, friends or associates, and (2) has the purpose or effect of creating an offensive work environment, unreasonably interferes with an individual's work performance, or otherwise adversely affects an individual's work performance.

Examples of such harassment include but are not limited to the following:

- Making derogatory ethnic or racial statements, or belittling one's religion or religious practices.
- Perpetuating stereotypes about one's age, gender, etc. ("You're too old to change your ways", "This is women's work.").
- Refusing to assist an employee or customer because of his/her race, gender, etc.
- Disparaging the sexual orientation of an employee, his/her associates, or a customer.

## REPORTING AND INVESTIGATION PROCEDURE FOR SEXUAL HARASSMENT AND OTHER FORMS OF HARASSMENT

If you believe that you are being sexually harassed by a co-worker, supervisor, customer or vendor, or if you believe you are being harassed by a co-worker, supervisor, customer or vendor because of your race, color, religion, gender, national origin, age, disability or sexual orientation you should take these steps:

1. Firmly and clearly tell the person who is harassing you that his or her behavior is unwelcome and should stop at once. If possible, take a witness to this discussion. Write a statement about the incident and what you did to stop it, including dates, times, and places. This statement will be helpful if the harassment continues and the Company needs to investigate. If you are uncomfortable with telling the person who is harassing you to stop, then proceed to the reporting procedure below.

2. Report the incident to your immediate supervisor, another member of the management team, any person in the Human Resources Department, PO Box 14002, Roanoke, Virginia 24038, (540) 563-3554; or call the Kroger Helpline at 1-800-689-4609; TDD, 877-673-6803. Your report should be as specific as possible, including the name of the person who is harassing you, a description of the conduct and the effect that conduct is having on your working conditions and work performance, and the names of any witnesses who could assist in the investigation.

All claims of harassment will be investigated promptly and will be handled professionally and as confidentially as circumstances permit. Your further participation in the investigation may be necessary, and you will be informed of the outcome. The company will not tolerate reprisals or retaliation against persons reporting alleged harassment or anyone participating in the investigation of the alleged harassment.

04/03

KROGER 000424

*Form 3141*

### SIGNIFICANT INCIDENT REMINDER

*NAME:* Eric Daniels                    *Date:* 2/16/09

*Briefly describe the incident:*

Eric called late Saturday night said he could not work Sunday because he did not have a baby sitter. Did not talk to a Member of MGT   unexcused Absence

*Have you done something about it?*

_____ *Commended the employee if the incident was favorable.*

__X__ *Discussed ways to prevent recurrence if the incident was unfavorable.*

C. Morris

*Employee's Supervisor*


### BACK OF SIGNIFICANT INCIDENT REMINDER

*A SIGNIFICANT INCIDENT can be an example of either a good performance or a mistake or failure of some kind. Both should be noted and reviewed with the employee.*

*Many supervisors find it helpful to note these incidents at the time they occur and to keep a file of these notes for reference at the time a performance review is held. This is not a substitute for handling an incident at the time it occurs.* <u>*The employee should be complimented or corrected at that time.*</u>

*THIS REMINDER IS NOT A CONSTRUCTIVE ADVICE RECORD! In fact, you will want to jot down many incidents on these "reminder" slips that do not justify a Constructive Advice Record. It is merely a memory-jogger to give the supervisor something tangible to talk about and follow-up in his performance review interviews with his employees.*



EXHIBIT

6

## CONSTRUCTIVE ADVICE RECORD

Discussion Date: February 23, 2009                    **REDACTED**

Name: Erick Daniel _____        SS#: ████████
Classification: __Full time_____        Store/Dept: 520 Meat/ Seafood

__Customer Complaint  __Carelessness
__Disregard of established rule well known to the employee
__Discourtesy  __Disregard for safety  __Failure to follow instructions
__Wasting Time  __Quality of work  __Improper checkout procedures
__Personal Untidiness  __Tardiness  __Quantity of work  __Profanity
_X_ Excessive or unauthorized Absence  __ Other Lunch/Break policy

*Fully explain item or items checked. Give date and time of specific incident involved.*
Eric was scheduled to work 9:30am to 6pm on Sunday February 22, 2009.
On Saturday night around 5:45 pm Eric told Scott Morris; co manager; that he would not be in
the next day; Sunday, February 22,2009 because he did not have a babysitter. Scott told him he
needed to be here this is not an excused absence.

*Has this employee been warned previously for a similar occurrence?*
Kenny Morris; Store Manager; had a conversation with Erick on February 16, 2009 because
Erick did not work his scheduled shift on Sunday, February 15,2009. He called on Saturday
February 15,2009,He did not talk to a member of store management. This is an unexcused
absence.

*Corrective Effort:*
On February 16,2009 Kenny Morris; Store Manager; went over the policy with Erick on calling
out. Explained that he needs to work his scheduled shifts and when he calls he needs to speak to
a member of Store Management; as explained in new hire orientation. Kenny also told Erick that
not having a babysitter is not a valid excuse.
  Any further violation of this policy will result in further disciplinary action up to and
including termination.

*Has the employee been placed on probation?*
Erick is being put on a 90day probation period: __2/23/09___ to __5/23/09___

The shop steward or union representative, Mr., Mrs., Ms. __Joe White___ has been
fully informed of the details concerning this incident on (date) __3/4/09___ He/She
was/was not present at the time of discussion with the employee.

__S Morris   3/4/09_____
Zone or Department Manager Store Manager or Supervisor

Employee's Statement:

                              Refuse to sign        S. Morris   3/4/09
                                                     Joseph White
                                                     Shop Steward

_____        _____
Employee                          Date

KROGER 000639

CONSTRUCTIVE ADVICE RECORD

**REDACTED**

Discussion Date: March 2, 2009

Name: Erick Daniel _____   SS#: ▓▓▓▓▓▓
Classification: __Full time_____   Store/Dept: _520 Meat/ Seafood_

__Customer Complaint  __Carelessness
__Disregard of established rule well known to the employee
__Discourtesy  __Disregard for safety __Failure to follow instructions
__Wasting Time  __Quality of work __Improper checkout procedures
__Personal Untidiness __Tardiness __Quantity of work __Profanity
_X_ Excessive or unauthorized Absence  __ Other Lunch/Break policy

### *Fully explain item or items checked. Give date and time of specific incident involved.*
Eric was scheduled to work 2/28/09 930a-6p,3/1/09 3p-10p and 3/2/09 9a-530p.
Erick called and talked to Octavia Howard to say he would not be in on Saturday 2/28 and
Sunday 3/1. Erick was a no call no show on Monday 3/2/09.
Erick had requested this time off but was denied because we had no one to cover his shifts.

