IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |
|---|---|
| ERICK E. DANIEL, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:11cv245-DWD |
| KROGER LIMITED PARTNERSHIP I, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Defendants' Motion for Summary Judgment (ECF No. 10). The matter has been thoroughly addressed by the parties' submissions and the Court has entertained oral argument on the matter. For the reasons stated herein, the Court shall GRANT the Defendants' Motion.

### I. BACKGROUND

The parties have submitted their respective statements of undisputed material facts pursuant to the Court's Local Rules, and the Court has reviewed the statements, including the references to supporting evidence. As required, the Court resolves all genuine disputes of material fact in favor of the non-moving party and disregards those factual assertions that are immaterial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Applying this standard, the Court concludes that the following narrative represents the facts for purposes of resolving the motion for summary judgment.

On September 9, 2008, Erick E. Daniel ("Daniel" or the "Plaintiff") submitted an online application for a position as a meat cutter at a grocery store owned and operated by Kroger Limited Partnership I ("Kroger" or the "Defendant").[1] In his initial application, Daniel indicated that he could only work Monday through Friday from 6:00 a.m. to 5:00 p.m. and on Saturdays from 6:00 a.m. to 4:00 p.m., and could not work at all on Sundays. (Def.'s Mem. Sup. Mot. Sum. J. ("Def.'s Mem.") at Ex. 1, ECF No. 11.) However, during an interview for the position, he was informed that Kroger employs no more than two (2) meat cutters per store and that, because weekends are a busy time for selling meat, both meat cutters must work weekends. (Decl. of Kenneth R. Morris, Jr. ("Morris Decl.") at ¶¶ 8-9, ECF No. 11-1.) In response to this information, Daniel amended his application by hand, indicating that he could work any hours on any days of the week. (Def.'s Mem. at Ex. 1.)

However, Daniel also verbally informed the interviewing managers, John Owens ("Owens") and Kenneth Morris ("Morris"), that on Sundays he could only work "early in the morning or in the afternoon." (Transcript of Dep. of Erick E. Daniel ("Daniel Dep.") at 170:17-18.) This was because Daniel was an active assistant pastor at his non-denominational christian church, which held Sunday services at 11:00 a.m. (Daniel Dep. at 68:9-10.)[2] Kroger honored

---

[1] Although "The Kroger Co." is also identified as a defendant in this case, the parties agree that it is not a proper defendant. Accordingly, the Court shall grant summary judgment to "The Kroger Co." on this additional basis. If it was the real party in interest, the Court would grant summary judgment to "The Kroger Co." for the reasons stated herein. For the sake of convenience and brevity, the Court shall hereafter address only Kroger Limited Partnership I ("Kroger" or the "Defendant") as if it were the sole defendant in this matter.

[2] Daniel has also gone to great lengths to establish additional duties that he held as an assistant pastor at his church, including administrative duties. However, Daniel submits no evidence that he ever informed Kroger about the extent of those obligations. Nor did he ever request religious accommodation for such obligations, at least until March 14, 2009. Moreover, Daniel's own testimony confirms that from the time that he was hired until March 14, 2009, Daniel's only request for accommodation was that Kroger avoid scheduling him on Sundays or, if he must work on Sundays, that he not work between the hours of 10:00 a.m. and 2:00 p.m.

Daniel's wishes during his first three months of employment at the store. (Aff. of Erick E. Daniel ("Daniel Aff.") at ¶ 3, ECF No. 16-1.) During that period, Daniel worked on only five Sundays, but each time Kroger honored his requested Sunday hours of working only before 10:00 a.m. and after 2:00 p.m. (Kroger Employee Schedule Records, ECF No. 11-1.)[3] Daniel's religious beliefs and practices do not require him to attend services on any day except Sunday. (Daniel Dep. at 81:16-25.)

In spite of the apparent understanding reached between Daniel and Kroger, on January 25, 2009, Daniel was scheduled to work from 6:00 a.m. until 2:00 p.m. (Id.) As far as the record before the Court suggests, Daniel worked the relevant portions of that shift without complaint or incident. Moreover, Kroger allowed him to take an extended break to attend church services and return to work afterward. (Daniel Aff. at ¶ 5.) Daniel has not articulated that this accommodation was insufficient, or that he complained to Kroger at the time.