### *Has this employee been warned previously for a similar occurrence?*
Kenny Morris; Store Manager; had a conversation with Erick on February 16, 2009 because
Erick did not work his scheduled shift on Sunday, February 15,2009. He called on Saturday
February 14,2009. He did not talk to a member of store management. This is an unexcused
absence.
Scott Morris discussed with Erick the importance of him being here on Sunday. Explained to
Erick that he would be suspended for missing another day of work (3days). Erick said that we
were not giving him his right to practice his religion. Scott told explained to Erick that he was
being disciplined for not showing up due to babysitting issues, that is the reason Erick said he
could not work when he called in on 2/22/09.

### *Corrective Effort:*
On 3/4/09 Scott Morris; Co-Store Manager; went over the policy again with Erick on calling out.
Explained that he needs to work his scheduled shifts and when he calls he needs to speak to a
member of Store Management as explained in new hire orientation.

### **Any further violation of this policy will result in further disciplinary action up to and including termination.**

### *Has the employee been placed on probation?*
Erick is being put on a 90day probation period: __3/02/09_ to _6/02/09_____

The shop steward or union representative, Mr., Mrs., Ms. *Albert Barkin* _____
has been fully informed of the details concerning this incident on (date)_____ 3/4/09
He/She was/was not present at the time of discussion with the employee.

_____
Zone or Department Manager Store Manager or Supervisor

Employee's Statement:

*would not sign*      *Abarkin 3/5/9*
_____      _____
Employee                         Date

EXHIBIT

8

tabbies

KROGER 000435

**REDACTED**

CONSTRUCTIVE ADVICE RECORD

Name: *ERIC Daniel*                                       Discussion Date: *3/9/09*

SS# ▓▓▓▓▓▓▓▓

Classification *Full Time meat*                     Store/Dept: *520*

☐ Customer Complaint        ☐ Carelessness                    ☐ Disregard of established rule well
                                                                                              known to the employee
☐ Discourtesy                      ☐ Disregard for safety          ☐ Failure to follow instructions
☐ Waisting Time                   ☐ Quality of work                 ☐ Improper check-out procedures
☐ Personal Untidiness          ☐ Tardiness                         ☐ Quantity of work
☐ Profanity                          ☒ Excessive or unauthorized  ☐ Other
                                              Absence *unexcused Absence*

Fully explain item or items checked. Give date and time of specific incident involved.

*Eric was scheduled Sunday 3/8/09 from 3p to 10p. He called at 12:45 and said he could not work because of Church Service.*

Has this employee been warned previously for a similar occurence?  *Yes*
When? *3/5/09*
            (Date)

Corrective Effort:

*Eric will be Suspended for 3 scheduled days and will return to work on Saturday 3-14-09. The Suspended time is non-paid*

Has the employee been placed on probation? ☒ Yes        ☐ No   Until what date? *6-7-09*

The shop steward or union representative, Mr., Mrs., Ms. *Melody Frazier* has been
fully informed of the details concerning this incident on (date) *3/9/09*  He/She
was/was not present at the time of discussion with the employee.

_____                          _____
Zone or Department Manager                          Store Manager or Supervisor

Employee's Statement:

*Will not sign* 4 Melody Frazier
Employee

EXHIBIT
9

Form 3085-C                          (Use an extra sheet for additional remarks)

KROGER 000436

5/14/09





## AVAILABILITY QUESTIONNAIRE

Name: ERICK Daniel

Social Security Number: ████████████

Due to the nature of the grocery retail industry, schedule flexibility and availability are key components which are necessary to meet the needs of our business. When providing your work availability, consider Kroger's hours of operation.  You may be required to work night and weekend shifts, as they are an important part of our business.

Hours available for work:

|  | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| A.M. |  | 7:00 A.m | 7:00 A.m | 7:00 A.m | 7:00 A.m | 7:00 A.m |  |
| P.M. |  | 5:00 P.m | 5:00 P.m | 5:00 P.m | 5:00 P.m | 5:00 P.m |  |

Approximate hours desired per week:_____

Desired department (if any):_____

*Not Approved*
*K Morris*

_____

### FOR STORE USE ONLY:

Interview date:_____

Interviewed by:_____

Hired:      Yes          No          Status:          FT          PT

Position:_____

Wage rate:_____

Start date:_____

Refused offer:_____

Reason:_____

EXHIBIT

10

KROGER 000095

# KROGER MID-ATLANTIC
# AND
# UFCW UNION LOCAL 400

# RICHMOND/HAMPTON ROADS
# STORES

**March 26, 2006 through March 27, 2010**



KROGER 000437

# KROGER MID-ATLANTIC/UFCW UNION LOCAL 400
## RICHMOND/HAMPTON ROADS STORES
## CONTRACT INDEX

| | | |
|---|---|---|
| ARTICLE 1 | INTENT AND PURPOSE | PAGE 2 |
| ARTICLE 2 | NON-DISCRIMINATION | PAGE 2 |
| ARTICLE 3 | COVERAGE | PAGE 2 |
| ARTICLE 4 | SHOP CONDITION | PAGE 3 |
| ARTICLE 5 | MANAGEMENT RIGHTS | PAGE 3 |
| ARTICLE 6 | DISPUTE PROCEDURE | PAGE 4 |
| ARTICLE 7 | NO STRIKE, NO LOCKOUT | PAGE 5 |
| ARTICLE 8 | EMPLOYEE DEFINITION | PAGE 5 |
| ARTICLE 9 | WORKING CONDITIONS | PAGE 6 |
| ARTICLE 10 | VACATION | PAGE 8 |
| ARTICLE 11 | SENIORITY | PAGE 9 |
| ARTICLE 12 | HOLIDAYS | PAGE 10 |
| ARTICLE 13 | LEAVE OF ABSENCE | PAGE 11 |
| ARTICLE 14 | GENERAL | PAGE 12 |
| ARTICLE 15 | UNION COOPERATION | PAGE 12 |
| ARTICLE 16 | SEPARABILITY | PAGE 13 |
| ARTICLE 17 | SHOP STEWARDS | PAGE 13 |
| ARTICLE 18 | PENSION | PAGE 14 |
| ARTICLE 19 | HEALTH AND WELFARE | PAGE 14 |
| ARTICLE 20 | WAGES | PAGE 17 |
| ARTICLE 21 | EXPIRATION | PAGE 21 |
| | SCHEDULE "A" FUEL CENTER AGREEMENT | PAGE A-1 |
| | LETTERS OF UNDERSTANDINGS | |

KROGER 000438

## AGREEMENT

This Agreement has been entered into between Kroger Limited Partnership I Mid-Atlantic Marketing Area, hereinafter designated as the Employer, and the United Food and Commercial Workers (UFCW ) Union Local #400, chartered by the United Food and Commercial Workers International Union, hereinafter designated as the Union.