Two weeks later, Kroger again scheduled Daniel to work on a Sunday from 6:00 a.m. to 2:30 p.m. On that occasion, Daniel called Kroger on the evening before the shift and spoke with Morris, informing him that he could not work during the scheduled Sunday shift because he could not find a babysitter.[4] (Daniel Dep. at 228:2-7, 231:20-24; Morris Decl. at ¶ 18.) Upon his

---

Thus, any duties beyond those timeframes are immaterial to the resolution of the Motion for Summary Judgment.

[3] Kroger has submitted its employee schedule records as Exhibit 4 to its Memorandum in Support of the Motion for Summary Judgment. In order that the Court may properly consider this, or any other documentary evidence, it must be authenticated by declaration or affidavit. See Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993). However, Daniel has not objected to the submission of the employee schedule records or any other documentary evidence submitted in support of Kroger's motion, as required by Fed. R. Civ. P. 56(c)(2) (including at oral argument in response to a specific question by the Court regarding the issue), so the Court shall consider such documentary evidence for purposes of resolving the Motion for Summary Judgment.

[4] Although Daniel's affidavit indicates that he *did not* cite his failure to obtain a babysitter as his excuse for missing his February 15, 2009 shift, he admitted as much in his deposition. (Compare Daniel Aff. at ¶ 6 with Daniel Dep. at 228:2-5.) Accordingly, Daniel's

return to work on February 16, 2009, Morris reviewed company policy with Daniel and gave him a verbal warning because Daniel's excuse was not an approved reason for being excused from a shift. (Morris Decl. at ¶ 18.)

When Daniel was scheduled to work the following Sunday, February 22, 2009, he once again called Kroger on the evening prior to his shift to inform management that he could not work the following day, this time citing his religious observances.[5] Morris informed him that he must report to work on Sunday as scheduled, but Daniel did not do so. (Id at ¶ 19.) For this, Daniel was issued a written reprimand and placed on a ninety (90) day probationary period. (Id.) Thereafter, Kroger did not schedule Daniel to work on any other Sunday between the hours of 10:00 a.m. and 2:00 p.m. (Kroger Employee Schedule Records, ECF No. 11-1.)

On Friday, February 27, 2009, Daniel called Kroger to inform his managers that he could not work during his scheduled shifts on that following Saturday or Sunday (from 3:00 p.m. to 10:00 p.m.) because he was going to be out of town at a religious conference. (Daniel Aff. at ¶ 7.) Although he apparently informed his supervisor of his intention to attend the religious conference three weeks prior, Kroger contends that it had denied the request, and Daniel offers no evidence to the contrary. (Id; Morris Decl. at ¶ 21.) After Daniel did not report for his

---

contradictory statement in his affidavit must be disregarded, and the Court shall accept his deposition testimony instead. Grace v. Family Dollar Store, Inc. (In re Family Dollar FLSA Litigation), 637 F.3d 508, 512 (4th Cir. 2011) ("[I]t is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct").

[5] Kroger claims that Daniel did not cite religious observances as his reason for missing the Sunday shift, but instead told Kroger that he could not find a babysitter. This fact is genuinely in dispute by virtue of Daniel's affidavit and deposition testimony (Daniel Aff. at ¶ 6; Daniel Dep. at 231:20-24.) Accordingly, for purposes of resolving the Motion, the Court shall view the facts in Daniel's favor and assume that he informed Kroger that his attendance for religious observance interfered with the Sunday shift schedule. See Anderson, 477 U.S. at 248.

scheduled shifts on February 28th, March 1st, and March 2nd, Kroger issued its second written warning and extended his 90-day probationary period.

On Sunday, March 8, 2009, at approximately 12:45 p.m., Daniel called Kroger and informed his managers that he would not be able to work during his then-scheduled 3:00 p.m. through 10:00 p.m. shift on that same day. (Morris Decl. at ¶ 23.) In response, Kroger issued its third written warning, this time suspending Daniel's employment for three days. (Id.) During a disciplinary meeting in which Daniel was issued the written warning, he alleged, for the first time, that Kroger was not accommodating his religious request to attend church services on Sundays. (Id.) According to the written warning, Daniel was to report back to work for his next scheduled shift on Saturday, March 14, 2009. (Id.)