**ARTICLE 1.**                    **INTENT AND PURPOSE**

1.                    The Employer and the Union each represents that the purpose and the intent of this Agreement is to promote cooperation and harmony, to recognize mutual interests, to provide a channel through which information and problems may be transmitted from one to the other, to formulate rules to govern the relationship between the Union and the Employer, to promote efficiency and service and to set forth herein the basic agreements covering rates of pay, hours of work, and conditions of employment.

**ARTICLE 2.**                    **NON-DISCRIMINATION**

1.                    The Employer and the Union agree that there shall be no discrimination against any employee because of race, religion, color, creed, national origin, sex, disability, Union affiliation or activities or veteran's status in accordance with existing law.  Where the word "he" appears in this Agreement, the parties agree that it applies to both "male and female" employees.

**ARTICLE 3.**                    **COVERAGE**

1.                    The Union shall be the sole and exclusive bargaining agent for all employees, except Store Management, Professional Pharmacy Department employees, Pharmacy Technicians, Store Department Heads, Wine Specialists, Security Employees, Demonstrators, and all clerical employees in the stores of the Employer operated in Eastern Virginia.  If stores covered by this Agreement are transferred out of the Mid-Atlantic Marketing Area, the Union shall continue to be the sole and exclusive bargaining agent for all employees described above in such stores and in any new stores opened in the cities in which such transferred stores are located.

2.                    Once each period, the Employer will notify the Union in writing of all employees hired or terminated, reinstated or transferred, into this

- 2 -

KROGER 000439

bargaining unit within the previous period indicating the employee information requested by the Union.

## ARTICLE 4.                                    SHOP CONDITION

1.                              The Employer reserves the right to secure new employees from any source whatsoever.   During the first forty-five (45) days of employment for a full-time employee and ninety (90) days for a part-time employee, a new employee shall be on a trial basis and may be discharged at the discretion of the Employer.  If and when an agency shop becomes legal, the parties agree to meet and discuss same.

2.                              The Employer agrees to deduct Union initiation fees as authorized and shall deduct Union dues from the pay each week of employees who are members of the Union and remit such deductions to Local Union #400 each week, provided, however, that the Union presents to the Employer, voluntary signed authorization from the employees to cover such deductions.

3.                              The Company agrees to honor and to transmit to the Union contribution deductions to the United Food and Commercial Workers International Union Active Ballot Club from employees who are Union members and who signed deduction authorization cards.  The deductions shall be in the amount of seventy-five cents ($.75) per week.

## ARTICLE 5.                                    MANAGEMENT RIGHTS

1.                              The management of the business and the direction of the working forces, including the right to plan, direct and control store operations, hire, suspend or discharge for proper cause, transfer or relieve employees from duty because of lack of work or for other legitimate reasons, the right to study or introduce new or improved production methods or facilities, and the right to establish and maintain rules and regulations covering the operation of the stores, a violation of which shall be among the causes for discharge, are vested in the Employer, provided, however, that this right shall be exercised with due regard for the rights of the employees and provided further that it will not be used for the purpose of discrimination against any employee or for the purpose of invalidating any contract provision.

2.                              The Employer maintains the right to continue current vendor assistance, and further to utilize vendor services that become available in the industry in order to maintain competitiveness.   If there is a major impact on bargaining unit work as a result of the above, the Employer agrees to meet with the Union to discuss such impact.

- 3

KROGER 000440

**3.**                    In the event that the Employer contemplates the introduction of major technological change affecting bargaining unit work, advance notice of such change will be given to the Union in writing.  If requested to do so, the Employer will meet with the Union to discuss the implementation of such change before putting such change into effect.

<u>ARTICLE 6.</u>                    <u>DISPUTE PROCEDURE</u>

**1.**                    Should any differences, disputes, or complaints arise over the interpretation or application of the contents of this Agreement, there shall be an earnest effort on the part of both parties to settle such promptly through the following steps:

STEP 1.                By conference between the employee and the Shop Steward or Union Representative and the Store Manager.

STEP 2.                By conference between the Union Representative and the Zone Manager.  If Step 2 does not settle the dispute within three (3) working days it may be taken to Step 3.

STEP 3.                By conference between an official or officials of the Union, the Divisional Director, Human Resources/Labor Relations or other representatives of the Employer delegated by the Divisional President.

STEP 4.                In the event the last step fails to settle the complaint, it may be referred to arbitration.

The parties recognize that other individuals relevant to the processing of a dispute may be included in Step 1, Step 2, or Step 3, at the discretion of the parties.

**2.**                    The parties shall, within ten (10) days of disagreement, request from the American Association of Arbitrators a panel of seven (7) arbitrators from which an arbitrator shall be chosen by the alternate striking of names. The decision of the arbitrator shall be binding on both parties and expenses of the arbitrator shall be paid for jointly.

**3.**                    The Employer may at any time discharge any employee for proper cause.  If the Union concludes after investigation that the discharge

- 4 -

KROGER 000441

was improper, the Union must file a written complaint with the Employer within seven (7) days. Any such written complaint must be discussed as specified in the procedure outlined in Article 6.1 above.

4.                    The manager of the store shall grant to any accredited Union official access to the store at any time that the store is open for business, for the purpose of satisfying himself that the terms of this Agreement are being complied with, including the review of applicable records (such as employee time-keeping records) in a timely manner during that visit, if possible. It is understood, however, that the Union official will, upon entering the store, make his presence known to the Store Manager.

5.                    Grievances must be taken up promptly, and no grievance will be considered or discussed which is presented later than fifteen (15) calendar days after such has happened. Grievances not settled in Step 1 shall be reduced to writing.


ARTICLE 7.                    NO STRIKE, NO LOCKOUT

1.                    During the term hereof, the Union agrees that there shall be no strike or any other interference with or interruption of the normal conditions of the Employer's business by the Union or its members. The Employer agrees that there shall be no lockout.   Nothing contained herein, however, shall compel any employee to walk through a legal labor picket line set up as a part of a duly authorized strike and legally called strike against the Employer. It is understood, however, that employees shall complete the work at hand and properly account for money, merchandise and other property in their custody which belongs to the Employer. In the event a picket line, strike or work stoppage by any organization other than Local #400 occurs, at least forty-eight (48) hours notice will be given by Local #400 if they honor or sanction said picket line, strike or work stoppage.


ARTICLE 8.                    EMPLOYEE DEFINITION

1.                    An employee that works thirty-five (35) hours per week for twelve (12) consecutive weeks shall be considered to be full-time. To disqualify, employees who work less than thirty-five (35) hours per week for twelve (12) consecutive weeks shall be considered as part-time. Vacation weeks and approved bona fide leaves of absence will not be considered in the computation.