Apparently unaware that he was scheduled to work from 11:30 a.m. to 8:00 p.m. on that Saturday, Daniel nevertheless arrived at Kroger at approximately 11:40 a.m. (Id at ¶ 25; Daniel Decl. at ¶ 8.) His purpose in visiting Kroger, however, was not to work, but instead to discuss his need for further scheduling accommodation for religious purposes with Morris. (Daniel Decl. at ¶ 8.) Based on his additional desire to spend more time with his family and pursue further education, all the while requiring additional time to prepare for Sunday services, Daniel now requested that he no longer work at any time on Saturdays or Sundays. (Id; Daniel Dep. at 275:11-17.) However, it is undisputed that Daniel holds no religious belief that forbids him from working on Saturdays. (Daniel Dep. at 81:10-20.)

Morris responded to Daniel's new request by indicating that he could not, himself, make the requested accommodation. (Daniel Aff. at ¶ 8.) However, Daniel also offered to accept part-time employment or, alternatively, to transfer to another Kroger location in order to devise a suitable accommodation. (Id.) Accordingly, Morris offered to discuss the matter with Kroger's

5

human resources department. (Id.) As Daniel understood the representation, Morris did not, himself, have the power to approve Daniel's requested accommodation, but that he would discuss the matter with human resources because they have the requisite authority to make the requested accommodation. (Id. at 8-9.)

After the March 14th meeting with Morris, Daniel left the Kroger store despite the fact that he was scheduled to work at that time. (Id. at ¶ 9; Morris Decl. at ¶ 25.) Although he was also scheduled to work on the next day, Sunday, March 15th from 3:00 p.m. until 10:00 p.m., and again on March 16th, Daniel neither appeared for work nor called to request to be excused. (Morris Decl. at ¶ 26.) Thus, pursuant to Kroger policy and a collective bargaining agreement that was in effect at the time, Kroger concluded that Daniel's three consecutive absences constituted a voluntary, constructive resignation, terminating his employment accordingly. (Id.) Unaware that he had missed his scheduled shifts, Daniel called Morris on March 17th to ask about his requested accommodation. He was reportedly surprised to learn that his employment had been terminated. (Daniel Aff. at ¶ 10; Morris Decl. at ¶ 27.)

Based upon the sequence of events, Daniel commenced this action against Kroger in the Circuit Court for the City of Richmond, alleging that Kroger violated Daniel's rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17 ("Title VII"). Specifically, Daniel raises two claims: (1) that Kroger discriminated against him because of his religious beliefs; and (2) that Kroger failed to reasonably accommodate his religious practices. Kroger removed the case to this Court pursuant to 28 U.S.C. § 1441(a) because Daniel's claims raise federal questions, vesting this Court with jurisdiction pursuant to 28 U.S.C. § 1331. Kroger now moves for summary judgment following extensive discovery.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 247-48. Thus, the court must view the record in the light most favorable to the nonmoving party, and must draw all reasonable inferences in its favor. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). However, "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Anderson, 477 U.S. at 252; see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." Thompson v. Everett, Inc. v. Nat'l Cable Adver., LP, 57 F.3d 1317, 1323 (4th Cir. 1995).

## III. DISCUSSION

Title VII prohibits an employer from discriminating against an employee on the basis of religion. 42 U.S.C. § 2000e-2. An employee may enforce a violation of this prohibition under two alternative, non-exclusive theories: (1) that he was subjected to "disparate treatment" on account of his religion; or (2) a "failure to accommodate" a *bona fide* religious practice. Chalmers v. Tulon Co., 101 F.3d 1012, 1017 (4th Cir. 1996). These two theories are distinct, such that while a disparate treatment claim might fail if an employer requires all employees to work on Sunday regardless of religion, a religious accommodation theory does not require comparison with other employees. Id at 1018. Here, Kroger asserts that the undisputed material

7

facts preclude Daniel's claims in both instances. During oral argument, Daniel withdrew his "disparate treatment" claim, such that Kroger's motion now seeks dispositive relief on the sole remaining "failure to accommodate" claim.[6]