KROGER 000442

## ARTICLE 9.                              WORKING CONDITIONS

1.                              The hours and work for each employee shall be scheduled by the Employer with the most hours on the basis of seniority providing the employee is qualified to perform the work and is available. The schedule for full-time employees shall not be changed during the workweek except in case of employee's absence, emergency beyond the control of the Employer, or by mutual agreement. The schedule for part-time employees may be changed by notification to the employee prior to his reporting for his scheduled work time. The work schedule for the succeeding week for employees who work regularly will be posted in ink by 2:00 P.M. on Friday of the prior week. The Shop Steward has the right to make a copy of the schedule.

2.                              The basic workweek for full-time employees shall be worked in five (5) days, Sunday through Saturday, unless waived by the employee. Part-time employees will receive one (1) day off per week unless mutually waived by the employee and store manager.

3.                              It is agreed that two (2) employees will not be scheduled for work with the same classification in a week where one (1) employee with the necessary qualifications could perform the work scheduled subject to the seniority provisions of the Agreement.

4.                              The Union agrees that the needs of the business take first priority in scheduling. Furthermore, the Employer recognizes that given the individual lifestyles of full-time employees, certain work schedules may be preferable. In this regard, the Employer will endeavor to consider seniority in the preparation and assignment of work schedules for full-time employees who submit their preferences in writing.

5.                              Time and one-half (1-1/2) will be paid for hours worked in excess of forty (40) hours of actual work in a workweek. No employee will be required to accept time off as compensation for overtime. There will be no pyramiding of premium pay and any hours paid for at premium pay will not be computed in paying overtime.

6.                              A one-half (1/2) hour lunch period on the employee's own time shall be allowed for lunch in each full workday. This lunch break will be scheduled by the Employer as near to the middle of the employee's shift as possible. Employees working a shift of at least four (4) hours shall receive a fifteen (15) minute paid rest period. An employee working seven (7) or more hours in a day shall be entitled to two (2) paid rest periods of fifteen (15) minutes each. Such rest periods will be scheduled consistent with the needs of the business, but as close as possible to the middle of the half-day. Employees shall punch in and out during rest periods and lunch periods.

- 6

KROGER 000443

7.                              Employees who are instructed to report to work shall be guaranteed at least four (4) hours work.

8.                              In an effort to have a positive impact on employee turnover and the mix of full-time and part-time jobs, the Union and the Company by mutual agreement may discuss and implement certain contract modifications on a test basis.

9.                              The Employer agrees to discuss changes in the Dress Code with the Union before putting such changes into effect.   Employees will be provided information regarding the marketing area dress standards, and each employee will be required to adhere to reasonable dress standards.  Employees will be provided Kroger uniform shirts, (three (3) for full-time employees, two (2) for part-time employees), accessory items, and name badges.  These uniform shirts will be replaced as necessary provided the employee turns in the worn uniform shirt for a new uniform shirt.  Ponchos will be furnished in each store for carryout employees and they shall not be taken off the store premises.

10.                             The Employer and the Union agree that a proven violation of time clock rules, including working before punching in or after punching out may subject the employee to disciplinary action up to and including discharge.

11.                             An employee who is absent from work for three (3) consecutive working days without notifying the Store Manager and not having a bona fide excuse will be considered to have voluntarily quit.

12.                             The Employer agrees not to enter into any agreement or contract with its employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement.

13.                             There shall be no split shift schedules unless waived by the Employee.

14.                             Employees shall have a minimum of ten (10) hours off between the ending of their schedule and the starting of their next schedule, unless waived by the employee.   Any employee who works during the ten (10) hour period shall be paid for such time at the rate of one and one-half (1-½) times.

15.                             The Employer's policy regarding travel expense reimbursement will apply in cases of temporary transfers or for Employees working in more than one store per day.

KROGER 000444

<u>**ARTICLE 10**</u>.                          <u>**VACATION**</u>

**1.**                          In determining continuous service for vacation purposes, the employee's current employment date with Kroger will be used. Once a vacation selection has been agreed to and scheduled, it shall be changed only by mutual agreement between the employee and the Employer, except in cases of emergency beyond the control of the Employer. No weeks shall be eliminated from the vacation schedule; however, the Employer reserves the right to determine the number of employees on vacation during any week based upon business needs.

**2.**                          Eligible Full-time employees will be entitled to vacation according to the following:

> 1 year of continuous service  - 1 week vacation
> 2 years of continuous service - 2 weeks vacation
> 9 years of continuous service - 3 weeks vacation
> 18 years of continuous service - 4 weeks vacation

                         Eligible Part-time employees will be entitled to one (1) week vacation after completing one (1) year of continuous service.  Effective January 1, 2007, part time employees hired before March 26, 2006 with three (3) years of service will receive two (2) weeks vacation. Part time employees hired on or after March 26, 2006 with four (4) years of service will receive two (2) weeks of vacation.

**3.**                          Choice of vacation dates will be granted on the basis of seniority, except that the Company reserves the right to grant vacations to any employee when their absence will least affect the operation.  Employees must choose vacation by March 1, otherwise they forfeit the privilege of choice by seniority.

**4.**                          Eligible employees will be paid vacation on the basis of average hours in the qualifying year determined by dividing total straight time hours worked by fifty-two (52) to a maximum of forty (40) hours per week.  No employee will be given pay in lieu of vacation for any vacation week earned.  Vacation pay will be paid in advance.

**5.**                          Initial vacation is earned by completing one (1) year of continuous service from the employee's anniversary date (appropriate date of hire). In subsequent years, except in those years when the employee qualifies by the schedule for an additional week of vacation, the employee will become eligible for vacation as of January 1st each year providing the employee worked December 30th of the qualifying year.  In the year when an employee qualifies for an additional week of vacation (2nd week, 3rd week, or 4th week), the employee must work to their anniversary date in order to be eligible to receive the additional week of vacation.

- 8

KROGER 000445

6.                        Vacation not taken within the calendar year may be carried over into the next year.  Carried over vacation weeks must be taken by the end of January. Any exception to this must be requested in writing to the store manager and will only be granted when unforeseen business circumstances preclude vacation time from being taken.

7.                        Full time employees with three (3) or more weeks of vacation may elect to take one (1) week (five (5) days), one day at a time (up to three (3) days in a week).

        a)               The intent must be declared when vacations are selected.

        b)               The employee must give the Store Manager two (2) weeks notice.

        c)               The day(s) selected must be agreeable to the Store Manager.