Title VII's treatment of "religion" has been said to constitute a "special category" of discrimination. Chalmers, 101 F.3d at 1018. This is because the statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to *reasonably accommodate* an employee's . . . religious observance or practice without *undue hardship* on the conduct of the employer's business." Id (emphasis added) (internal quotation marks omitted) (quoting 42 U.S.C. § 2000e(j)). Thus, "an employee is not limited to the disparate treatment theory to establish a discrimination claim. An employee can also bring suit based on the theory that the employer discriminated against [him] by failing to *accommodate* [his] religious conduct." Id (emphasis in original) (citation omitted). Unique to cases involving *religious* discrimination, as opposed to race or sex discrimination, such a theory permits recovery without regard to how the employer treated other protected (or unprotected) employees. Id. It also allows the plaintiff to "defeat" summary judgment regardless of whether he can rebut the employer's legitimate, non-discriminatory reason for discharge. Id.

---

[6] The Motion for Summary Judgment is therefore granted as moot with regard to the "disparate treatment" claim. But in the interest of full discussion, and for possible appellate consideration, the Court also notes that Daniel has not established a *prima facie* case for such a claim because there is no evidence, whatsoever, with regard to how Kroger treated employees of other religions. See Chalmers, 101 F.3d at 1017-18. His *prima facie* case would also fail because his absenteeism demonstrates a relevant "job performance" issue. See, e.g., Russel v. TG Mo. Corp., 340 F.3d 735, 746-47 (8th Cir. 2003); see also Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1998) (noting in the context of a retaliation claim that federal courts should not act as a "super-personnel department"). And even if he were to establish a *prima facie* case, the Court would nevertheless conclude that Daniel has failed to rebut Kroger's stated legitimate, non-discriminatory reason for his termination (i.e. voluntary discharge resulting from his failure to appear for work without contacting Kroger on three consecutive occassions).

In analyzing religious accommodation claims, federal courts in the Fourth Circuit, the appellate authority governing this jurisdiction, must employ the McDonnell Douglas burden shifting scheme. EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008). First, the plaintiff must establish a *prima facie* case by showing: (1) he has a *bona fide* religious belief that conflicts with an employment requirement; (2) he has informed the employer of this belief and requested an accommodation; and (3) he was disciplined for failing to comply with the conflicting employment requirements. Id (citations omitted). If the plaintiff meets that burden, the burden of persuasion then shifts to the employer, who must "show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship." Id (citing Chalmers, 101 F.3d at 1019).

**A.     Daniel Cannot Establish a *Prima Facie* Case of "Failure to Accommodate"**

Daniel fails to establish a *prima facie* case with regard to his "failure to accommodate" claim. Contrary to Kroger's arguments, the Court is satisfied that he was disciplined for failing to attend his work shift on Sunday, February 22, 2009, thus satisfying the third element -- *but only with regard to that particular shift*. However, the undisputed record fails to establish that Daniel's *bona fide* religious belief prevented him from working during at least some part of his February 22nd shift, as he did when similarly scheduled for a shift on January 25, 2009. (Daniel Aff. at ¶ 5.) Moreover, up until Daniel's meeting with Morris on March 14, 2009, the only requested accommodation of which Kroger was aware was that Daniel be given sufficient time on Sundays to attend the 11:00 a.m. service at his church. (Daniel Dep. at 68:9-10.) Thus, neither the first nor second elements of his *prima facie* case have been established.

1. **Kroger Disciplined Daniel for his February 22nd Absence Only**

Although Daniel argues that each instance of discipline at Kroger constitutes a failure to accommodate, the Court has concluded that the only discipline in any way associated with his request for religious accommodation is that resulting from his February 22, 2009 absence. With regard to his February 15, 2009 absence, Daniel's own testimony establishes that he *did not* cite his religious beliefs as a reason for missing work, instead citing his inability to obtain a babysitter. (Daniel Dep. at 228:2-7, 231:20-24.)

Moreover, until March 14, 2009, the record unequivocally establishes that Kroger was aware of only one requested accommodation -- that Daniel be able to attend the 11:00 a.m. Sunday services at his church. Daniel's shifts during the weekends of February 28th and March 8th do not give rise to a "failure to accommodate" claim because on neither occasion was he scheduled to work during those services. Thus, the sole shift which might arguably implicate Daniel's request for religious accommodation is the February 22, 2009 (Sunday) shift from 6:00 a.m. to 2:30 p.m.