8.                        Employees who have not taken the vacation, which they earned by reason of their service and who leave their employment, shall receive their vacation pay at the time of leaving.

9.                        No more than two (2) vacation weeks may be taken from the week of Memorial Day through the week of Labor Day.


**ARTICLE 11.**                        **SENIORITY**

1.                        Seniority shall be determined on the length of service of the employee, with regard to the employee's ability to perform the work.  All circumstances being reasonably equal, length of service shall be the controlling factor. Agreed upon seniority lists shall be established and maintained, and such records shall be available to the Union at all times.  Full-timers will have seniority over part-timers. In layoffs and recall, the principle of seniority shall apply.  In the matter of promotions or permanent transfers from one store to another, the Employer shall have the right to exercise final judgment after giving due regard to seniority.

2.                        Seniority shall be on a store, geographic area, and local bargaining unit basis for full-time.  The seniority date shall be the employee's beginning date as a full-time employee, or the employee's date of entrance into this bargaining unit if he is a full-time employee when he enters this bargaining unit. Seniority for part-time employees shall be on a store basis and then on an area basis, and shall be the employee's date of hire.

KROGER 000446

3.                              Seniority shall be considered broken if an employee is justly discharged by the Employer, if the employee voluntarily quits, if the employee has been laid off continuously for a period of more than six (6) months or if the employee is called back to work after a layoff and does not report for work within one (1) week.

4.                              A part-time employee who is available for and desires a full-time job will make his desire known in writing to the Zone Manager with copies to the Union.  When the Employer has such an opening on other than a temporary basis, such employee will be considered for the opening based on seniority in the store, provided he has the ability to fill the job.  Should the opening not be filled in this manner, the Employer will then attempt to fill the opening by utilizing interested part-time employees by seniority from other stores in the geographic area who have letters on file.

5.                              In the event of store closing or layoffs, the Employer and the Union will meet and discuss the reassignment of work.  Whatever agreement is reached will be final and binding.  If no agreement is reached, the provisions of 11.2 shall apply.

6.                              A full-time employee who has been reduced below thirty-five (35) hours per week for six (6) consecutive weeks or laid off for one (1) week shall have the right to displace the least senior full-time employee in the geographic area or, then the bargaining unit if they are the least senior in the geographic area.  Failure to do so, forfeits this right.

## ARTICLE 12                    HOLIDAYS

1.                              Employer will observe the following holidays for eligible full-time employees: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day.  During a week in which one of the above holidays occur, full-time employees who have worked for more than ninety (90) days shall receive eight (8) hours straight time pay in addition to wages earned unless absent the last workday before the holiday or the first workday following the holiday.

2.                              Employees who are on leave of absence or disability during the week in which a holiday falls will not receive holiday pay.  If an employee takes a vacation, during a holiday week, the employee will receive an additional day off in lieu of the holiday.

3.                              Eligible full-time employees will receive a personal holiday each year. This holiday must be scheduled in advance, and must be scheduled

KROGER 000447

with store manager approval.  Eligible full-time employees are those who have more than ninety (90) days of service and who are actively employed on January 1st each year.  Employee will receive eight (8) hours straight time pay for personal holidays.

4.                              Effective January 1, 2002, part time employees with one (1) year of continuous service will be eligible for two (2) personal holidays each January 1 of the Labor Agreement.  Part time employees who achieve one (1) year of continuous service subsequent to the first of the year will be eligible for two (2) personal holidays at the next January 1.   Part-time personal holidays will be paid at four (4) hours straight time pay per holiday.

5.                              Full time employees on the payroll at ratification (10/1/01) will receive three (3) additional personal holidays over the term of this agreement. Part time employees on the payroll at ratification (10/1/01) will receive three (3) additional personal holidays over the term of this agreement.


## ARTICLE 13.                          LEAVE OF ABSENCE

1.                              Any employee desiring a leave of absence shall secure written permission prior to the commencement of the leave from the Employer with a copy to the Union, the length of absence to be agreed by the Employer and the employee. The length of leave shall be commensurate with the need.  Failure to comply with this provision shall result in the complete loss of seniority of the employee involved.

2.                              Time spent on leave of absence will not be counted as time worked for the purpose of wage computation or other benefits and will not result in loss seniority.  Any employee accepting employment elsewhere while on leave of absence shall be considered a voluntary quit, except in a case where such employee works for the Union.

3.                              Requests for Military Leave of Absence and/or Family and Medical Act Leave of Absence will be based upon applicable law.

4.                              Requests for Sickness, Injury, Pregnancy, and/or Personal Leave of Absence will be granted based upon Company Policy.

5.                              The Employer agrees that any member of the Union employed by the Employer during the period of this Agreement who is elected to permanent office in the Union or appointed to any Union activity necessitating a leave of absence shall be granted a leave of absence and shall, at the end of the term in the first instance or the end of this mission in the second instance, be given re-employment at his former wage rate (seniority permitting) plus any increase or less any reduction that may

KROGER 000448

have become effective during this absence. Such leave will automatically renew for three (3) years unless notification is sent by such employee in writing to cancel leave.

6.                                  In case of a death in the immediate family of an employee who has completed their probationary period, they shall be paid for a reasonable period of absence, depending upon the circumstances, but not to exceed three (3) days provided the employee attends the funeral. In no case shall the pay for the week exceed the normal week's pay. Employee's family shall mean spouse, parents, step-parents, child, step-child, brother, sister, father-in-law, mother-in-law, grandparents, grandchildren or any relative residing with the employee.

7.                                  In case an employee is known to have served on any duly constituted jury, he shall be paid for hours necessarily absent from work less jury fees. Such pay shall not exceed the pay for his normal workweek.

### ARTICLE 14.                    GENERAL

1.                                  The Employer shall display in each store and in a prominent place, the Union Store Card and Decal as furnished by the Union and agrees to surrender same upon demand from the Union.

2.                                  The Employer will make available a bulletin board or an appropriate space for the Union to post notices or bulletins concerning administrative affairs of the Union.

3.                                  If the Employer requires an employee to take a physical examination, the Employer will pay for such examination.

4.                                  First Aid Kits for each store and all tools of the trade will be furnished by the Employer. Where machines such as meat grinders, saws, cubing machines, etc., are equipped with guards or other protective devices for the protection of employees, such devices must be used. Failure to do so may result in disciplinary action.

### ARTICLE 15.                    UNION COOPERATION

1.                                  The Union agrees to uphold the rules and regulations of the Employer in regard to punctual and steady attendance, proper and sufficient notification in case of necessary absence, conduct on the job, and all other reasonable rules and regulations established by the Employer. A copy of all rules and regulations will be furnished to the Union.