Finally, Daniel's termination for failure to appear for work without contacting Kroger for three consecutive shifts does not constitute disciplinary action resulting from an employment obligation in conflict with a religious belief. At that time, Kroger had indicated that it was considering Daniel's request for different accommodations. (Morris Aff. ¶ 24.) However, before Kroger could ever respond to the request, Daniel failed to appear for his scheduled shifts on three consecutive occasions, none of which were on a Sunday between the hours of 10:00 a.m. and 2:00 p.m. Significantly, the collective bargaining agreement between management and the union, which controls in such matters, actually *mandates* that Kroger terminate employment under such circumstances. (Def.'s Mem. at Ex. 11 p. 7, ECF No. 11-1.) The fact that Daniel

neglected to check the schedule, or that Morris failed to inform him thereof during their March 14, 2009 meeting, has no bearing on the issue of whether Kroger failed to accommodate Daniel's religious beliefs and practices. Thus, his termination does not constitute discipline arising out of any failure to accommodate a religious belief.

However, the Court is satisfied that there is at least one instance in which there exists a genuine issue of material fact concerning discipline. Daniel has consistently testified that he called Kroger on the evening of February 21, 2009, and informed Morris that he could not attend his Sunday shift due to a religious obligation. Although Kroger disputes the excuse given by Daniel at that time, the issue is genuinely in dispute. And, as a result of Daniel missing his shift on that Sunday, he was given a written warning and placed on a 90-day probationary period.[7]

Kroger contends that such a written warning and probationary period does not rise to the level of disciplinary action because it does not constitute "adverse employment action." The phrase "disciplinary action" in the context of a religious accommodation claim is *not necessarily* synonymous with the more generally implemented standard of an "adverse employment action," as Kroger suggests. But see Durant v. NYNEX, 101 F. Supp. 2d 227, 233 (S.D.N.Y. 2000). Accepting such a proposition for the sake of argument, however, the Court would still conclude that the written warning and 90-day probationary period did, in fact, constitute an "adverse employment action."

In similar contexts, in which an employee is subjected to "progressive discipline," the Fourth Circuit has held that such a reprimand "thrust[s] [an employee] further along the

---

[7] Significantly, Kroger did not schedule Daniel to work on any Sunday between the hours of 10:00 a.m. and 2:00 p.m. after February 22, 2009, and there is no evidence that Kroger would have done so. During the March 14, 2009 meeting between Morris and Daniel, Daniel first requested additional accommodations. Thus, in the interim, the only request for accommodation of which Kroger was aware involved the 11:00 a.m. services that Daniel attended on Sundays.

discipline track and closer to termination," thus constituting a "tangible, adverse consequence." Nye v. Roberts, 145 Fed. App'x 1, 6 (4th Cir. 2005). Because Daniel progressed from one form of discipline issued in response to his February 15, 2009 absence (verbal warning), to a more serious form of discipline in response to his February 22, 2009 absence (written warning and probation), he suffered the same type of "tangible, adverse consequence" that amounts to an adverse employment action. Regardless of whether "disciplinary action" involves a heightened standard as compared to "adverse employment action," Daniel meets the standard.

Accordingly, at least as concerns Daniel's absence from work on February 22, 2009, the Court is satisfied that there is sufficient evidence for a jury to find that he was disciplined for his absence on that date. However, that alone is not dispositive of the issue, for the Court finds that he fails to establish either of the first or second elements of a *prima facie* case.

> 2. **Daniel's *Bona fide* Religious Beliefs**

Although Kroger does not challenge the veracity of Daniel's religious beliefs, it argues that some of his requested accommodations involve religious *preferences*, as opposed to religious *beliefs*. The distinction is relevant, as Title VII affords no protection for mere preferences. Dachman v. Shalala, 9 Fed. App'x 186, 192 (4th Cir. 2001) (citing Tiano v. Dillard Dep't Stores, Inc., 139 F.3d 679, 682 (9th Cir. 1998). Because the issue relates to Daniel's specifically requested accommodations, the Court shall address the matter in that context.