KROGER 000449

2.                          The Union agrees to cooperate with the Employer and the Employer agrees to cooperate with the Union in maintaining and improving safe working conditions and practices, in improving the cleanliness and good housekeeping of the stores, and in caring for equipment and machinery.

3.                          The Union agrees to cooperate in correcting inefficiencies of members which might otherwise necessitate discharge.

4.                          The Union recognizes the need for improved methods and output in the interest of the employees and the business, and agrees to cooperate with the employer in the installation of such methods, in suggesting improved methods, and in the education of its members in the necessity for such changes and improvements.

## ARTICLE 16.                    SEPARABILITY

1.                          Nothing contained in this Agreement is intended to violate any Federal or State laws, rules or regulations made pursuant thereof.  If any part of this Agreement is construed to be in such violation, then that part shall be null and void and the parties will negotiate to replace said void part with a valid provision.

## ARTICLE 17.                    SHOP STEWARDS

1.                          The Union shall have the right to designate three (3) Shop Stewards (two (2) regular and (1) alternate) for each store.  The Shop Stewards may act for the Union in the collection of dues from Union members and explaining the facts and status of the Union to the employees.  The Union shall furnish to the Employer a list of Shop Stewards and any necessary revisions of this list due to changes.  A Shop Steward may be transferred only in cases of promotion or with the consent of the steward or the Union to the transfer.  The Shop Stewards shall be the last employees to be laid off except in the cases of store closing.

2.                          Lengthy discussions between employees and representatives of the Union, including the Shop Steward, or among themselves concerning disputes, shall not take place during working hours.

3.                          There shall be no discrimination against any employee because of Union membership.  The Employer further agrees that there shall be no discrimination against any Shop Steward as a result of the performance of his responsibilities.

KROGER 000450

4.                         In the interest of promoting cooperative relations, Store Management will introduce each new employee in the store to a Union Shop Steward within one (1) week after the new employee reports to work. At the time of introduction, Store Management will provide the Shop Steward an opportunity on the clock to meet privately with the new employee. In this brief meeting, the Shop Steward shall give the new employee information about the Union and shall explain its operations; the Shop Stewards may answer any questions the new employee asks; shall request the new employee to join the Union and may make arrangements for the new employee to become a member.

5.                         The Employer agrees to pay two (2) days pay per store each year for Shop Steward training to be conducted by the Union. The Shop Stewards will provide proof of attendance at said training in order to be compensated for the day by the Employer.

**ARTICLE 18.**                    **PENSION**

1.                         Effective January 1, 2005, the parties agree to transfer pension coverage to the UFCW and Participating Employers Pension Fund. Contributions of twelve (12) cents per hour will be made on behalf of eligible employees, excluding Courtesy Clerks/Baggers, who have completed one (1) year of service.

**ARTICLE 19.**                    **HEALTH AND WELFARE**

1.                         Continue the current Health Care benefits until June 1, 2006. On June 1, 2006 substitute the Health Care plans for Richmond/Hampton Roads/Kroger as agreed by the parties on March 24, 2006.

2.                         Continue the current employee contributions until June 1, 2006. Effective June 1, 2006, modify employee contributions in accordance with the attached H-3.

3.                         The benefit plan will be a stand-alone plan within the United Food and Commercial Workers Unions and Participating Employers Health and Welfare Fund. The group will be accounted for and tracked separately for claims experience, trend, and its share of administrative costs and related expenses.

4.                         The eligibility rules of the Fund shall apply except as follows: Eligibility, including tunnels which were in place as of August 15, 2003, will remain unchanged for life of the current labor agreement.

-14

KROGER 000451

An employee is eligible for benefits the first of the month following thirty (30) days of continuous employment if the employee is a full-time employee working at least thirty-five (35) hours per week.

An employee is eligible for benefits the first of the month following one-year of continuous service if the employee is a part-time employee who works at least seventeen (17) hours per week.

After participation in the plan continuously for twelve (12) months, a part-time employee shall retain coverage except in the case of: changing their availability; no hours being available for an entire month; or in the case of a layoff.

5.          The plan will continue opt out provisions identical to those in effect on March 25, 2006 and an open enrollment will be conducted annually.

6.          The prescription drug benefit will provide the same levels of coverage in place on March 25, 2006 with the coinsurance features as agreed on in the attached page H-2.

7.          The prescription drug benefit will be delivered through the Kroger exclusive provider arrangement and will be administered by the United Food and Commercial Workers Unions and Participating Employers Health and Welfare Fund.

8.          The United Food and Commercial Workers Unions and Participating Employers Health and Welfare Fund will provide retiree health and welfare coverage identical to the employee health and welfare coverage in effect June 1, 2006.  Retiree contributions (full COBRA rate) necessary for participation will continue for the life of the labor agreement.

Eligibility for retiree coverage includes:
- Employees who are eligible for active coverage at the time of retirement and who retire from the company at age 55 or older with twenty (20) or more years of service, or age 60 or older with ten (10) or more years of service.

Coverage levels (choices) include:
- **Retiree only**
- **Retiree plus spouse**
- **Retiree plus child(ren)**
- **Retiree plus family**
- **No medical/prescription drug coverage**

-15

KROGER 000452

9.                              Contributions will be made to the United Food and Commercial Workers Unions and Participating Employers Health and Welfare Fund commencing the month (or as soon as practical) following approval by the Board of Trustees.

Full-Time Contribution rates and Part-Time Contribution rates will be determined by the Fund Consultant and Administrator.

The above contributions will be made on behalf of all eligible employees. Such contributions will be made to the trust fund on or before the 15th of the month for hours worked the proceeding calendar month. Upon payment of the contributions, the Employer will report to the Trust Fund all hours paid on all employees for which contributions were required during the preceding calendar month. In accordance with the foregoing method of determining contributions payable, such report will be made in a manner prescribed by the Trustees. The contributions provided for in this section shall be for the purpose of providing such benefits for eligible employees as are determined from time to time by the Trustees of the aforesaid Trust Fund.

10. 1                           Contributions to the Trust Fund shall be discontinued as of the first of the month following:

1)   Termination of employment
2)   Layoff
3)   Leave of absence (except as governed by the FMLA)

10.2.                           The Employer agrees to pay amounts necessary to maintain benefits as outlined herein during the life of the current labor agreement.

The amounts necessary will be determined annually by the Fund Consultant. The review will be conducted during August of each year. Any increase in contributions necessary to maintain benefits will be communicated to the Employer by September 1 and will be applied to hours worked during the month of September and payable with the October payment.