Daniel's first requested accommodation was intended to allow him to attend church services at 11:00 a.m. on Sundays. Thus, the Court must assess whether attendance at the particular service was a preference or a belief. The Court is satisfied that it was a belief. Unlike those cases cited by Kroger, in which the employee's requested accommodation was based on convenience, rather than belief, Daniel's particular church held only one weekly service. Tiano,

12

139 F.3d at 682 (attendance at particular pilgrimage not dictated by beliefs); Silk v. City of Chicago, No. 95C0143, 1996 U.S. Dist. LEXIS 8334, at *76-77 (N.D. Ill. June 4, 1996) (choice of a particular mass is a preference where mass is offered at multiple times on Sunday). With only one weekly service at his church, Daniel had no other option but to attend the 11:00 a.m. service.

Moreover, it is generally recognized that Title VII's religious protections are broadly construed to include "all aspects of religious *observance* and *practice*," which may be broader than the concept of beliefs alone. Firestone, 515 F.3d at 312 (emphasis added); see also Andrews v. Va. Union Univ., No. 3:07cv447, 2008 U.S. Dist. LEXIS 40001, at *17 (E.D. Va. May 15, 2008). Indeed, the court in Tiano specifically recognized that "employees do not have 'an inflexible duty to reschedule' their religious ceremonies." 139 F.3d at 682 (quoting Heller v. Ebb Auto Co., 8 F.3d 1433, 1439 (9th Cir. 1993)). While non-denominational Christians such as Daniel *may* attend services at other churches, it is not the role of the Courts, nor the purpose of Title VII, to impose such a schedule upon employees. To do so would preclude participation in one's chosen religious institution, effectively punishing those whose religious beliefs mirror Daniel's.[8] Accordingly, for the purposes of resolving Kroger's motion, the Court is satisfied that Daniel's desire to attend 11:00 a.m. services is not a mere preference, but is the type of religious belief afforded protection pursuant to Title VII.

The same is not true, however, with regard to Daniel's subsequent request for accommodations on March 14, 2009. In his later request, Daniel asked that he no longer work at any time on Saturdays or Sundays, in part due to the time constraints of preparing for Sunday

---

[8] It could also have the effect of resulting in state-sponsored preference of certain denominations over others, raising a vast array of constitutional issues well-beyond the scope of this case.

services, but also because he wanted to go back to school and spend more time with his family. (Daniel Decl. at ¶ 8; Daniel Dep. at 275:11-17.) Admitting that such a request does not implicate his religious beliefs, Daniel implicitly acknowledges that his second requested accommodation is one of personal convenience, not religious conviction. (Daniel Dep. at 81:10-20.) Much like the plaintiff in Dachman, Daniel could have prepared for Sunday services during the weekdays on which he was not scheduled to work. 9 Fed. App'x at 192. Thus, his desire that he not work at any times on Saturdays and Sundays constitutes a preference and not a belief.

### 3. There Existed No Conflict with Attendance

It is not enough that Daniel had a *bona fide* religious belief that required him to attend Sunday services at 11:00 a.m. in order to satisfy the first necessary element of his claim. He must also establish that there was a conflict between that belief and his employment with Kroger. Daniel has not done so with regard to the February 22, 2009 shift.

Employers need not accommodate the employee's needs in the manner preferred by the employee, but may fulfill such a duty with any reasonable accommodation. Firestone, 515 F.3d at 312-13 (citing Ansonia Bd. of Ed. v. Philbrook, 479 U.S. 60, 68-69 (1986)). It is not necessary that the accommodation completely "eliminate the conflict between workplace rules and religious practice." Id at 314 (citing Philbrook 479 U.S. at 69). But see Opuku-Boateng v. California, 95 F.3d 1461, 1467 (9th Cir. 1996) (holding that the employer must generally "eliminate the religious conflict"). Rather, an employer sufficiently satisfies its obligation if it offers *some* reasonable accommodation to the employee. Id at 313 (emphasis added) (citing Philbrook, 479 at 68-69).