11.                             Effective 12/30/01 for full time employees, the Company will provide short-term disability coverage to a maximum of 26 weeks for wholly and continuous disability. Benefit commences on the eighth (8th) day of disability (except with the first day for hospitalization) and provides benefits up to 66 2/3% of average weekly pay (utilizing the four (4) full workweeks prior to commencement of disability).

-16-

KROGER 000453

12.                           Current Sick Pay Plan will cease effective 12/31/01.
There will be no liability for the Employer after 12/31/01 as a result of the Sick Pay Plan.

ARTICLE 20.                 WAGES

1.    For employees on the payroll at ratification:

    a)      Deleted

    b)      Full time under $10.00 per hour until they reach $10.00 per hour:

| | | |
|---|---|---|
| 10/2/06 | $.25 | per hour |
| 10/1/07 | $.25 | per hour |
| 10/6/08 | $.25 | per hour |
| 10/5/09 | $.25 | per hour |

        Part time under $7.75 per hour until they reach $7.75 per hour:

| | | |
|---|---|---|
| 10/2/06 | $.25 | per hour |
| 10/1/07 | $.25 | per hour |
| 10/6/08 | $.25 | per hour |
| 10/5/09 | $.25 | per hour |

Full time upon reaching a rate of $10.00 per hour will only receive Personal
Performance/Rate Review increases subsequently through the remaining term of
the agreement.  Part time upon reaching a rate of $7.75 per hour will only receive
Personal Performance/Rate Review increases subsequently through the
remaining term of the agreement.

    c)      Annual Performance Rate Review

During the First Quarter of each year, employees will be provided with a
Personal Performance Evaluation.  Overall performance will be rated by the
Store Manager using the following criteria and their personal pay rate will be
adjusted accordingly effective the first Sunday of the Employer's Fourth Period
each year.

-17-

KROGER 000454

| Evaluation | Full-time | | | |
|---|---|---|---|---|
| | 2006 | 2007 | 2008 | 2009 |
| Meets required job standards: | $.25 | $.20 | $.20 | $.20 |
| Usually exceeds required job standards: | $.30 | $.25 | $.25 | $.25 |
| Consistently exceeds required job standards: | $.35 | $.30 | $.30 | $.30 |

| Evaluation | Part-time | | | |
|---|---|---|---|---|
| | 2006 | 2007 | 2008 | 2009 |
| Meets required job standards: | $.15 | $.10 | $.10 | $.10 |
| Usually exceeds required job standards | $.20 | $.15 | $.15 | $.15 |
| Consistently exceeds required job standards: | $.25 | $.20 | $.20 | $.20 |

If ninety (90) percent of the Employees reviewed do not receive an overall annual rating of "Meets Standards" or better in each calendar year, the Employees who received less than a "Meets Standards" review shall receive the personal rate adjustment equal to a "Meets Standards" adjustment for that year.

2.    For employees hired on or after ratification

a)    The Employer shall determine initial rates of pay for new hire, or rehired, employees by utilizing a consistent application of the employees knowledge, skill and previous experience.  New hired employees may be started at 95% of the Standard Rate as indicated below.

b)    The Standard Rate for each level as indicated will approximately represent the rate of pay for an employee with one (1) year of experience.

-18

KROGER 000455

|  | Standard Rate |
|---|---|
| Senior Clerks | $8.00 |
| Advanced Clerks | $7.00 |
| Basic Clerks | $6.00 |
| Lead Clerks (Seafood, Dairy, Frozen Food, File Maintenance, Night Stock) | $8.75 |
| Department Head Back-Up (Grocery, Drug-GM Front End, Meat, Produce, Deli-Bakery) | $8.75 |
| Grocery Department Night Stock Clerks | $8.75 |
| Meat Cutter | $12.00 |

## JOB DESCRIPTIONS

**Senior**   Senior employees would be experienced, well trained clerks who are capable of performing all production and customer service tasks in multiple departments.  They would as a resource for Advanced and Basic Employees.

**Advanced**   Advanced employees would be more experienced clerks than Basic clerks. This group could perform any type of work in the store, but would in most cases only trained for a few job functions (e.g. Cashier/Bagger, Produce/Floral, etc.).

**Basic**   Basic employees would be new hire employees who would progress through orientation/training.  Generally, these would be scheduled to work in one department on primary tasks.

c)  Upon reaching the Standard Rate for their level, employees hired after ratification would be eligible for Performance Rate Increases and contractual increases under the same provisions as employees on the payroll at ratification.

KROGER 000456

## MISCELLANEOUS WAGE NOTES

1.      The Employer will appoint, where applicable, a <u>Lead Seafood Clerk</u>. Employees appointed to this position will receive a premium of fifty cents ($.50) per hour in addition to their personal rate.

2.      The Employer will appoint a <u>Lead Dairy Clerk</u>.  Employees appointed to the position of Lead Dairy Clerk will receive a premium of fifty cents ($.50) per hour in addition to their personal rate.

3.      The Employer will appoint a <u>Lead Frozen Food Clerk</u>.  Employees appointed to the position of Lead Frozen Food Clerk will receive a premium of fifty cents ($.50) per hour in addition to their personal rate.

4.      The Employer will appoint a <u>Lead File Maintenance Clerk</u>.  Employees appointed to the position of Lead File Maintenance Clerk will receive a premium of sixty cents ($.60) per hour in addition to their personal rate.

5.      For employees assigned to work on a bona fide Grocery Department <u>Night Stocking Crew,</u> the Employer will provide a twenty-five cents ($.25) per hour premium in addition to the employee's personal rate.  This premium will be paid for bona fide Grocery Department Night Stocking crew work performed between the hours of 10 p.m. and 6 a.m.  Effective on April 30, 2006, the employees assigned to work on a bona fide Grocery Department Night Stocking Crew will be paid a minimum hourly rate of $8.75 per hour.

6.      If the employer appoints a <u>Lead Night Stock Clerk</u> to supervise the activities of a bona fide Night Stock Crew in the absence of the Grocery Manager, the Lead Night Stock Clerk will receive a premium of five ($5.00) dollars per shift or twenty-five ($25.00) dollars per week.

7.      If the Employer selects an Employee to act as a Department Head Back-up in Grocery, Drug-GM, Front End, Meat Produce or Deli/Bakery, the employee will receive a fifty-cent ($.50) per hour premium in addition to their personal rate.

8.      Any employee who relieves a Department Manager (Grocery, Produce, Drug GM. Meat, Front-end, Deli, Bakery) for a period of five (5) days (within a work-week), or more, and to whom responsibility for the job is delegated by the Employer, shall receive a premium of thirty dollars ($30.00) per week.

9.      Effective April 30, 2006, employees assigned to lead clerk or back up positions will be paid a minimum hourly rate of $8.75 per hour.