Approximately one month prior to the shift in question, Daniel was also scheduled to work a similar shift which, as written on the schedule, appeared to conflict with his ability to

attend the services. Nevertheless, he appeared for work and Kroger permitted him to leave the workplace for the purpose of attending the eleven o'clock religious services at his church. (Daniel Aff. ¶ 5.) Thus, Kroger had established an alternative reasonable accommodation. There exists no evidence in the record that Daniel considered such an accommodation inadequate for purposes of attending services, and so he has failed to show that such an accommodation conflicted with his religious practices. Although Daniel might have *preferred* an accommodation that kept him from work all day on Saturdays and Sundays, Kroger was not required to follow his *preferred* accommodation. See, e.g., Firestone, 515 F.3d at 312-13. There was no conflict between Daniel's attendance at Sunday services and the accommodation that Kroger offered during the January 25, 2009 Sunday shift (i.e. leave and return to work).[9] Thus, the first element of his *prima facie* case cannot be established, and Kroger's motion for dispositive relief must be granted.

### 4. Kroger Accommodated the Known Request

Finally, the second necessary element cannot be established either because of the last-minute nature of Daniel's request to be absent for his scheduled February 22nd shift. It is well-established in the Fourth Circuit that "giving notice to co-workers at the same time as an employee violates employment requirements is insufficient to provide *adequate notice* to the employer and to shield the employee's conduct." Chalmers, 101 F.3d at 1020 (emphasis added). Moreover, the phrase "'reasonably accommodate' in the religious context incorporates more than just whether the conflict between the employee's beliefs and the employer's work requirements has been eliminated. Considering an accommodation's impact *on both the employer and*

---

[9] The result might be different had Daniel appeared for work and asked to leave for church at the appropriate time and Kroger refused. However, this is *not* what transpired.

15

*coworkers*, for example, is appropriate when determining its reasonableness." Firestone, 515 F.3d at 314.

Again, it must be remembered that the undisputed record shows that Kroger understood Daniel's request to be limited to the hours of 10:00 a.m. and 2:00 p.m. on Sundays, at least until Daniel's meeting with Morris on March 14, 2009. His eleventh-hour telephone call to Morris on the night immediately preceding his Sunday shift does not afford Kroger a reasonable opportunity to obtain substitute staff or otherwise prepare for Daniel's absence. See Chalmers, 101 F.3d at 1020. At that time, it remains established that Kroger was unaware of any reason why Daniel required the entire Sunday off of work, and there is no indication that he provided them reasonable, timely notice of a requirement to the contrary in advance of his February 22, 2009 shift. Thus, Daniel cannot establish the second element of his *prima facie* case, and summary judgment is therefore appropriate on that additional basis.

**B.     Undue Hardship**

Because Daniel fails to establish his *prima facie* case, the Court need not reach the question of whether Kroger would have suffered an "undue hardship" if it were to accommodate his request not to work at all on Sundays. Were the Court to address the issue, however, it would conclude that Kroger has not sufficiently established an undue burden, such that the issue would remain genuinely in dispute.

In enacting Title VII, "Congress recognized that because of business necessity and the legitimate rights of other employees, it could 'not impose a duty on the employer to accommodate at all costs.'" Firestone, 515 F.3d at 313 (quoting Philbrook, 479 U.S. at 70). This aspect of the statute gives rise to the "undue hardship" defense, the burden for which rests with the employer-defendant. Chalmers, 101 F.3d at 1018. "[A]n accommodation causes 'undue

16

hardship' whenever that accommodation results in 'more than a *de minimis* cost' to the employer." Philbrook, 479 U.S. at 67. Thus, an employer invoking the defense must establish the extent of the burden imposed. See id. If that burden is financial, it should typically propound the approximate cost of the accommodation at issue.

Here, Kroger has established only that it "cannot have only one meat cutter available to work from Friday afternoon until Monday morning" because "this would essentially mean that Kroger would have to close down the meat department during its most productive and profitable time." (Morris Decl. at ¶ 17.) While this may be true, Kroger does not establish the extent of the burden imposed in a quantifiable manner. Thus, the Court would have insufficient information at this juncture to assess whether such a result would constitute an "undue burden" for purposes of Daniel's "failure to accommodate" claim, as opposed to a *de minimis* cost. Because the Court must view the facts in the light most favorable to Daniel at this stage of the proceedings, the Court could not grant summary judgment on this particular basis.

## IV. CONCLUSION

For the reasons discussed herein, Defendant's Motion for Summary Judgment (ECF No. 10) is GRANTED.

An appropriate Order shall issue.

/s/
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: October 27, 2011