KROGER 000457

10.      Effective April 30, 2006, employees working assigned as a Basic Clerk position will be paid a minimum hourly rate of $6.00 per hour.

**ARTICLE 21**          **EXPIRATION**

The Agreement shall continue in effect from March 26, 2006 through March 27, 2010 and shall automatically be renewed from year to year thereafter unless either party serves notice in writing to the other party sixty (60) days prior to the expiration date or any anniversary date thereafter of a desire to terminate or modify the Agreement.

IN WITNESS WHEREOF the said parties have caused duplicate copies hereof to be executed by their duly authorized officers this _____ day of April 2006.

**FOR THE UNION:**                      **FOR THE COMPANY:**

_____               _____

_____               _____

_____               _____

-21

KROGER 000458

## SCHEDULE "A" – FUEL CENTER AGREEMENT

**The Parties agree to the following for facilities with fuel centers:**

a) A Fuel Center Clerk's responsibilities will be to perform all tasks associated with the operation of the Fuel Center as directed by store management.

b) The terms of the Richmond/Hampton Roads Agreement shall apply but Fuel Center Clerks shall not receive benefits of a monetary nature, except for wages, vacation and holidays as specified.  It is understood that benefits such as health and welfare, pension, etc., are of a monetary nature and are not to be provided to the Fuel Center Clerk. Seniority within each Fuel Center shall prevail.

c) Vacations shall be granted per Article 10 and Holidays shall be granted per Article 12 of the Richmond/Hampton Roads Agreement.

d) The Employer may utilize any vendor services available to the trade at no additional cost.  Management may perform any tasks necessary to ensure the efficient operation of this center.

e) A Fuel Center Clerk after two (2) years of service, shall be given preference by seniority, together with ability, practicability and availability, should an opening occur for a part-time store employee and shall further be given preference in the same way for full-time positions after they have been offered to the part-time employees.  Fuel Center Clerks who transfer into the store will maintain their original hire date for benefit eligibility.

KROGER 000459

March 25, 2006

Mr. C. James Lowthers
UFCW Union Local #400
4301 Garden City Drive
Landover, MD  20785

Dear Mr. Lowthers:

The following understandings and/or agreements reached during negotiations will assist the parties in the administration of the contract:

1.    The parties agree that if a Kroger store operates in one of the Counties or Cities or Towns contained in the list below, this Collective Bargaining Agreement solely governs the represented employees within that store:

| | | | |
|---|---|---|---|
| Accomack | Amelia | Brunswick | Charles City |
| Charlotte | Chesterfield | Cumberland | Dinwiddie |
| Essex | Gloucester | Goochland | Greenesville |
| Halifax | Hanover | Henrico | Isle of Wight |
| James City | King and Queen | King William | Lancaster |
| Lunenburg | Mathews | Mecklenburg | Middlesex |
| New Kent | Northampton | Northumberland | Nottoway |
| Powhatan | Prince George | Richmond | Westmoreland |
| Southhampton | Surry | Sussex | York |
| Virginia Beach | Chesapeake | Suffolk | Portsmouth |
| Norfolk | Hampton | Newport News | Poquoson |

2.    The parties' agree to recognize Adjusted Service Dates for former Hannaford employees to be used for vacation and seniority purposes.

3.    The parties agree that if a Department Head (Grocery, Produce, Meat, Drug/GM, Front End, Deli/Bakery) who is in good standing, voluntarily reduces his position as a Department Head and enters the bargaining unit, service time as a Department Head will be considered in determining bargaining unit seniority.

Sincerely,

George W. Anderson
Director,
Human Resources/Labor Relation

KROGER 000460

March 25, 2006

Mr. C. James Lowthers
UFCW Union Local #400
4301 Garden City Drive
Landover, MD  20785

Dear Mr. Lowthers:

1.      In any newly built Kroger Food and Drug store in the geographic area outlined in Article 3 "Coverage" of the Richmond/Hampton Roads Labor Agreement, where a majority of the workforce has transferred from the Richmond/Hampton Roads Bargaining Unit, Kroger will recognize Local 400 and the appropriate agreement will apply to the new Kroger Food and Drug store's workforce by the same practices used by the parties in the past.

2.      In any newly built or acquired store in the geographic areas outlined in Article 3 "Coverage" at which there is a transferred work force which is less than a majority of the workforce, Local 400 shall have "access" to the store when employees are working.  "Access" means that Local 400 representatives may enter the store and meet with employees about membership in the same manner as they have in the past. Employees will not be solicited in such ways as to interfere with their work or impede service to customers. Upon presentation to Kroger of proof that Local 400 represents a majority of employees in the store, Kroger will recognize Local 400 as the bargaining representative and the appropriate agreement will apply to the new Kroger Food and Drug store's workforce.

3.      Should the Employer decide to acquire a facility or facilities within the geographic area outlined in Article 3 "Coverage" of the Richmond/Hampton Roads Labor Agreement, and either party believes the acquisition situation is such that certain modifications to the Labor Agreement are needed, upon request the parties will meet for the purpose of discussing a possible framework for a labor agreement that would apply at such newly-acquired facility, or facilities, once a majority of employees choose to be represented by Local 400.

4.      The Mid-Atlantic Marketing Area and its managers and UFCW Local 400 (and its representatives) in stores covered by this agreement agree to treat each other with mutual business respect. Neither party will engage in negative discussion about each other, and Kroger will not tell employees it opposes or supports the Union. Kroger and its managers will not interfere with the rights of its employees to choose to join a union or to sign union authorization cards. Local 400 and its representatives will not interfere with the rights of Kroger employees to choose not to join a union.

5.      The parties agree that shop stewards will be appointed in each store covered by the labor agreement. The parties agree that in the event a new employee has not been introduced to the steward per Article 17.4 that upon request the Company will introduce the new employee to the union representative. It is understood that this does not apply to stores when the Union does not have a steward.

If any disagreement occurs in the interpretation of this letter of understanding, the parties agree to utilize the grievance and arbitration provisions of the contract to resolve the disagreement. The parties further agree that this letter of understanding shall be interpreted consistent with the National Labor Relations Act.

Sincerely,

George W. Anderson
Director,
Kroger Mid-Atlantic Human Resources/
Labor Relations

KROGER 000462

March 25, 2006

Mr. C. James Lowthers
UFCW Union Local #400
4301 Garden City Drive
Landover, MD  20785

Dear Mr. Lowthers:

For employees who have completed their probationary period as of 3/26/2006, the Company will provide the following one-time bonus payment, less legal withholdings:

Full-time    $350.00

Part-time    $150.00

Sincerely,

George W. Anderson
Director,
Kroger Mid-Atlantic Human Resources/
Labor Relations

KROGER 000463